# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CASE NO. 1:20-CR-77** |
| Plaintiff, | : | |
| | : | **JUDGE TIMOTHY S. BLACK** |
| v. | : | |
| | : | **<u>UNITED STATES' RESPONSE TO DEFENDANT HOUSEHOLDER'S MOTION TO SEVER</u>** |
| **LARRY HOUSEHOLDER, ET AL.,** | : | |
| Defendants. | : | |

The United States respectfully submits this response in opposition to Defendant Larry Householder's Motion to Sever. (Doc. 106 at PageID 1771.) In response, the United States asserts that the Court should deny the Defendant's motion for the reasons set forth in the following memorandum.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

s/Emily N. Glatfelter
EMILY N. GLATFELTER (0075576)
MATTHEW C. SINGER (IL 6297632)
Assistant United States Attorneys
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6385
E-mail: Emily.Glatfelter@usdoj.gov
Email: Matthew.Singer@usdoj.gov

**MEMORANDUM OF LAW**

Defendant Householder asks the Court to sever his trial from Defendant Borges' trial, alleging that joinder was improper, that Householder will be unfairly prejudiced by a joint trial and the pandemic favors severance. Because the defendants were properly joined and Defendant Householder cannot demonstrate compelling prejudice from a joint trial, the Court should deny his motion.

I. **The Defendants Were Properly Joined.**

The United States is permitted to charge multiple defendants in the same indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). The allegations in the indictment determine whether joinder was proper. *See United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002). In general, Rule 8 "should be construed in favor of joinder." *United States v. Hatcher*, 680 F.2d 438, 440 (6th Cir. 1982). This accords with the principle that "joint trials conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." *United States v. Lane*, 474 U.S. 438, 449 (1986) (internal quotation marks omitted). Joinder of defendants is proper under Rule 8(b) where they are charged with a RICO conspiracy. *United States v. Davis*, 707 F.2d 880, 883 (6th Cir. 1983). ("We hold, therefore, that where two defendants are charged with a RICO conspiracy it is not improper to join such defendants and include the individual illegal actions that constitute the pattern of racketeering alleged."); *United States v. Ledbetter*, 929 F.3d 338, 346 (6th Cir. 2019) (finding joinder proper and finding no abuse of discretion in denying severance motion in the context of RICO conspiracy where "the defendants were charged with participating or assisting the same racketeering enterprise . . . and many were charged in the same [predicate acts] too.").

1

In this case, the defendants were properly joined in the single-count Indictment, which alleges that the defendants knowingly joined and participated in the same RICO conspiracy in violation of 18 U.S.C. § 1962(d). Specially, the Indictment alleges that the defendants and others constituted an *enterprise*, that is "a group of individuals and entities associated in fact" who "constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise." (Doc. 22, Indictment, ¶ 1.) The Indictment further alleges that the defendants and others "did knowingly and intentionally conspire with each other and with others known and unknown . . . to conduct and participate directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering." (Doc. 22, ¶ 33.) For both Defendants Borges and Householder, the United States must prove the existence of the same charged enterprise and the pattern of racketeering activity. Under these circumstances, the defendants were properly joined under Rule 8(b). *Davis,* 707 F.2d at 883; *Ledbetter*, 929 F.3d at 346.

Defendant Householder does not address this controlling case law. Instead, relying exclusively on non-RICO conspiracy cases, he alleges the defendants were improperly joined in a "rimless wheel conspiracy." (Doc. 106 at PageID 1776-1778 (citing *Kotteakos v. United States* (§ 88[1] conspiracy), *United States v. Carrozza* (§ 894 conspiracy), *United States v. Swafford* (§ 846), *United States v. Chandler* (§ 371)[2], and *United States v. Warner* (§ 846)).) His argument reflects a fundamental misunderstanding of a RICO conspiracy charge. In enacting RICO, "Congress

---

[1] Section 88 was the general conspiracy statute prior to section 371.

[2] Defendant Householder quotes a portion of *United States v. Chandler*, 388 F.3d 796, 808 (11th Cir. 2004), which uses the phrase "illegal enterprise." (Doc. 106 at PageID 1777.) However, the defendants in *Chandler* were charged with violating § 371, not RICO conspiracy in violation of § 1962(d), and the term "illegal enterprise" was used in the colloquial sense, not as an element of RICO conspiracy.

intended to create a broad and powerful new statutory weapon for the federal government to wield against" criminal enterprises, and the Supreme Court has accordingly given RICO an "expansive interpretation." *United States v. Bergrin*, 650 F.3d 257, 267-68 (3d Cir. 2011). Thus, the focus of RICO conspiracy is the defendant's agreement to participate in the conduct of the affairs of the *enterprise* through a pattern of racketeering activity; not the defendant's agreement to commit a predicate racketeering act. *See, e.g., United States v. Gill*, 702 F.App'x 367, 373 (6th Cir. 2017) (the elements of a RICO conspiracy are: "agreement, to conduct or participate, in an enterprise, through a pattern of racketeering activity") (citing *Salinas v. United States*, 522 U.S. 62-63 (1997)). "So long as the alleged RICO co-conspirators have agreed to participate in the affairs of the same enterprise, the mere fact that they do not conspire directly with each other does not convert the single agreement to conduct the affairs of an enterprise through a pattern of racketeering activity into multiple conspiracies." *United States v. Friedman*, 854 F.2d 535, 562 (2d Cir. 1988) (internal quotation marks omitted).[3]

## II. Defendants Indicted Together Should Be Tried Together.

Consistent with the case law supporting joinder, Defendants Householder and Borges should be tried together given the policy principles governing joint trials. The Supreme Court has explained that "there is a preference in the federal system for joint trials of defendant who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). "Joint trials play a vital role in the criminal justice system." *Id.* at 537 (quotation marks and internal citations omitted). "They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Id.* (internal quotation makes omitted); *United States v. Lane*, 474 U.S.

---

[3] In the context of Defendant Householder's rimless conspiracy argument, he claims that Company A is at the center of the RICO conspiracy. (Doc. 106 at PageID 1777.) That is what Defendant Householder claims; that is not what the plain language of the Indictment alleges.

438, 448 (1986) ("joint trials conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial.") (internal quotations omitted).

For these reasons, "[j]oint trials are favored in this circuit." *United States v. Tocco*, 200 F.3d 401, 413 (6th Cir. 2000). The Sixth Circuit has repeatedly stated the general rule that "persons indicted together should be tried together." *United States v. Harris*, 9 F.3d 493, 500 (6th Cir. 1993); *United States v. Scaife*, 749 F.2d 338, 345 (6th Cir. 1984) (conspirators should be tried together "because the evidence of conspiracy as to each defendant tends to be the same.") A different policy would create a host of problems for the criminal justice system, because "[s]eparate trials produce additional labor for judges and juries, which results from the unnecessary repetition of evidence and trial procedures." *United States v. Caver*, 470 F.3d 220, 238 (6th Cir. 2006).

For these reasons, joining the Defendants for trial is appropriate.

### III. Defendant Householder Has Not Satisfied His Heavy Burden of Establishing That Severance Is Required.

Under Fed. R. Crim. P. 14(a), even if joinder is proper, "the court may . . . sever the defendants' trials" if a joint trial "appears to prejudice a defendant." A defendant who seeks to sever his trial has the burden of showing "compelling, specific, and actual prejudice from" the denial of his motion. *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005). A defendant may not succeed in demonstrating prejudice by showing that "proof is greater against a co-defendant," *United States v. Warner*, 971 F.2d 1189, 1196 (6th Cir. 1992), or that he "may have a better chance of acquittal" in a separate trial, *Zafiro*, 506 U.S. at 539, or that "inflammatory evidence is admitted against one defendant, not directly involving another codefendant," *United States v. Gallo*, 763 F.2d 1504, 1525 (6th Cir. 1985) (severance unnecessary despite evidence of

4

"gruesome and brutal murders" charged against codefendants). *See also Scaife*, 749 F.2d at 344–45 (defendant had not shown prejudicial joinder despite the fact that the testimony against his co-defendants included evidence about the attempted murder of an FBI agent). A court should not grant severance "[w]here the same evidence is admissible against all defendants." *Warner*, 971 F.2d at 1196.

Rather, severance is justified "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. In other words, "[t]o establish the requisite degree of prejudice necessary for severance, the defendant "must demonstrate an inability of the jury to separate and treat distinctively evidence relevant to each particular defendant." *Swift*, 809 F.2d at 322.

Even if prejudice is shown, Rule 14 does not require severance; rather "it must be balanced against society's need for speedy and efficient trials." *Moore*, 917 F.2d at 220. Thus, severance is rarely ordered, because "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539. Severance motions under Rule 14 are committed to the sound discretion of the district court, *Untied States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999), and the denial of a request to sever is reviewed for "clear abuse of discretion," *United States v. Beverly*, 369 F.3d 516, 534 (6th Cir. 2004). *See Zafiro*, 506 U.S. at 541 ("Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts.").

Defendant Householder contends that severance is required because the Court "is faced with a *Bruton* problem" because Borges' proffer "statements likely refer to Householder, and his statements would be admissible even if he does not testify." (Doc 106 at PageID 1779-80.)

5

A "*Bruton* problem" exists "when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 207 (1987) (citing *United States v. Bruton*, 391 U.S. 123 (1968)). However, "the Supreme Court has explained that a court may remedy this possibility by redacting facially incriminating information from the relevant statement." *United States v. Sherrill*, 972 F.3d 752, 763–64 (6th Cir. 2020) (citing *Richardson*, at 208–09). The Court later clarified that while "[r]edactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration" did not remedy the Confrontation Clause issue, substitution of neutral pronouns could do so. *Id.* (quoting and citing *Gray v. Maryland*, 523 U.S. 185, 192 and 196–97, (1998)).

Applying these principles, the Sixth Circuit has found that redaction of a defendant's name with the substitution of a neutral term in its place avoids a Sixth Amendment or *Bruton* violation" when multiple individuals are involved in a crime and when the substitution does not implicate a specific defendant. *United States v. Vasilakos*, 508 F.3d 401, 408 (6th Cir. 2007) (no violation in multi-defendant conspiracy where a statement in which "the person" or "another person" had been substituted for the defendants' names); *see also United States v. Al-Din*, 631 F.App'x 313, 321 (6th Cir. 2015) (redactions and alternations in multi-defendant case avoided *Bruton* issue where one defendant's name "was replaced with the neutral phrases 'someone' and 'the guy,' " and the other "was not referred to at all").

Moreover, the law is clear that "*Bruton* does not bar the use of a redacted codefendant's confession 'even if the codefendant's confession becomes incriminating when linked with other evidence adduced at trial.'" *United States v. Cobleigh*, 75 F.3d 242, 248 (6th Cir. 1996) (quoting *United States v. DiCarlantonio*, 870 F.2d 1058, 1062 (6th Cir. 1989)); *United States v. Alkufi*, 636

6

F.App'x 323, 334–35 (6th Cir. 2016) (finding no 6th Amendment violation where co-defendant's statement did not name defendant directly, but "implicated him by reference to other evidence from which the jury could infer that he was one of the 'guys'"); *United States v. Ford*, 761 F.3d 641, 654 (6th Cir. 2014) ("Any conclusion by the jury that [the codefendant's] statement implicated Ford might be made only by linking the statement to other evidence. Introduction of the statement did not, therefore, violate the *Bruton* rule.")

Applying these principles here, a "*Bruton* problem" does not arise if Defendant Borges testifies at trial and is subject to cross-examination. In other words, *Bruton* only applies to statements of *nontestifying* codefendants. However, even if Borges chose not to testify, a *Bruton* issue would arise only if the government introduced a statement by Defendant Borges' that facially incriminated Defendant Householder. If Borges elects not to testify, and made arguments or took a position inconsistent with his proffers, the United States would only introduce Borges' proffered statements that contradict Borges' own, individual conduct. These statements do not facially incriminate Householder and require no redaction.[4] Thus, there is no "*Bruton* problem" and no potential prejudice.[5] Because Defendant Householder has failed to demonstrate the exceptional circumstances necessary to sever properly joined defendants, the Court should deny his motion.

---

[4] Regardless, the government submits that given the number of defendants charged in this case and the number of individuals associated with the Enterprise, any statements could be redacted in a manner that would protect Defendant Householder's Sixth Amendment rights, particularly when paired with proper limiting instructions.

[5] To be clear, Borges did implicate Householder with respect to other aspects of the conspiracy and Borges' knowledge of Householder's conduct is useful. But given the strength of the government's evidence in this case, the government does not intend to refer to these statements if Borges does not testify.

### IV. The Defendant's Arguments Regarding COVID-19 Fail.

Defendant Householder asserts that the Court should sever the case and try the defendants separately because "the COVID-19 pandemic favors severance." (Doc. 106 at PageID 1781.) But this is not a valid basis to sever, here.

First, if the last two years have taught us anything, it is that one cannot predict the state of the pandemic several months from now. Given the Court's recent trial experience in *United States v. Xu*, held during the fall of 2021, the Court can implement courtroom procedures that will protect the public's interest and the defendant's rights while ensuring a safe trial, if necessary.

Second, the relief that Defendant Householder seeks would create monumental inefficiencies and create twice the risk of exposure for the public, the Court and its staff, the witnesses, and the prosecution team. Under Householder's approach, this Court will preside over two trials, during each of which the United States would present similar – perhaps identical – evidence about the existence of the charged RICO enterprise and the activities of its members and associates.[6] Two trials would double the inconvenience posed to members of the public who are called for *voir dire* and those ultimately selected for jury service. Moreover, each trial would involve approximately the same number of exhibits and approximately the same witnesses – doubling the inconvenience of those subpoenaed to testify. At the same time, such a procedure would be a significant waste of judicial and prosecutorial resources, and would be antithetical to the strong policy favoring joint trials – a policy intended to ensure that "a given transaction need only be proved once." *Swift*, 809 F.2d at 322.[7]

---

[6] Defendant Householder asserts that the trials would be shorter because the United States would need only to present evidence relevant to each defendant. Not so – the United States still must prove the elements of a racketeering conspiracy, including that an enterprise existed and a pattern of racketeering activity.

[7] In support of his argument related to COVID-19, Defendant Householder cited a severance order from a case in which a joint trial was scheduled for April 5, 2021 in the federal courthouse in Dayton. *See United*

8

Severing the defendants for trial is therefore improper.

## CONCLUSION

Because the defendants were properly joined in the Indictment and Defendant Householder has failed to identify a compelling prejudice, the Court should deny his motion to sever.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney


s/Emily N. Glatfelter
EMILY N. GLATFELTER (0075576)
MATTHEW C. SINGER (IL 6297632)
Assistant United States Attorneys
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6385
E-mail: Emily.Glatfelter@usdoj.gov
Email:  Matthew.Singer@usdoj.gov

---

*States v. Furness, et al.,* 3:19-CR-98-TMR (Doc. 156.)  At the time of the order – February 25, 2021 – that courthouse only had a single courtroom that had sufficient safety measures, and that courtroom could not accommodate multiple parties.  *Id.* (Doc. 156 at PageID 424-25.)  In contrast, here, the Potter Stewart United States Courthouse has multiple, large courtrooms that can accommodate the implementation of safety protocols, if necessary.  For example, the Court recently presided over a large trial with a defense team consisting of at least five (and sometimes more) defense lawyers, two interpreters, and a litigation support technician, while incorporating necessary safety measures.

9

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Response was served electronically upon all counsel of record.

s/Emily N. Glatfelter<br>
EMILY N. GLATFELTER (0075576)<br>
Assistant United States Attorney