# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:20-cr-77 |
| vs. | : | Judge Timothy S. Black |
| LARRY HOUSEHOLDER (1), | : | |
| Defendant. | : | |

**ORDER DENYING DEFENDANT HOUSEHOLDER'S MOTION TO DISMISS**

This criminal case is before the Court on Defendant Larry Householder's motion to dismiss the Indictment for failure to state an offense (Doc. 105) and the parties' responsive memoranda (Docs. 112, 116, 159, 160).

## I. BACKGROUND

On July 30, 2020, a federal Grand Jury returned a single-count Indictment, charging Defendant Larry Householder and five co-defendants with participating in a Racketeer Influenced and Corrupt Organizations ("RICO") conspiracy, in violation of 18 U.S.C. § 1962(c), (d). (Doc. 22 at 10, 40). Specifically, the Indictment alleges that Defendants Larry Householder, Jeffrey Longstreth, Neil Clark, Matthew Borges, Juan Cespedes, and Generation Now (collectively, the "Co-Defendants"), constituted an enterprise (the "Householder Enterprise"), as defined under 18 U.S.C. § 1961(4).[1] (Doc. 22 at 1). The Indictment details the role of the Co-Defendants and other associates in the

---

[1] Defendants Longstreth, Cespedes, and Generation Now have pleaded guilty and will be sentenced at the conclusion of the case. (Min. Entries, Oct. 29, 2020, Feb. 9, 2021). Defendant Neil Clark died and, accordingly, the case against him was dismissed. (Doc. 88). Thus, Defendants Larry Householder and Matthew Borges are the only remaining defendants.

Householder Enterprise, and states that the purpose of the Householder Enterprise was to grow Defendant Householder's political power, to enrich the Householder Enterprise and its members and associates, and to conceal these activities from public exposure and potential prosecution. (*Id*. at 10).

The Indictment alleges that the Co-Defendants, being employed by and/or associated with the Householder Enterprise, knowingly and intentionally conspired to participate in the conduct of and to conduct the Householder Enterprise's affairs through a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(1), (5). (Doc. 22 at 10). The Indictment also lists indictable acts, in which it is alleged that the members of the Householder Enterprise engaged, including: honest services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346; interference with commerce, robbery, or extortion, in violation of 18 U.S.C. § 1951; racketeering, including multiple acts of bribery under Ohio Rev. Code § 3517.22(a)(2), in violation of 18 U.S.C. § 1952; money laundering, in violation of 18 U.S.C. § 1956; engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957; and multiple acts involving bribery, in violation of Ohio Rev. Code § 2921.02. (Doc. 22 at 10-11). The Indictment further details, at length, the manner and means by which the conspiracy operated (*id*. at 11-15), and specific acts that the Co-Defendants allegedly committed in furtherance of the conspiracy (*id*. at 16-40).

Defendant moves to dismiss the Indictment, pursuant to Fed. R. Crim. P. 7(c) and 12(b)(3)(B)(v), arguing that the Indictment fails to set forth the essential elements of a RICO conspiracy or to state an offense.

## II.  STANDARD OF REVIEW

Pursuant to Fed. R. Crim. P. 7(c)(1), "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." An indictment is constitutionally sufficient if it: (1) "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend"; and (2) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also United States v. Craft*, 105 F.3d 1123, 1127 (6th Cir. 1997) ("A conspiracy indictment is valid if it embraces the essential elements of the conspiracy charged, adequately apprises the defendant of the charges so that the defendant may intelligently prepare his or her defense and provides protection against future prosecutions") (citing *Sandroff v. United States*, 158 F.2d 623, 624–25 (6th Cir. 1946)). Apart from protecting the rights of the accused, the constitutional requirements of a valid indictment further "inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction …." *Russell v. United States*, 369 U.S. 749, 768 (1962).

Thus, an indictment is legally deficient where it fails to set forth facts which constitute an offense or to identify the essential elements of the offense. *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001). Such deficiencies cannot be remedied by amending the indictment or ordering the Government to provide a bill of particulars. *Russell*, 369 U.S. at 769-771.

Accordingly, a defendant may bring a motion to dismiss, asserting a defect in the indictment, if the indictment fails to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). When the court reviews such a motion, "[t]he indictment must be read as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007) (citing *United States v. Reed,* 77 F.3d 139, 140 n. 1 (6th Cir. 1996) (en banc)). If and as appropriate, the court "may ordinarily make preliminary findings of fact necessary to decide questions of law … so long as the trial court's conclusions do not invade the province of the ultimate factfinder." *Craft*, 105 F.3d at 1126. But "courts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based." *Landham*, 251 F.3d at 1080 (emphasis added).

Ultimately, minor defects, such as clerical or citation errors, that neither mislead nor prejudice a defendant are not a basis upon which to dismiss an indictment. Fed. R. Crim. P. 7(c)(2), 52. However, if the court finds that "the indictment is legally deficient, the proper result is dismissal of the indictment." *Landham*, 251 F.3d at 1080.

### III.  ANALYSIS

Defendant argues that the Indictment is deficient because: (A) the Indictment fails to plead a RICO "enterprise"; (B) the Indictment fails to plead a "pattern of racketeering activity"; and (C) the state court predicate offenses are improper.

As set forth, *infra*, the Court finds no merit to Defendant's arguments. In sum, Defendant's motion is largely premised on the notion that the Indictment must meet a heightened pleading standard, akin to a civil fraud complaint. But this is not the case for

4

a criminal indictment, even for a RICO offense. And, in any event, the Indictment here is sufficiently specific to pass muster.

### A. The Indictment Sufficiently Pleads a RICO "Enterprise"

Defendant argues that the Government fails to plead any facts to support the structural features of a RICO "enterprise." (Doc. 105 at 6). Rather, Defendant asserts that the Indictment merely "identifies the [Co-]Defendants as allegedly being members of the association-in-fact enterprise and then states, in a circular fashion, that their purpose was to "achiev[e] the objectives of the enterprise." (*Id.*) (quoting Doc. 22 at 1). Defendant further asserts that the Indictment fails to specify the relationship between the Co-Defendants and how they coordinated to achieve a common purpose. (Doc. 105 at 7-8). The Court disagrees.

Pursuant to 18 U.S.C. § 1961(4), a RICO "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." In other words, RICO essentially creates two categories of enterprises: (1) legal entities such as corporations and partnerships; and (2) informal associations-in-fact. *United States v. Turkette*, 452 U.S. 576, 581-82 (1981).[2]

Thus, an "enterprise is an entity, for present purposes[,] a group of persons associated together for a common purpose of engaging in a course of conduct." *Id*. at 583. The statute does not specify "the outer boundaries of the 'enterprise' concept," but

---

[2] In the instant case, the Government has alleged an association-in-fact.

5

the definition is to be broadly construed in order to effectuate the statute's remedial purpose. *Boyle v. United States*, 556 U.S. 938, 944 (2009). Proving the existence of a RICO enterprise requires "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Turkette*, 452 U.S. at 583.

As to the organization, the Supreme Court has explained that the structure of the enterprise does not need to be formal, sophisticated, or complex. *Boyle*, 556 U.S at 948.

> [A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose. Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods – by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies.

*Id*. (citing generally, *Turkette*, 452 U.S. 576). Rather, an association-in-fact enterprise is sufficiently structured if it includes "at least three features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946.

Here, contrary to Defendant's assertions, the Indictment sets forth, in detail, the connection of each of the Co-Defendants to one another, including Defendant Householder's connection to every other Co-Defendant and unindicted associates. (Doc. 22 at 2-10). Moreover, the Indictment goes beyond merely alleging a surface-level or coincidental connection between the Co-Defendants. Rather, the Indictment sets forth

6

the Co-Defendants' concerted effort, working together as a cohesive structure, over time, to manipulate the legislative process, obtain and retain political power on behalf of Defendant Householder, benefit financially, and obfuscate the nature of their activities.

In short, the Indictment sufficiently alleges that the Co-Defendants formed an association-in-fact enterprise, including "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946. Accordingly, the Court finds that the Indictment sufficiently pleads the existence of a RICO enterprise.

### B. The Indictment Sufficiently Pleads a "Pattern of Racketeering Activity"

Next, Defendant argues that the Indictment fails to plead a "pattern of racketeering activity" or that the Co-Defendants conspired to commit the "underlying substantive" offense.[3] (Doc. 105 at 6-12). Defendant further argues, in essence, that the Indictment fails to specify how the alleged conduct constitutes the criminal act of bribery (*i.e.*, a quid pro quo) as opposed to the natural course of political activities. And, as a result, Defendant Householder argues that the bribery and money laundering-related predicate offenses should be stricken from the Indictment.

Pursuant to the RICO statute, it is unlawful for any person who is either employed by or associated with an enterprise "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity …." 18 U.S.C. § 1962(c). A "'pattern of racketeering activity' requires at least two acts of

---

[3] Though the underlying substantive crime in this case is the RICO offense, Defendant's argument appears to be focused on the *predicate* offenses.

7

racketeering activity," of which the first and last acts must have occurred within the statute's specified timeframe. 18 U.S.C. § 1961(5). And "racketeering activity" is defined as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical …, which is chargeable under State law and punishable by imprisonment for more than one year," as well as any of the long-list of federal predicate offenses included within the statute's definition. 18 U.S.C. § 1961(1).

In short, a pattern of racketeering activity requires at least two predicate acts of racketeering, "occurring over an extended period of time," which acts are "connected to the enterprise's affairs and operations." *United States v. Nicholson*, 716 F. App'x 400, 407 (6th Cir. 2017) (citations omitted); *see also Turkette*, 452 U.S. at 583 (proving a "pattern of racketeering activity" requires "evidence of the requisite number of acts of racketeering committed by the participants in the enterprise").

Notably, however, "to prove RICO *conspiracy*, the prosecution is not required to show that a defendant actually committed a racketeering act or any overt act at all." *Nicholson*, 716 F. App'x at 407 (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997)). "Instead, a RICO conspiracy conviction can be sustained if a defendant agreed that either he or someone else would commit at least two RICO predicate acts," and "[t]his agreement … may be inferred from a defendant's acts." *Nicholson*, 716 F. App'x at 408 (citations omitted).

Here, as an initial matter, the Court finds no merit in Defendant's contention that the Indictment fails to identify specific payments in exchange for specific official actions.

This argument fails, fundamentally, because such *specificity* is <u>not the pleading standard for an indictment</u>.[4]

Moreover, Defendant acknowledges that the Indictment alleges a bribery scheme, set forth in the Indictment as follows:

> Householder's Enterprise agreed to receive and accept millions of dollars in bribe payments from Company A, including bribe payments paid through GENERATION NOW, in return for HOUSEHOLDER taking specific official action for the benefit of Company A, namely to help enact into law legislation that would go into effect and save the operation of the Nuclear Plants.

(Doc. 105 at 12-13) (citing Doc. 22 at 12-13). However, Defendant responds to this allegation by stating that "the specific official actions the government alleges Householder performed (crafting legislation, creating House committees, and voting on

---

[4] Defendant filed a Notice of Supplemental Authority, citing a recent Order out of the Southern District of New York ("SDNY"), issued in the case *United States v. Benjamin*, No. 21-cr-706 (JPO), 2022 WL 17417038 (S.D.N.Y. Dec. 5, 2022). (Doc. 159). In *Benjamin*, the SDNY District Court dismissed counts of conspiracy to commit bribery and honest services wire fraud (18 U.S.C. § 371); bribery (18 U.S.C. § 666(a)(1)(B)); and honest services wire fraud, noting that the Indictment failed to explicitly allege a quid pro quo. 2022 WL 17417038 at *15. The SDNY District Court made clear, however, that its decision to dismiss the counts was made in reliance on Second Circuit precedent. *Id.* ("Bound by guidance from the Second Circuit, the Court concludes that Counts One, Two, and Three of the Indictment must be dismissed for failure to charge an essential element"). In that regard, Defendant's reliance on *Benjamin* is misplaced here, because the *Benjamin* ruling conflicts with Sixth Circuit precedent. *See*, *e.g.*, *United States v. Terry*, 707 F.3d 607, 613 (6th Cir. 2013) ("So long as a public official agrees that payments will influence an official act, that suffices. What is needed is an agreement, full stop, which can be formal or informal, written or oral. As most bribery agreements will be oral and informal, the question is one of inferences taken from what the participants say, mean and do, all matters that juries are fully equipped to assess … [And] [e]ach payment did not need to be tied to a specific official act, so long as [the defendant] understood that, whenever the opportunity present[ed] itself, [he] would take specific official actions on the giver's behalf") (citations and quotation marks omitted); *United States v. Blandford*, 33 F.3d 685, 696 (6th Cir. 1994) ("that the quid pro quo of *McCormick* is satisfied by something short of a formalized and thoroughly articulated contractual arrangement (*i.e.*, merely knowing the payment was made in return for official acts is enough)").

9

HB 6) were actions Householder performed *years* after Generation Now received its first contribution from FirstEnergy." (Doc. 105 at 13). This argument is premature. Specifically, Defendant conflates what may be an argument in his defense (*i.e.*, a *factual* determination) with his argument for why the Indictment is *legally* deficient. And Defendant further conflates what *the Indictment must contain* to survive dismissal with what *the Government must prove at trial* to secure a conviction. In short, at trial, the Government will be required to present specific evidence in order to secure a conviction, and Defendant will have the opportunity to challenge that evidence through cross-examination and/or the presentation of his own evidence (though he is not required to do so). Weighing this evidence is the jury's role—not the Court's.

At this stage, pretrial, the Court's sole focus is whether the Indictment is legally sufficient to put Defendant on notice of the offense with which he is charged. And the Court finds no deficiency in that regard. Specifically, the Indictment sufficiently pleads a "pattern of racketeering activity." That is, the Indictment: alleges that from 2016 to 2020, the Co-Defendants conspired to violate RICO under 18 U.S.C. § 1962(c); identifies, by statute, the specific offenses that constitute "racketeering activity"; and alleges that "[i]t was part of the conspiracy that each Defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise." (Doc. 22 at 10-11). The Indictment also goes further by describing some of the conduct in which the Co-Defendants allegedly engaged in furtherance of the conspiracy. (*Id*. at 11-40). Admittedly, the Indictment does not label each alleged act

with its related racketeering activity—but the Government has no obligation to spoon-feed its entire case to a defendant at any point pretrial, let alone in an indictment.

Ultimately, because the Indictment tracks the language of the statute and further provides factual allegations that adequately inform Defendant Householder of the specific offense with which he is charged, the Indictment is legally sufficient. *Hamling*, 418 U.S. at 117.

### C. The State Court Predicate Offenses are Properly Included

Among the predicates offenses listed in the Indictment, the Government includes acts relating to: racketeering, including multiple acts of bribery under Ohio Rev. Code § 3517.22(a)(2), in violation of 18 U.S.C. § 1952 (the "Travel Act"); and multiple acts involving bribery, chargeable under Ohio Rev. Code § 2921.02. (Doc. 22 at 11). As to these two predicates, Defendant argues that, "[e]ven if the Court does not dismiss the Indictment, the Court should dismiss the State-law predicate offenses the Defendants allegedly conspired to commit." (Doc. 105 at 14-17).

Specifically, as to the Travel Act, Defendant argues that the Ohio statute requires, as a prerequisite to prosecution, that a complaint be "filed with the Ohio elections commission under section 3517.153 of the Revised Code." (Doc. 105 at 15) (citing Ohio Rev. Code § 3517.22(C)). Defendant asserts that, because the Government filed no such complaint, it has failed to comply with the Ohio statute and therefore cannot prove that Defendant violated state law. And as to the Ohio bribery predicates, Defendant argues that the Indictment charges a RICO *conspiracy*, but Ohio law does not recognize conspiracy to commit bribery.

11

Both of these arguments fail for the same reason—<u>the Government is not actually charging Defendant with the predicate offenses</u>. As previously stated, it is unlawful for anyone employed or associated with an enterprise "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). And "racketeering activity" is defined as any act which is "charge<u>able</u>" or "indict<u>able</u>" under the list of offenses included in 18 U.S.C. § 1961(1) (emphasis added). In other words, the RICO statute calls for the commission of acts that *could be* charged, not acts that *will be/have been* charged. As the Government does not actually have to charge a predicate offense separately, the Government also has no obligation to undertake the administrative steps that would accompany prosecuting a predicate offense.

Moreover, Defendant's argument is particularly meaningless in the context of a RICO <u>conspiracy</u>. "[T]o prove RICO *conspiracy*, the prosecution is not required to show that a defendant actually committed a racketeering act or any overt act at all." *Nicholson*, 716 F. App'x at 407 (citing *Salinas*, 522 U.S. at 65).[5] Nor would the Government have to prove that it could have charged <u>conspiracy</u> to commit bribery under state law merely because the RICO offense is charged as a conspiracy. "[A] RICO conspiracy conviction can be sustained if a defendant <u>agreed that either he or someone else would commit at least two RICO predicate acts</u>." *Nicholson*, 716 F. App'x at 408 (citations omitted)

---

[5] *See also United States v. Saadey*, 393 F.3d 669, 677 (6th Cir. 2005) ("conviction on a charge of RICO conspiracy does not require the government to prove that *any* predicate act was actually committed at all. Therefore, the fact that the conduct charged [under the Ohio Revised Code] cannot constitute a predicate offense is immaterial to [the defendant's] conviction").

(emphasis added). Thus, there is no requirement that the Government prove a conspiracy of the *predicate offense*—just a conspiracy of *the RICO offense*.

For these reasons, dismissal of the Travel Act and Ohio bribery predicates is unwarranted.

## IV. CONCLUSION

Accordingly, based upon the foregoing, Defendant's motion to dismiss (Doc. 105) is **DENIED**.

**IT IS SO ORDERED.**

Date: 1/3/2023

Timothy S. Black
United States District Judge