UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:20-cr-77 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| LARRY HOUSEHOLDER (1), | : | |
| | : | |
| Defendant. | : | |

**ORDER DENYING DEFENDANT HOUSEHOLDER'S MOTION TO SEVER**

This criminal case is before the Court on Defendant Larry Householder's motion to sever (Doc. 106) and the parties' responsive memoranda (Docs. 111, 117).

## I.  BACKGROUND

On July 30, 2020, a federal Grand Jury returned a single-count Indictment, charging Defendant Larry Householder and five co-defendants with participating in a Racketeer Influenced and Corrupt Organizations ("RICO") conspiracy, in violation of 18 U.S.C. § 1962(c), (d).  (Doc. 22 at 10, 40).

Specifically, the Indictment alleges that, beginning in 2016 and continuing until 2020, Defendants Larry Householder, Jeffrey Longstreth, Neil Clark, Matthew Borges, Juan Cespedes, and Generation Now (collectively, the "Co-Defendants"), constituted an enterprise (the "Householder Enterprise"), the purpose of which enterprise was to grow Defendant Householder's political power, to enrich the Householder Enterprise and its members and associates, and to conceal these activities from public exposure and potential prosecution.  (*Id*. at 1, 10).

Following the Indictment, Defendants Longstreth, Cespedes, and Generation Now pleaded guilty to the offense charged. (Min. Entries, Oct. 29, 2020, Feb. 9, 2021). Defendant Neil Clark died and, accordingly, the case against him was dismissed. (Doc. 88). Thus, Defendants Larry Householder and Matthew Borges are the only remaining defendants.

The case as to Defendants Householder and Borges is set to proceed to *voir dire* on January 20, 2023, and to jury trial on January 23, 2023. (Doc. 118). However, Defendant Householder has filed the instant motion seeking to sever his trial from that of Defendant Borges. (Doc. 106).

## II. STANDARD OF REVIEW

"[An] indictment or information may charge 2 or more defendants [in the same or separate counts] if [the defendants] are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). And "[p]ersons jointly indicted normally should be tried together." *United States v. Gallo*, 763 F.2d 1504, 1525 (6th Cir. 1985) (citing *United States v. Stull*, 743 F.2d 439 (6th Cir. 1984)). Indeed, "[it is] not just more efficient to have one trial and one set of evidentiary admissions for all defendants at once, … but a joint trial also decreases the risk of inconsistent verdicts." *United States v. Tisdale*, 980 F.3d 1089, 1094 (6th Cir. 2020) (citing *Richardson v. Marsh*, 481 U.S. 200, 210 (1987); *United States v. Warner*, 971 F.2d 1189, 1196 (6th Cir. 1992)). In short, "[j]oint trials are favored." *United States v. Tocco*, 200 F.3d 401, 413 (6th Cir. 2000).

However, the Court may sever the trials of jointly-indicted defendants "[i]f the joinder … appears to prejudice a defendant …." Fed. R. Crim. P. 14(a). But "Rule 14 does not require severance even if prejudice is shown … [and] it is well-settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro v. United States*, 506 U.S. 534, 538-39, 540 (1993). Rather, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id*. at 539 (citing *Richardson*, 481 U.S. at 211). And "[Rule 14] leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id*.

Thus, "a district court should grant a severance [of properly joined defendants] under Rule 14 **<u>only if there is a serious risk</u>** <u>that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence</u>." *Id.* (emphasis added). "The defendant 'has a heavy burden of showing specific and compelling prejudice' from having a joint trial." *Tocco*, 200 F.3d at 413 (quoting *United States v. Harris*, 9 F.3d 493, 500 (6th Cir. 1993)).

### III. ANALYSIS

Defendant Householder argues that "[t]he government improperly joined Householder and Borges as defendants in this case," and that while the "Indictment tried to allege a sweeping RICO conspiracy among the defendants, the government, in fact, alleged multiple conspiracies that do not involve Householder and Borges." (Doc. 106 at 1). Thus, Defendant Householder argues that "severance of these misjoined counts and defendants is mandatory." (*Id.*) In the alternative, Defendant Householder argues that

3

severance is warranted, because proceeding to trial jointly will "impermissibly prejudice Householder." (*Id*.)  In particular, Defendant Householder alleges that the admission of Defendant Borges's proffer statements would cause a *Bruton* issue.  (*Id*. at 4, 8-11); *see Bruton v. United States*, 391 U.S. 123, 127 (1968).  Finally, Defendant Householder argues that the COVID-19 pandemic warrants severance, as severing the two defendants would result in a shorter trial for each, and thereby minimize the likelihood that trial will be disrupted by the illness of trial participants.  (*Id*. at 11-12).

The Government responds that Defendants Householder and Borges are properly joined in the Indictment and should proceed to trial together.  (Doc. 111).  Specifically, the Government argues that joinder is proper because Defendants Householder and Borges are charged with a RICO conspiracy and are alleged to be members of the same RICO enterprise (*i.e.*, the Householder Enterprise).  (*Id*. at 2-5).  The Government further argues that any *Bruton* issue can easily be remedied by less drastic means than severance.  (*Id*. at 5-8).  Finally, the Government asserts that the COVID-19 pandemic does not warrant severance, because the Court can implement safety protocols to minimize the risk.  (*Id*. at 9-11).  Moreover, the Government notes that severing the trials would only amplify the risk of exposure to all trial participants, and would result in massive inefficiencies and a waste of judicial resources.  (*Id*.)

As set forth fully, *infra*, the Court finds no merit in Defendant Householder's misjoinder argument.  Moreover, the Court finds that Defendant Householder has failed to meet his burden to show prejudice sufficient to warrant severance.  Less drastic means will suffice to cure any potential prejudice.  Accordingly, severance is unwarranted.

### A. The Indictment Properly Joins Defendants Householder and Borges

Defendant Householder argues that he is improperly joined with Defendant Borges in the Indictment and, therefore, the trials must be severed. (Doc. 106 at 6-8). Specifically, Defendant Householder argues that he and Defendant Borges are charged as "independent spokes" in a "rimless wheel" conspiracy, centered around FirstEnergy. (*Id.*) Defendant further argues that, "[a]s alleged in the Indictment, Householder and Borges had completely separate roles in the alleged RICO conspiracy," and that "[t]he government does not allege that Householder knew of Borges's actions or that Householder and Borges did anything in furtherance of a single enterprise." (*Id.* at 7-8). In short, Defendant Householder argues that the Indictment "alleged at least two conspiracies: one involving Householder and another involving Borges," and thus the two cases should be tried separately. (*Id.* at 8).

In response, the Government argues that because the Indictment specifically charges a RICO conspiracy, Defendant Householder's "rimless wheel" argument is flawed. (Doc. 111 at 2-4). The Government notes that "the focus of RICO conspiracy is the defendant's agreement to participate in the conduct of the affairs of the *enterprise* through a pattern of racketeering activity; not the defendant's agreement to commit a predicate racketeering act." (*Id.* at 4). The Government asserts that, consistent with the elements of a RICO conspiracy charge, the Indictment alleges that the Co-Defendants and others all constituted an "enterprise" and further alleges that the Co-Defendants "did knowingly and intentionally conspire with each other and with others known and unknown … to conduct and participate directly and indirectly, in the conduct of the

5

affairs of the enterprise through a pattern of racketeering." (*Id.* at 3). Accordingly, the Government argues that Defendants Householder and Borges are properly joined for purposes of a RICO conspiracy. (*Id.* at 2-4). The Court agrees.

At its core, Defendant Householder's argument fails because Defendant wholly mischaracterizes the allegations contained in the Indictment. Specifically, Defendant Householder asserts that the Indictment fails to allege that "Householder knew of Borges's actions or that Householder and Borges did anything in furtherance of a single enterprise." (Doc. 106 at 7-8). However, the Indictment expressly alleges that the Co-Defendants were all members of the same RICO enterprise (*i.e.*, the Householder Enterprise), and that the Householder Enterprise "constituted an ongoing organization whose members functioned as a continuing unit for a common purpose achieving the objectives of the enterprise …." (Doc. 22 at 1-2); *see United States v. Turkette*, 452 U.S. 576, 583 (1981) (defining an association-in-fact enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct") (emphasis added). The Indictment further explains that the purpose of the Householder Enterprise was to grow Defendant Householder's political power, to enrich the Householder Enterprise and its members and associates, and to conceal these activities from public exposure and potential prosecution. (*Id.* at 10). And the Indictment specifically alleges that the Co-Defendants all "knowingly and intentionally conspire[d] with each other" to conduct the affairs of the Householder Enterprise through a pattern of racketeering activity. (Doc. 22 at 10) (emphasis added). Thus, the Indictment more than sufficiently alleges the joint efforts of all Co-Defendants—which includes Defendants

Householder and Borges—in knowingly conspiring with each other to conduct the affairs of a single RICO enterprise. *See also n.1, infra.*

Defendant Householder's argument that the Indictment actually charges more than one conspiracy is equally without merit. Specifically, Defendant Householder notes that "Householder and Borges had completely separate roles in the alleged RICO conspiracy." (Doc. 106 at 7). But there is no requirement that every member of a conspiracy must perform the same role his alleged co-conspirators. Indeed, logic alone would dictate that no criminal conspiracy could operate efficiently if every co-conspirator were tasked with the same job each of his co-conspirators.

In *Salinas v. United States*, the U.S. Supreme Court clearly explained how the division of labor may operate in a conspiracy:

> A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. … <u>The partners in the criminal plan must agree to pursue the same criminal objective **and may divide up the work**, yet each is responsible for the acts of each other</u>. … If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators.

522 U.S. 52, 63–64 (1997) (internal citations omitted) (emphasis added). And, critically, the RICO conspiracy statute in particular is intentionally drafted to cast a wider net than a general conspiracy charge. *Id*. at 63-65 ("The RICO conspiracy provision, then, is even more comprehensive than the general conspiracy offense … [and] [t]he RICO conspiracy

statute, § 1962(d), broadened conspiracy coverage by omitting the requirement of an overt act").[1]

For purposes of a RICO conspiracy, what matters is that "the defendant intended to further an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] criminal offense [and] it suffices that he adopt the goal of furthering or facilitating the criminal endeavor.'" *United States v. Rios*, 830 F.3d 403, 424 (6th Cir. 2016) (quoting *United States v. Fowler*, 535 F.3d 408, 421 (6th Cir. 2008)). In the instant case, the alleged criminal endeavor, in short, was for the members and associates of the Householder Enterprise to benefit financially from Defendant Householder's position of power. Furthering this alleged criminal endeavor was not accomplished through one singular act, and thus it is to be expected that the Co-Defendants' roles will vary. Such variation, however, does not amount to multiple alleged conspiracies—it amounts to one, ongoing RICO conspiracy involving multiple alleged co-conspirators.

---

[1] As the Sixth Circuit explains in *United States v. Sosa-Baladron*, even with regard to a general conspiracy:

> A single conspiracy is not converted to multiple conspiracies simply because it can be subdivided, or because there are changes in the individuals involved or the roles that they play in the conspiracy…. <u>The participants need not know each of the other co-conspirators nor the details of their actions or roles in the conspiracy</u>. … But the government must show that the alleged co-conspirators agreed to participate in a collective venture directed toward a common goal…. A tacit or material understanding among the parties to a conspiracy is sufficient to establish the agreement, [and] conspiracy may be inferred from circumstantial evidence which may reasonably be interpreted as participation in a common plan.

800 F. App'x 313, 321 (6th Cir. 2020) (internal quotation marks and citations omitted) (emphasis added).

8

Pursuant to Fed. R. Crim. P. 8(b), the Court finds that the Indictment properly joins Defendants Householder and Borges as co-conspirators. Accordingly, severance of the trial is not warranted.

### B. Severance is Unnecessary to Avoid Risk of Prejudice

Defendant Householder also argues that a joint trial will result in prejudice and create a Confrontation Clause issue under *Bruton*. (Doc. 106 at 8-11). Specifically, Defendant Householder argues that Defendant Borges engaged in proffer sessions with the Government and, during the course of the trial, the Government may seek to introduce Defendant Borges's statements during the trial. (*Id.*) Defendant Householder argues that, to the extent he is implicated in any of Defendant Borges's statements, the introduction of those statements at trial would deprive Defendant Householder of his right to confront the witnesses against him, unless Defendant Borges testifies (thereby creating the *Bruton* issue). (*Id.*) Defendant Householder acknowledges that the Court could typically remedy a *Bruton* issue without resorting to severance, but Defendant argues that the less-severe remedies will not suffice in this case. (*Id*. at 10-11; Doc. 117 at 2).

In response, the Government argues that a proper limiting instruction and redaction of the statements will sufficiently eliminate any risk of prejudice in this case. (Doc. 111 at 5-7). More importantly, however, the Government argues that Defendant Borges's statements will not create a *Bruton* issue, because the Government does not intend to introduce the portions of Defendant Borges's statements that incriminate Defendant Householder unless Defendant Borges were to testify. (Doc. 111 at 8*)*.

9

In *Bruton,* the U.S. Supreme Court held that "a defendant is deprived of his Sixth Amendment right of confrontation when the **facially incriminating** confession of a **nontestifying** codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 207 (1987) (emphasis added). However, "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id*. at 211.[2]

Here, the Court first notes that the possibility of a *Bruton* issue is, at best, remote and speculative. Specifically, *Bruton* only applies to the facially incriminating statements of a non-testifying co-defendant. Thus, there is no *Bruton* issue *unless* Defendant Borges elects not to testify (as is his absolute right). Additionally, there can be no *Bruton* issue *unless* the Government offers Defendant Borges's statements into evidence **and** those statements facially implicate Defendant Householder. And, in that regard, it bears noting that, pursuant to Defendant Borges's proffer agreement, the Government cannot present his statements *unless* Defendant Borges first takes a position inconsistent with those statements. The Court will not sever the trial of two properly joined defendants on the off-chance that Defendant Borges's statements are introduced at trial, that the statements do facially implicate Defendant Householder, **and** that Defendant Borges will not testify.

---

[2] The Supreme Court also recognized that "[j]oint trials play a vital role in the criminal justice system," and thus declined to adopt a bright-line rule requiring severance or exclusion anytime a potential *Bruton* may arise—opting instead to encourage a case-by-case, tailored remedy, based on the circumstances that present. *Id*. at 206-11.

Moreover, the Government has stated in its response that "Borges did implicate Householder with respect to other aspects of the conspiracy and Borges' knowledge of Householder's conduct … [but] the government does not intend to refer to these statements if Borges does not testify." (Doc. 111 at 8, n.5) (emphasis added). The Court relies on the representations of the Government, which representations further evidence that a *Bruton* issue is very unlikely to arise.

Finally, even assuming that the Government elects to offer Defendant Borges's statements into evidence, and assuming that the statements facially implicate Defendant Householder, and further assuming that Defendant Borges has not yet testified (or has already elected not to testify), the Court finds that redaction and a proper limiting instruction is more than sufficient to eliminate a *Bruton* issue in this case. Specifically, the Government notes that Defendant Borges's statements implicate Defendant Householder "with respect to other aspects of the conspiracy…." (*Id.*) Given the number of co-defendants, unindicted co-conspirators, and other associates in this case, the Court finds that these statement can be adequately redacted, so as to obscures any reference to or inference regarding Defendant Householder. With regard to Defendant Borges's statements about his "knowledge of Householder's conduct," these statements may, admittedly, be more difficult to adequately redact. For instance, to the extent that the conduct involves legislative action, Defendant Householder is the only Co-Defendant who fits the bill. Nevertheless, the Court will not speculate regarding redaction at this time. Suffice it to say, of the options the Court has before it to remedy this entirely hypothetical scenario, severance is wholly unwarranted.

11

The Court finds that Defendant Householder has failed to meet his burden to show that he will be substantially prejudiced by proceeding to trial jointly with Defendant Borges. Accordingly, the Court declines to sever Defendants Householder's and Borges's trial.

### C. The Court Will Implement Appropriate COVID-19 Protocols

Finally, Defendant Householder argues that severance is warranted due to the COVID-19 pandemic. (Doc. 106 at 11-12). Specifically, Defendant Householder argues that proceeding to trial jointly will increase the number of people who are required to be present in the courtroom each day and would prolong the duration of the trial iself, thereby creating "[a] greater [] chance the proceedings will be hampered or delayed due to illness of Defendants, counsel, the jury, or the court." (*Id*. at 12). Accordingly, Defendant Householder asserts that severing the trial "will result in a shorter trial (*e.g.*, only one cross-examination—instead of two—per witness), remove the need to present evidence relevant to just Householder or just Borges, and reduce the risk posed by the pandemic." (*Id*.)

The Government responds that Defendant Householder's proposed severance would not decrease the risk to everyone safety, but indeed would effectively double the risk for all involved. (Doc. 111 at 9). The Government notes that because Defendant Householder and Defendant Borges are charged as co-conspirators in the same RICO conspiracy, the Government the evidence against both Defendants is one and the same. (*Id*.) Therefore, severing the trials would result in the Government presenting the same witnesses and evidence—not once, but twice—thereby doubling the risk of exposure and

12

the inconvenience to everyone involved. The Government argues that "such a procedure would be a significant waste of judicial and prosecutorial resources, and would be antithetical to the strong policy favoring joint trials – a policy intended to ensure that 'a given transaction need only be proved once.'" (*Id.*) (quoting *United States v. Swift*, 809 F.2d 320, 322 (6th. Cir. 1987)). Finally, the Government notes that this Court held an equally lengthy jury trial in the fall of 2021 (*United States v. Yanjun Xu*, No. 1:18-cr-43), during which trial the Court effectively implemented protocols that ensured the safety of all participants. (*Id.*)

The Court agrees that severing this trial will effectively amplify the risk of exposure and the inconvenience to the parties, the witnesses, the Court, and the public. Although Defendant Householder is correct that severance will likely result in a slightly shorter trial for himself and Defendant Borges, holding two separate trial would nearly double the time, effort, and risk of exposure for everyone else involved. Thus, any benefit that comes from holding a marginally shorter trial per defendant is vastly outweighed by the extraordinary waste of time and resources that such a procedure would create.

Additionally, as the Government notes, this Court has experience holding a lengthy jury trial during the pandemic. And the Court will implement similar protocols during Defendants Householder and Borges's joint trial, in order to minimize the risk to the parties, the witnesses, the jurors, the public, and the Court.[3]

---

[3] The Court will discuss its safety protocols with the parties during the Final Pretrial Conference.

13

## IV.  CONCLUSION

Based upon the foregoing, Defendant Householder's motion to sever (Doc. 106) is **DENIED**.

**IT IS SO ORDERED.**

Date:  1/3/2023

Timothy S. Black
United States District Judge