23-3649

1                UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF OHIO
2                     WESTERN DIVISION
                        -   -   -
3
UNITED STATES OF AMERICA,        : **CASE NO. 1:20-CR-0077**
4                                :
               Plaintiff,        : **JURY TRIAL, DAY 23**
5          vs.                   :
                                 : **6th day of March, 2023**
6    LARRY HOUSEHOLDER, et al.    :
                                 : **9:30 a.m.**
7              Defendant.        :

8                       -   -   -
                **TRANSCRIPT OF PROCEEDINGS**
9        **BEFORE THE HONORABLE TIMOTHY S. BLACK, JUDGE**
                        -   -   -
10
APPEARANCES:
11
For the Plaintiff:
12                      Emily N. Glatfelter, Esq.
                        Matthew Charles Singer, Esq.
13                      Megan Gaffney Painter, Esq.
                        Assistant United States Attorneys
14                      221 East Fourth Street, Suite 400
                        Cincinnati, Ohio 45202
15

16   For the Defendant, Larry Householder:

17                      Nicholas R. Oleski, Esq.
                        Robert T. Glickman, Esq.
18                      McCarthy, Lebit, Crystal & Liffman Co.
                        1111 Superior Avenue East, Suite 2700
19                      Cleveland, Ohio 44114
                                  and
20                      Steven L. Bradley, Esq.
                        Marein and Bradley
21                      526 Superior Avenue, Suite 222
                        Cleveland, Ohio 44114
22

23

24

25

*Mary A. Schweinhagen, RDR, CRR  (937) 512-1604*

23-3650

1   For the Defendant, Matthew Borges:

2                           Karl Herbert Schneider, Esq.
                            Todd Aaron Long, Esq.
3                           McNees Wallace & Nurick, LLC
                            21 East State Street, Suite 1700
4                           Columbus, Ohio 43215

5   Also present:       Larry Householder
                        Matthew Borges
6                       Agent Wetzel

7   Law Clerk:          Cristina V. Frankian, Esq.

8   Courtroom Deputy:   Rebecca Santoro

9   Stenographer:       Mary Schweinhagen, RDR, RMR, CRR
                        United States District Court
10                      200 West Second Street
                        Dayton, Ohio 45402
11
                    Proceedings recorded in stenotype.
12     Transcript produced with computer-aided transcription.

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | **(PROCEEDINGS)** |
| 2 | (Proceedings held in open court outside the presence of |
| 3 | the jury at 9:37 a.m.) |
| 4 | THE COURT: Sorry to be a couple minutes late. |
| 5 | We're back in the open courtroom outside the presence of the |
| 6 | jury because we are here for the jury instructions charging |
| 7 | conference with the attorneys. |
| 8 | The three attorneys for the United States, |
| 9 | Ms. Glatfelter, Mr. Singer, and Ms. Painter, are present, as |
| 10 | is the representative Agent Wetzel and the assistant. On |
| 11 | behalf of Mr. Householder, we have Mr. Glickman and Nick |
| 12 | present. And on behalf of Mr. Borges, we have Mr. Long |
| 13 | present, and Mr. Borges is present. |
| 14 | The parties are not required to be here. The Court does |
| 15 | acknowledge the presence of Mr. Borges and the agent. |
| 16 | The lawyers are not required to be here but for those who |
| 17 | are working on jury instructions. |
| 18 | Given that we have accomplished a great deal |
| 19 | electronically, we're in good shape for this morning. I told |
| 20 | you the last time we were together at the jury charging |
| 21 | conference I intended to listen carefully, not argue, take |
| 22 | your comments into consideration, discharge my duty, and come |
| 23 | back with a final set of jury instructions. |
| 24 | I told you I anticipated walking through it page by page, |
| 25 | and if there were something that was omitted that's not on a |

1     page we walk through, you are welcome to bring it to my

2     attention.

3         So I would like to proceed.  Is the government ready?

4             MR. SINGER:  Yes, Your Honor.

5             THE COURT:  Mr. Householder's counsel as well?

6             MR. OLESKI:  Yes, Judge.

7             THE COURT:  Mr. Borges's counsel as well?

8             MR. LONG:  Yes, Your Honor.

9             THE COURT:  All right.  Well, I'm ready to go.  I am

10    just going to walk through this page by page.  I don't intend

11    to address the Table of Contents.

12        I'm working from the redlined copy so it helps me

13    identify where we are.

14        Does anyone wish to be heard on page 1?

15        Hearing nothing.  Anybody wish to be heard on page 2?

16        Hearing nothing, page 3.

17        Page 4?  Page 5?  Page 6?  Page 7?

18        Presumably, we will simply eliminate the yellow

19    highlighted, regarding the stipulations as to authenticity,

20    documents, and business records that we need not present.

21        Page 8?  Page 9?  Page 10?  Page 11?  Page 12?  Page 13?

22    Page 14?  Page 15?

23             MR. OLESKI:  Your Honor.

24             THE COURT:  Comment, yes, sir.

25             MR. OLESKI:  I apologize.

 1          THE COURT:  No.  Go ahead.  Speak right up.

 2          MR. OLESKI:  Back to page 13.

 3          THE COURT:  Yes.

 4          MR. OLESKI:  The highlighted section.

 5          THE COURT:  Yes.

 6          MR. OLESKI:  Paragraph 3.

 7          THE COURT:  Yes.

 8          MR. OLESKI:  We had proposed changing.

 9          THE COURT:  "Will" to "may."

10          MR. OLESKI:  "Will" to "may."  We would ask that the

11   Court change "will" to "may" given that the conspiracy

12   requires an agreement of two or more people.  Mr. Householder

13   and Mr. Borges are two people, so the jury could only consider

14   the involvement of them.  They don't -- the jury doesn't

15   necessarily need to consider the involvement of uncharged

16   parties.

17          THE COURT:  Very well.  I'm not headed there.

18      Page 14?  Page 15?

19      Ms. Frankian?

20      (Pause.)

21          THE COURT:  I want to address the stuff that's in

22   yellow.

23      On page 13, in regard to the objection as to "will"

24   versus "may," conspiracy requires an agreement between two or

25   more persons.  The jury cannot consider the charge without

23-3654

```
 1    considering the involvement of another to some extent.
 2         I hear the defendant's argument.  On page 14, there is
 3    nothing.
 4         On 15, there is nothing.
 5         16, 17, 18.
 6         On page 19, anybody wish to be heard?
 7              MS. GLATFELTER:  Your Honor?
 8              THE COURT:  Yes.
 9              MS. GLATFELTER:  I think that there needs to be an
10    "s" added to "others" in the first paragraph under
11    Allegations.
12              THE COURT:  Say it again.  I'm sorry.  I'll read it.
13    Give me just a minute.  Needs to be an is added to others.
14              MS. GLATFELTER:  Oh, never mind.  I misread.  I
15    misread.  You're okay.  Sorry about that.
16              THE COURT:  All right.  The Court believes that a
17    summary of the allegations is appropriate.  It doesn't feel
18    the need to reiterate the entirety of the indictment or to
19    list all of the manner and means given that an overt act is
20    not required for conviction.  So the Court has proposed the
21    summary and incorporated some minor omits reflected in red.
22         On page 21?
23              MR. OLESKI:  Judge?
24              THE COURT:  Okay.  This is important.
25              MR. OLESKI:  Yes.
```

23-3655

```
1              THE COURT:  Go ahead.

2              MR. OLESKI:  On page 20 of the summary of the

3  allegations.

4              THE COURT:  Yes.

5              MR. OLESKI:  I have one small correction, or

6  proposed edit.  In the very last paragraph on page 20.

7              THE COURT:  Yes.

8              MR. OLESKI:  First sentence, the -- that sentences

9  reads "To defeat a referendum -- the indictment alleges that

10 the enterprise used the bribe payments in furtherance of the

11 conspiracy, including to promote and ensure the passage of HB

12 6, and to defeat the referendum effort that would have

13 resulted in the repeal of HB 6."

14     I propose changing "that would have resulted in the

15 repeal of HB 6" with "a referendum effort that sought to try

16 to repeal HB 6."

17             THE COURT:  "That sought to try to repeal HB 6"?

18             MR. OLESKI:  Correct.  Because the referendum would

19 have only put the issue on the ballot for the voters, not

20 result in the repeal of House Bill 6 had the referendum

21 garnered sufficient signatures.

22             THE COURT:  That's fine, "that sought to repeal."

23     Did you wish to be heard?

24             MR. SINGER:  The government agrees.

25             THE COURT:  Okay.
```

 1              MR. SINGER:  "Sought to repeal" is fine.  "Could

 2     have repealed" or "could repeal," that might be a little

 3     cleaner.

 4              THE COURT:  We'll clean it up.

 5          Page 21, elements.  Anybody wish to be heard?

 6          The Court declines to add defendant's proposed fifth

 7     element as the substance of the proposed element.  It's

 8     already included in the Court's instruction on conspiracy

 9     generally in connection to conspiracy.

10          Any comments on page 22?

11          Page 23?

12              MR. OLESKI:  Judge?

13              THE COURT:  Yes.

14              MR. OLESKI:  On page 22.

15              THE COURT:  Yes.

16              MR. OLESKI:  We would just reiterate our proposed

17     instruction and our objection to the government's proposed

18     instruction, and we would ask that the Court include in

19     defining what an enterprise is, "that the government is

20     required to prove a structure distinct from the pattern from

21     the racketeering acts."  We understand that the Sixth Circuit

22     has not adopted that proposal, but just to preserve the issue,

23     we'd ask the Court to give that instruction.

24              THE COURT:  Very well.

25              MR. LONG:  Your Honor, just for the record, we would

23-3657

```
 1    join that -- join that objection and request.  Thank you.
 2              THE COURT:  Very well.
 3          Does the government wish to be heard on that issue?
 4              MR. SINGER:  No, Your Honor.  Thank you.
 5              THE COURT:  I'm comfortable with the Sixth Circuit
 6    instruction.
 7          Page 23?  Page 24?  Page 25?  Page 26?  Page 27?  Page
 8    28?  Page 29?  Yes?
 9              MR. OLESKI:  Judge?
10              THE COURT:  Yes.
11              MR. OLESKI:  On page 29, I propose a small edit or
12    correction.  The very last paragraph on that page before the
13    yellow highlighting reads "Whether a person or entity is a
14    conspirator or whether a conspiracy existed is for you, the
15    jurors, to decide."
16          I'd just propose flipping conspiracy.  So the sentence
17    should read "Whether a conspiracy existed or a person or
18    entity is a conspirator is for you, the jurors, to decide."
19    Just to flip the order of that phrase in that sentence.
20              THE COURT:  Does the government wish to be heard?
21              MR. SINGER:  No objection, Your Honor.
22              THE COURT:  Very well.  In general, the Court
23    declines to include defendant's proposed edits on the
24    racketeering activity either because they are inaccurate or
25    misleading statements of the law or the Court's instruction
```

23-3658

1    already states what the defendants have proposed.

2         The Court also previously noted that it would not use

3    "the defendant" in the racketeering activity elements given

4    that the jury does not need to find that either defendant

5    actually committed the predicate acts.

6         The Court originally substituted "the accused" for "the

7    defendant," but has now opted to be more specific by changing

8    "the accused" to, quote, "the defendant or a conspirator," end

9    quote.

10        In terms of flipping the order of conspirator versus

11   conspiracy, both sides agree on that.

12        Are there comments on page 30?

13        MR. OLESKI:  Yes, Judge.  And just so I don't have

14   to reiterate this objection for each of the racketeering acts,

15   we would just propose that very first sentence for each one of

16   the instructions on the racketeering acts, that the Court

17   should include reasonable doubt language.  And what I would

18   propose is something along these lines:  "To find that the

19   government has proven this racketeering act, you must find

20   beyond a reasonable doubt," and then the elements of the

21   offense.

22        THE COURT:  Does the government wish to be heard?

23        MR. SINGER:  Your Honor, that's not an accurate

24   statement of the law.  The predicate acts do not need to be

25   found beyond a reasonable doubt.  This is a conspiracy charge.

*Mary A. Schweinhagen, RDR, CRR  (937) 512-1604*

```
 1   So what the jury needs to find is that the defendant engaged
 2   in a conspiracy or agreed to participate in a conspiracy
 3   beyond a reasonable doubt through these acts, but they do not
 4   feed to find that these acts were actually committed.
 5            THE COURT:  Very well.  Last word from the defense?
 6            MR. OLESKI:  We agree that the -- that this is a
 7   conspiracy and that the jury does not need to find that any
 8   act was actually committed.  However, the jury has to -- the
 9   jury must find that the defendants either agreed that they
10   would commit or agreed that some other conspirator would have
11   committed at least two racketeering acts, and we do think that
12   that needs to be proved beyond a reasonable doubt.
13            MR. LONG:  For the record, Your Honor, we'd join in
14   that addition to either predicate act.
15            THE COURT:  Very well.  I think what is being
16   proposed is confusing.  We stated before and after.
17       Is there a concern about page 31?
18            MR. SINGER:  Yes, Your Honor.  In the defendants'
19   proposed instructions, they propose explicit quid pro quo
20   language in the second paragraph, and that's consistent with
21   the instructions that are in the extortion under color of
22   official right which is explaining what a bribe is.  And the
23   government would propose including the same explicit quid pro
24   quo language that's included in the extortion under color of
25   official right explaining what a bribe is in this paragraph
```

1    relating to whether the proposed exchange was clearly

2    understood.

3         THE COURT:  Where do you find the definition you

4    want to plug in there?

5         MR. SINGER:  It is on page 35, Your Honor.

6         THE COURT:  Slow down and I can't find it yet.  I am

7    looking at the redlined edition.  You are talking about

8    something that the defendant proposed.  I'm working off of my

9    proposal.

10        MR. SINGER:  Yes, Your Honor.  So --

11        THE COURT:  What page?

12        MR. SINGER:  The page that we're discussing is page

13   31.  And then the language that the government would propose

14   is on page 35.

15        THE COURT:  All right.

16        MR. SINGER:  It's the first bullet, and the sentence

17   is, "While a bribery agreement need not be expressed --"

18        THE COURT:  Slow down.  She is writing it all down.

19        MR. SINGER:  I apologize.

20        THE COURT:  Go ahead.

21        MR. SINGER:  "While a bribery agreement need not be

22   expressed, it must be explicit, by which I mean the government

23   must show that the contours of the proposed exchange were

24   clearly understood."

25        The sentence continues, the language on page 31, states

```
 1    that "but the government must show that the proposed exchange

 2    was clearly understood."  We would propose putting the

 3    explicit language at the front end of that sentence.

 4              THE COURT:  And what's the defense make of that?

 5         MR. OLESKI:  We agree that the instruction should

 6    include the explicit quid pro quo language.  I wish to be

 7    heard on something else, but we agree that the explicit quid

 8    pro quo language should be included in the instruction.

 9              THE COURT:  Very well.  I hear you both.

10      You wanted to be heard on something else?

11         MR. OLESKI:  Yes, Judge.  We had proposed -- our

12    proposed language for the quid pro quo instruction or explicit

13    quid pro quo instruction was slightly different than the

14    explicit quid pro quo instruction for the Hobbs Act extortion

15    in the Sixth Circuit's pattern, Hobbs Act extortion

16    instruction.

17      What we would propose is that the Court include that this

18    explicit quid pro quo agreement must exist at the time, at the

19    time that the bribe was paid.  It cannot be formed later.  And

20    that the essential elements of a bribe is therefore the

21    agreement between a public official and a payor to exchange

22    official acts for the benefit to the official.

23      And additionally, we would ask that the Court exclude

24    the -- remove the circumstantial evidence language in the

25    instruction, that the bribe can be proved through
```

23-3662

1    circumstantial evidence.  We had briefed that in connection

2    with or we submitted some supplemental authority to further

3    support our motion to dismiss.  We cited the *Fisher* court

4    decision out of New York that held that explicit quid pro quo

5    cannot be proved with circumstantial evidence.  So we would

6    stand on that objection, understanding that the Court has

7    already rejected that argument.

8         And --

9              THE COURT:  Very well.  Are you talking about the

10   Hobbs Act extortion language or the honest services fraud

11   language?

12             MR. OLESKI:  I'm talking about the honest services

13   fraud instruction.

14             THE COURT:  I'm sorry?  I didn't hear you.

15             MR. OLESKI:  I'm talking about the honest services

16   fraud instruction, Judge.

17             THE COURT:  Okay.

18             MR. OLESKI:  And just noting for the Court that our

19   proposed instruction is slightly different than the pattern

20   instruction for the Hobbs Act instruction.

21             THE COURT:  Very well.  Your position is noted.

22        I am sorry.  Did you -- excuse me.  Did you wish to be

23   heard, Mr. Singer?

24             MR. SINGER:  I'm happy to let the defendant finish

25   the point.

```
 1              MR. OLESKI:  I'm proposing additional language for
 2    the honest services fraud instruction.  So if Mr. Singer wants
 3    to be heard on what I just said, I'm happy to let him.
 4              THE COURT:  Isn't that generous and loving.
 5         Did you wish to be heard further?
 6              MR. SINGER:  Well, Your Honor, a couple things.
 7    First, as far as whether the bribe agreement needs to be
 8    agreed to or the payment needs to be made at the time of the
 9    bribe agreement, that's just not consistent with the law, Your
10    Honor.  The parties can agree to a quid pro quo and then
11    subsequently provide the quid or the quo for that matter for
12    purposes of the agreement.
13         And the government will rest on its arguments relating to
14    circumstantial evidence.  I think this Court -- the Court has
15    already rejected that.  I think it's completely appropriate
16    and consistent with the law in this circuit.
17         And just to go back to the point that I was raising
18    before, just so -- just so the Court is clear, we would
19    propose including the explicit quid pro quo language after the
20    winks and nod language that was added yesterday.  So that
21    would be inserted.
22         I didn't think I was not -- I think that I was not very
23    clear before, and I wanted to clear that up.
24              THE COURT:  I got it.  Would you be willing to let
25    me hear if they have any further statement on this?
```

23-3664

```
 1              MR. SINGER:  Yes, Your Honor.
 2              MR. OLESKI:  As it relates to the explicit quid pro
 3    quo, we'd stand on the arguments that we made in our motion to
 4    dismiss and the supplemental authority that we submitted,
 5    along with the authority we cited in our jury instructions.
 6         There are a few additions that we would propose to the
 7    honest services fraud instruction.
 8              THE COURT:  Are we there yet?
 9              MR. OLESKI:  Yes.
10              THE COURT:  Yes.
11              MR. OLESKI:  We are on page 31, I believe.
12              THE COURT:  All right, okay.  Go ahead.
13              MR. OLESKI:  Mr. Singer asked that the Court use --
14    include an explicit quid pro quo language that the Court --
15    that's also included in the Hobbs Act extortion instruction.
16    We would ask that the Court also include -- this is from the
17    Hobbs Act extortion instruction, but includes this language in
18    the honest services fraud instruction that the language on
19    page 34 of the Court's instructions -- the three bullet points
20    at the bottom of page 34, Judge.
21              THE COURT:  And what do you want in these three
22    bullet points?
23              MR. OLESKI:  Let me just make sure I'm on the same
24    page, Judge.
25              THE COURT:  Okay.
```

1    MR. OLESKI:  That -- we would propose that the Court

2  include an instruction that "Efforts to buy favor or

3  generalized goodwill do not necessarily amount to bribery.

4  Bribery does not include gifts given in the hope that at some

5  unknown, unspecified time a public official might act

6  favorably in the payor's interest.  Gifts exchanged solely to

7  cultivate friendship are not bribes.  Things of value given in

8  friendship and without expectation of anything in return are

9  not bribes."

10    And I think this is already included in the Court's

11  instructions, but that "It is not a defense to bribery that

12  the public official would have done the official act anyway,

13  even without the receipt of the property."

14    THE COURT:  And that's in what I have proposed.

15    MR. OLESKI:  That's in the Hobbs Act instruction,

16  Judge.  We'd ask that that language be included in the honest

17  services fraud instruction.

18    THE COURT:  Okay.  I understand what you're saying.

19    Okay.  I was at page 31.  I'm now at 32 on the redlined

20  version.  Is there anything on that page that we haven't

21  already addressed in general?

22    MR. OLESKI:  Just a small correction, Judge.  On

23  page 32, there are two bullet points, A and B.  I would

24  propose adding in the first word in bullet point B the word

25  "second."

23-3666

```
 1              THE COURT:  Does the government wish to be heard?

 2              MR. SINGER:  No, Your Honor.

 3              THE COURT:  Very well.  I'll take it under

 4    consideration.

 5         Page 33?  I hear nothing.

 6         Page 34?  We've talked about the three bullet points and

 7    adding them to the honest fraud language.  We'll add "second"

 8    on your original proposal.

 9         I have heard you on 34 but go ahead.

10              MR. OLESKI:  Just to preserve the record, Judge.

11              THE COURT:  Yes.

12              MR. OLESKI:  We take the position that the Hobbs Act

13    extortion statute does not apply to bribery, and applying it

14    to bribery is contrary to the language of the statute.  I

15    acknowledge that the United States Supreme Court has held

16    otherwise, but we'd preserve that issue for purposes of

17    appeal.

18              THE COURT:  Very well.  We've talked about page 35.

19    Is there more to discuss?

20         Page 36?  Mr. Borges's lawyer has a point?

21              MR. LONG:  Your Honor, I'm going to defer to

22    Mr. Singer for now, and then respond accordingly.

23              THE COURT:  Well, that's a credit to you as well.

24         Mr. Singer.

25              MR. SINGER:  So the government has thought about
```

23-3667

1    what the defense has proposed as far as what exactly is

2    required in a quid pro quo and the private honest services

3    context, and I'm focusing right now on the last paragraph on

4    page 36.  It currently reads that something of value needs to

5    be exchanged for something else.

6        And after considering the defendants' language, although

7    we don't agree with all of the language, it does seem

8    appropriate to cabin or something else in a way that would

9    give the jury a little bit more guidance.

10        So focusing on what the defendants have proposed on page

11    13 of the document that they sent yesterday, the government

12    would not object and thinks it's appropriate to include the

13    first sentence in the redlined version on page 13.  It would

14    essentially define the "something else" as official act, but

15    then defining "official act" as the improper disclosure of

16    business information belonging to the employer.

17        So it would be -- the quid pro quo would be an exchange

18    of something of value, in exchange for a proper disclosure of

19    business information belonging to the employer.  That's a

20    subset of what the defendants have requested in their language

21    but one that the government believes is appropriate.

22        So, in essence, the "something else" would be, if we were

23    to follow the defendants' version, would be an official act,

24    and then "official act" would be defined as I've described.

25        An alternative to that would be to include what I've just

```
1    proposed, instead of "for something else," to include "the
2    improper disclosure of business information relating to the
3    employer."  That would be the quo that the something of value
4    is in exchange for.
5              THE COURT:  Defense wish to be heard?
6              MR. LONG:  Yes.  Thank you, Your Honor.  And we
7    appreciate that the government agrees that "something else"
8    should be modified to "official act."  So I just want to make
9    sure I understand what Mr. Singer was proposing.  So
10   substituting the words "something else" for "official act" I
11   believe is step one?
12             MR. SINGER:  I think there's two ways we could
13   handle it.  We could substitute "official act" and then define
14   "official act" as I've described.  That would be our proposal.
15   Or just include -- instead of "official act," just include
16   what we have defined "official act" to be, which is the
17   improper disclosure of business information belonging to the
18   employer.
19        After talking this out loud to myself, it would seem that
20   the second version would be less confusing, but --
21             THE COURT:  Very well.  Did Mr. Singer clarify your
22   inquiry?
23             MR. LONG:  He did, Your Honor.  We feel that it is
24   absolutely appropriate to substitute "something else" for
25   "official act" because that is a requirement that is
```

*Mary A. Schweinhagen, RDR, CRR   (937) 512-1604*

1    recognized by both the Supreme Court and the Sixth Circuit.

2    We feel the better approach is to then define what an

3    "official act" is in the context of private honest services

4    fraud because it is slightly different than in a public honest

5    services fraud.

6        We disagree, though, with the language proposed by

7    Mr. Singer that it's just business information.  The United

8    States Supreme Court in *Skilling* cited with approval a case

9    called *Procter & Gamble*.  It was a district court case, Your

10   Honor, I think from the '20s.  And what *Procter & Gamble* said

11   was, "An employee has a fiduciary duty to protect the trade

12   secrets and confidential business information of the

13   employer."

14       The Supreme Court has been wrestling for years with

15   limiting principles with respect to honest services fraud.

16   But those terms, "trade secrets" and "confidential business

17   information," are actually terms of art.  While we originally

18   proposed including some definitions of trade secrets, we

19   understand that there's been no allegation about trade secrets

20   and that could be confusing to the jury.

21       However, there has to be a limiting principle to explain

22   what constitutes breach of a fiduciary duty.  And the Supreme

23   Court has acknowledged that the improper disclosure of, quote,

24   "confidential business information" -- and that's the language

25   we've proposed -- that that can constitute honest services

1    fraud, private honest services fraud.  And that term,

2    "confidential business information," has been defined by the

3    Supreme Court.  So rather than what we would consider to still

4    be a very vague and overbroad, just any business information,

5    because any business information could apply to literally

6    anything an employee anywhere at any time could be paid to

7    disclose.  It could apply to a whistleblower who is reporting

8    business information about the CEO of a company that was

9    improper.  It's limitless.

10        So cabining it to confidential business information as

11   defined by the Supreme Court as acknowledged by the Sixth

12   Circuit I think is the more appropriate instruction in this

13   case, Your Honor.  Thank you.

14             THE COURT:  Last word from the government.

15             MR. SINGER:  Your Honor, if I may argue with myself

16   for a third time.  The official act language -- first of all,

17   the official act language as set forth in the Supreme Court --

18   by the Supreme Court, it is clearly in the context of the

19   public honest services fraud.  That's how it was described in

20   *McDonald*.  That's the context in which it was presented and

21   used.

22        So using "official act" in this context could create some

23   confusion for the jury.  If we're just throwing the same word

24   but defining it different ways in three different predicates,

25   the jury, I think, would probably be confused by that.  So the

1    better approach, we believe, would be to describe the

2    "something else" as the improper disclosure of business

3    information belonging to the employer.

4         As to the limiting principle that's proposed by the

5    defendant that it has to be either trade secrets or defined as

6    confidential business information, that's not found in the law

7    in this circuit. *Frost*, the lead case in this area, has not

8    found that that is a requirement. And, in fact, the language

9    that is here does limit it, both by characterizing the

10   disclosure as improper. So outside the duties and

11   responsibilities of the employer -- of the employee, I'm

12   sorry. And it also cabins it by the third element that the

13   information must be the type that the defendant foresaw or

14   reasonably should have seen by causing this employer to suffer

15   economic harm.

16        So it's not just any information. It's information that

17   was improperly disclosed and which might cause the employer to

18   suffer economic harm. With that -- cabined in that way in the

19   context of a bribery agreement, the elements I think are not

20   vague and consistent with the law as set forth in this

21   circuit.

22             THE COURT: Last word, Mr. Long.

23             MR. LONG: Yes, Your Honor. Your Honor, the Supreme

24   Court has emphasized that the most important element -- the

25   Supreme Court has never addressed whether the foreseeable

1  economic harm element that's recognized in the Sixth Circuit

2  is -- they've never weighed in on that element.  But they have

3  weighed in substantially on the breach of the fiduciary duty.

4      And the word "improper" doesn't really give the jury

5  enough information or guidance to determine what is improper.

6      So is it improper under some law?  Is it improper under a

7  standard?  Is it improper under the terms of their employment

8  and the description of their job duties?  We feel that for the

9  jury to be fully instructed consistent with the constitutional

10  limiting principles, that there needs to be an explanation of

11  what would be improper.

12      So the language that we submitted -- the proposed

13  language that we've submitted on page 13 we feel better

14  describes that.

15      And actually, the language that the government had

16  proposed in their suggested edits about information that the

17  employer intended to keep secret, that actually better defines

18  the scope than just simply leaving it at improper disclosure

19  of business information.

20      I think if -- I think if the instruction included, as the

21  government had proposed over the weekend, the improper

22  disclosure of business information that the employer intended

23  to be kept secret, that would at least give the jury some

24  guidance.  And we wouldn't object to that -- to that language

25  being included, and it was already proposed by the government.

1      So we would agree with that modification.  And, Your

2  Honor, I do have a couple other points for the record when the

3  Court is ready.

4           THE COURT:  While we are on this, using "official

5  act" -- quote, "official act," quote, for the private honest

6  services fraud is confusing because, quote, "official act,"

7  quote, already has a different meaning in the public official

8  honest services fraud.

9      We already have an explanation about fiduciary duties.

10  Proposed changing it to "improper disclosure of business

11  information, specifically information that the employer

12  intended to keep secret."  Does the defense continue to have

13  concern?

14           MR. LONG:  Your Honor, we would just -- again for

15  purposes of the record -- note an objection, stand on our

16  previously submitted proposed instructions and objections to

17  the government's, as well as incorporate our previously filed

18  motion to strike which addressed the constitutionality of

19  private honest services fraud here as applied.  That private

20  honest services fraud is unconstitutionally vague.  Again, we

21  are preserving these issues for the record, not intending to

22  argue those points any further.

23      Your Honor, we do have a couple of other suggested edits.

24           THE COURT:  All right.  I'm headed towards changing

25  it to "information that the employer intended to keep secret."

23-3674

1     We need to get through this.

2          You had additional points, Mr. Long.

3               MR. LONG:  Yes, Your Honor.  In the -- on page 36,

4     the paragraph defining "scheme."

5               THE COURT:  Yes.

6               MR. LONG:  The second sentence, substituting for the

7     last word, it says "involving bribes."  We would suggest

8     substituting the word "bribes" for, quote, "the intended

9     breach of a fiduciary duty through bribery."  We think that's

10    a more accurate statement and will help better instruct the

11    jury.

12              THE COURT:  Does the government wish to be heard?

13              MR. SINGER:  No, Your Honor.

14              THE COURT:  Mr. Householder's counsel?

15              MR. OLESKI:  Only that we join in all of the

16    objections that Mr. Borges is making.  Otherwise, no.

17              THE COURT:  All right.  I've indicated where I am.

18    And if you didn't propose these suggestions before today, I'm

19    not sure they are properly before us.

20         Be that as it may, Mr. Long, did you get through your

21    other items?

22              MR. LONG:  Not yet, Your Honor.  We did propose that

23    on page 13 of our Word document submitted over the weekend.

24              THE COURT:  Okay.

25              MR. LONG:  Your Honor, we would also suggest some

```
 1   edits to -- I'm sorry.  I am trying to get to the paragraph --
 2   on page 37, Your Honor.
 3             THE COURT:  Yes.
 4             MR. LONG:  The paragraph beginning "When the
 5   defendant or conspirator."
 6             THE COURT:  Yes.
 7             MR. LONG:  We would suggest modifying that sentence
 8   to read "When the defendant or conspirator is the bribe payor,
 9   it is sufficient if the defendant or conspirator intends or
10   solicits the employee to breach his fiduciary duty to the
11   employer in exchange for a thing of value and reasonably
12   should have foreseen that the breach would create an
13   identifiable economic risk to the employer."
14       Your Honor, we'd suggest that "because the breach of the
15   fiduciary duty and the foreseeable risk of harm are two
16   different elements."  And then we would suggest defining what
17   a foreseeable -- a reasonably foreseeable economic risk is.
18   And this is derived from the Sixth Circuit's case in Frost,
19   that that term means that "The defendant might reasonably have
20   contemplated some concrete business harm to the employer
21   stemming from the breach of the employee's fiduciary duty.
22   Proof that the employer simply suffered only the loss of the
23   loyalty and fidelity of the employee is insufficient."
24       And, again, that is drawn directly from the Sixth Circuit
25   in Frost.  Presently, I don't believe that the risk of
```

1  economic harm is sufficiently defined for the jury, and

2  because that is an accurate statement of the law, we would ask

3  that it be included.

4          THE COURT:  Very well.  I hear you.

5      Does the government wish to be heard?

6          MR. SINGER:  Your Honor, I think the language as

7  written is appropriate, and the defendants' suggestion does

8  not add to what is already there.

9          THE COURT:  Very well.  Has Mr. Householder been

10  heard on Mr. Todd's issues?

11          MR. OLESKI:  Yes.  We again join in that objection,

12  Judge.

13          THE COURT:  Very well.  Nothing on page 38 -- do we

14  have one more?

15          MR. LONG:  I am sorry, Your Honor.  I do have one

16  more.

17          THE COURT:  No, I understand but -- go ahead.

18          MR. LONG:  Your Honor, we would propose -- and this

19  again is from what we submitted over the weekend on page 13,

20  but it's the -- this is directly from the Supreme Court in

21  *Skilling*, that it is insufficient if it is merely an

22  undisclosed conflict of interest or undisclosed self-dealing

23  that may be created by the actual intended or solicited thing

24  of value.

25      The Supreme Court in *Skilling* expressly excluded

1   undisclosed conflicts of interest and undisclosed self-dealing

2   by the employee as sufficient for private sector honest

3   services fraud.  It is an accurate statement of the law.  We

4   ask that it be included so that the jury can understand better

5   the scope of what a breach of a fiduciary -- what breach of a

6   fiduciary duty is sufficient.  That if it is not sufficient,

7   that it simply be a conflict of interest.

8           THE COURT:  Very well.  Anything further from the

9   government?

10          MR. SINGER:  Your Honor, these instructions make it

11  clear that to violate this statute, it's a bribery, a quid pro

12  quo bribery agreement is required.  Nothing suggests that a

13  conflict of interest is sufficient.  These instructions

14  contemplate what the law requires.  Nothing more is required.

15          THE COURT:  On behalf of Mr. Householder?

16          MR. OLESKI:  We join Defendant Borges's objections.

17          THE COURT:  Very well.  They are noted.  I think

18  they are confusing.  I think the instruction provided is spot

19  on.

20      Is there anything further on these pages, Mr. Long,

21  before we proceed?

22          MR. LONG:  No, Your Honor.  Thank you.

23          THE COURT:  Nothing on 38.

24      Page 39?

25          MR. OLESKI:  Yes, Judge.

1           THE COURT:  Go ahead.

2           MR. OLESKI:  We would propose in the first element

3    of this offense that the Court strike the language "the

4    defendant or conspirator" and replace it with "public

5    servant."  The Ohio bribery statute only applies to the

6    specific subsection that's at issue here 2921.02(B) of the

7    Revised Code only applies to public officials.  So we think

8    that the instruction might be confusing in that the jury might

9    conclude that the bribery of private individuals might be

10   implicated by -- by these elements.

11          And then just for the record, we would reiterate our --

12   as we communicated in our proposed edits over the weekend,

13   that the Court instruct -- give further instruction on bribery

14   and essentially incorporating the honest services wire fraud

15   instruction and the extortion instruction here.  Meaning to

16   include an official act requirement, a quid pro quo

17   requirement, and I think without that -- without those further

18   instructions, the Ohio state -- the Ohio statute is

19   unconstitutional.  There is no limiting principle.

20          So those are our two objections to this instruction,

21   Judge.

22          THE COURT:  All right.  So noted.

23          Anybody further on 39?

24          MR. LONG:  Your Honor, we would join that objection.

25   And, again, we think it's very important that the jury

1     understand that that alleged predicate only applies to public

2     officials, because it does. And as currently written, that is

3     not -- that is not clear. We think the jury could be confused

4     by that. And so we join in Mr. Householder's objections.

5          THE COURT: Very well. Mr. Singer?

6          MR. SINGER: Your Honor, the first point I think is

7     well taken. The other bribery statute, public official

8     bribery statute do make clear that the defendant or

9     conspirator involved is a public official.

10    I don't know that just including public servant in the

11    first element necessarily addresses that, although public

12    servant is defined and then referenced in the third element.

13    So the Court could add an element that the defendant or

14    conspirator is a public servant. That's one way to address

15    it.

16         Although I do think the third element makes clear that

17    the discharge of the duties must be as a public servant,

18    making clear that whoever's involved in this must be a public

19    servant.

20         As to the other argument raised by the defendants, we've

21    addressed this. We briefed it in our arguments, and the Ohio

22    statute is a predicate of racketeering and the law relating to

23    the -- the statute and Ohio law is what governs.

24         THE COURT: I would think if we were headed in that

25    direction, it should say, quote, "public official who is

1    either a defendant or a conspirator."

2        What's Mr. Long make of that?

3            MR. LONG:  Your Honor, I think we would be agreeable

4    to that, that language.

5            THE COURT:  And Mr. Nick on behalf of

6    Mr. Householder?

7            MR. OLESKI:  That would be acceptable to

8    Mr. Householder, Judge.

9            THE COURT:  Very well.  I would note that they are

10   not charged with the Ohio bribery statute.  So whether anyone

11   could have actually been convicted is irrelevant.  Be that as

12   it may, you guys have reached an agreement, and I am prepared

13   to proceed to page 40.  Is there anything on page 40?

14       Page 41?

15           MR. LONG:  Pardon me, Your Honor.  Page 40.

16           THE COURT:  Yes.

17           MR. LONG:  Your Honor, we had proposed language both

18   over the weekend and in our previously submitted proposed jury

19   instructions and in our objections to the government's

20   proposed jury instructions that the Travel Act requires

21   knowledge of the crossing of state lines, and that that is an

22   element within the Sixth Circuit.  I understand the government

23   has responded on that legal issue, that the Sixth Circuit

24   cases which address this very issue that say that there is a

25   distinction between a statute that identifies a facility in

1    interstate commerce, which the Travel Act requires, versus

2    statutes that require the use of a facility of interstate

3    commerce.

4        The Sixth Circuit has routinely held that statutes,

5    including the Travel Act, that require that it use a facility

6    in interstate commerce, or the actual crossing of state lines.

7    So the Sixth Circuit has a number of cases.  They talk about

8    the use of telephones or cell phones where the defendant had,

9    say, called a person in another state and knew that that

10   person was in another state.  And so that was sufficient for

11   the Travel Act, to cross state lines.

12       So we're requesting that the Court include in the

13   instructions that the defendant had knowledge that the use of

14   the facility in interstate commerce crossed state lines.

15       Your Honor, we also are going to renew our objections

16   that were first raised in our motion to strike that the

17   predicate here, Ohio's misdemeanor infiltration statute, is an

18   improper --

19            THE COURT:  You know, you have argued these.  I've

20   ruled.  You can stand on your objections and the like.

21            MR. LONG:  I just wanted for the record, Your Honor,

22   to make those objections clear, that we're objecting based on

23   those arguments about whether the infiltration statute is a --

24            THE COURT:  It is of record in the motion.

25            MR. LONG:  Thank you, Your Honor.

23-3682

```
 1            THE COURT:  I denied the motion.
 2       Anything further on page 40?
 3            MR. OLESKI:  Judge, just for the record, Defendant
 4   Householder joins Defendant Borges's objections.
 5            THE COURT:  Very well.  Element 1 says "knowingly
 6   used," and we're not using the "facility in interstate
 7   commerce" language.
 8       Page 41?
 9            MR. OLESKI:  Yes, Your Honor.
10            THE COURT:  Yes.
11            MR. OLESKI:  Just a brief post-edit to this
12   definition of "specified unlawful activity"?
13            THE COURT:  Yes.
14            MR. OLESKI:  It currently reads --
15            THE COURT:  I know what it reads.  Go ahead.
16            MR. OLESKI:  I would propose changing "means any
17   racketeering activity" to "means some racketeering activity."
18   Given that not all of the racketeering activities the Court
19   previously defined generated proceeds.  We think that "some"
20   is more accurate than "any."
21            THE COURT:  The government?
22            MR. SINGER:  No objection to that, Your Honor.
23            THE COURT:  Mr. Long?
24            MR. LONG:  We join in that modification, Your Honor.
25            THE COURT:  All right.  Page 42?  Page 43?  Page 44,
```

```
 1    which sheet is blank.  Page 45?

 2        Page 46?  As to venue, do we need to give an instruction?

 3    It's stipulated, is it not?  What's the parties' positions?

 4        Go ahead on behalf of Mr. Householder.

 5            MR. OLESKI:  I didn't mean to jump in first, but we

 6    don't think that a venue instruction is necessary given the

 7    stipulation.

 8            THE COURT:  Mr. Long?

 9            MR. LONG:  We agree.

10            MR. SINGER:  We do think it is -- should be

11    included, Your Honor.  The jury has to find that there is

12    venue.  The parties have stipulated to it.  There is no

13    problem with including it in there.  We think it should be in

14    there.

15            THE COURT:  Okay.  Page 47?  Page 48?

16            MR. OLESKI:  Judge, I'm sorry.  Going back to page

17    46.

18            THE COURT:  Yes.

19            MR. OLESKI:  I just -- I'm sorry.  I'm on page 47.

20    I'm looking at the clean copy, Judge.

21            THE COURT:  Okay.

22            MR. OLESKI:  The Additional Instructions section.

23            THE COURT:  Yes.  I've got it in front of me.

24            MR. OLESKI:  We would propose that the Court add a

25    fourth bullet point in that instruction that would read as
```

 1     follows: "Given the various testimony you have heard

 2     regarding campaign contributions and campaign finance law

 3     during the course of the trial, the Court further instructs

 4     you that the indictment in this case does not charge the

 5     defendants with violating any campaign finance law."

 6         I understand that the Court rejected that instruction,

 7     but we think, especially given some of the cross-examination

 8     of my client, that such an instruction would be appropriate.

 9             THE COURT:  The Court declines to add the additional

10     instruction about campaign finance law.  There is no

11     suggestion in these instructions that campaign finance law is

12     at issue, and simply adding an undefined area of law that is

13     not an issue does not make any clarity for the jury.

14         Page 48?  Concise.

15         49?  50?  51?

16         52?  The testimony of a witness under grant of immunity.

17     The Court intends to exclude it because they weren't -- the

18     agreements weren't mentioned.  Anybody need to be heard on

19     page 52 being excluded?

20             MR. OLESKI:  We agree with the Court, Judge.

21             THE COURT:  Very well.  Mr. Long, do you want to

22     join in and agree with the Court?

23             MR. LONG:  We sure do, Your Honor.

24             THE COURT:  Very well.  The government as well?

25             MR. SINGER:  Yes, Your Honor.

```
 1              THE COURT:  It's unanimous.

 2         Page 53, any objections?

 3              MR. OLESKI:  No, Judge.

 4              THE COURT:  Page 54?  Page 55?

 5              MR. OLESKI:  Judge, we do object to this

 6    instruction.  I know Mr. Klaffky was cross-examined about

 7    statements that he made to the news media.  I don't think that

 8    was actually impeachment.  I think that Mr. Klaffky actually

 9    agreed that he made those statements.  So I don't think he was

10    impeached with them, and so we would ask that this instruction

11    be omitted.

12              THE COURT:  Mr. Long?

13              MR. LONG:  We agree that this instruction should be

14    omitted.  Thank you.

15              THE COURT:  And the government?

16              MR. SINGER:  I actually do think he was impeached.

17    Your Honor.  He didn't say it at the start and then he was

18    only -- he ultimately agreed with it after being

19    cross-examined on a prior statement.  So his prior testimony

20    he did not include this.  So his prior testimony was

21    impeached, although he ultimately agreed with what he was

22    impeached with.

23              THE COURT:  Well, he was impeached.  I am happy to

24    look at the transcript.

25         Page 56?
```

23-3686

```
 1              MR. SINGER:  Yes, Your Honor.  The government --
 2              THE COURT:  And when I say "I'll look at the
 3    transcript," that would be I will look at the transcript
 4    again.  Go ahead.
 5              MR. SINGER:  The government presented the testimony
 6    of Josh Altic who was an expert in ballot referendum.
 7              THE COURT:  What's the name?
 8              MR. SINGER:  Josh Altic.
 9              THE COURT:  I've got Josh.
10              MR. SINGER:  A-L-T-I-C.
11              THE COURT:  And you think that that name should be
12    added to Number 1?
13              MR. SINGER:  Yes, Your Honor.  He provided the
14    opinion testimony relating to ballot referendum.
15              THE COURT:  And Mr. Householder's reaction?
16              MR. OLESKI:  We agree, Judge.
17              THE COURT:  Mr. Long?
18              MR. LONG:  We agree.
19              THE COURT:  Very well.  57?  No response.
20         58?  59?
21         Go ahead.
22              MR. OLESKI:  Yes, Judge.  We object to this
23    instruction.  This is a pattern instruction from -- that the
24    government adopted from the Seventh Circuit's instructions,
25    and under the Seventh Circuit's -- under the Seventh Circuit's
```

1   instructions, this instruction is not to be given in any case

2   where there is undercover or deceptive techniques used.

3       Instead, the committee commentary to the Seventh Circuit

4   instruction states that it is -- that this instruction, quote,

5   "is intended for use only in the rare case in which

6   questioning or argument or a statement during jury selection

7   or some other circumstance arising or existing during trial

8   suggests the impropriety of such techniques."

9       I don't think that either Defendant Householder or

10  Defendant Borges suggested either through questioning or

11  argument that it's improper for the government to use

12  undercover agents, use deceptive investigative techniques.  So

13  we would ask that the Court exclude this instruction.

14              THE COURT:  Mr. Long wish to join in that objection?

15              MR. LONG:  We do, Your Honor.

16              THE COURT:  And the government's response?

17              MS. GLATFELTER:  Yes, Your Honor.  During --

18  specifically during Tyler Fehrman's testimony, counsel for

19  Borges questioned whether things he said during the

20  conversations were true or not.  And that leaves a

21  misimpression with the jury that there is something wrong with

22  these techniques.  And that's why this was included initially.

23  I am not recalling at the moment whether the same type of

24  cross with the undercover agents.

25      Agent Wetzel was also questioned about the truth of what

1    Mr. Fehrman was saying to Borges during the examination, and

2    so I think that rises to providing the jury with information

3    that these techniques are proper and that there is nothing

4    wrong with using these types of techniques.

5            THE COURT:  Very well.  Last word.

6            MR. OLESKI:  I don't have -- I don't have a specific

7    recollection of what, you know, what Agent Wetzel was

8    cross-examined about.  However, I would note that the Seventh

9    Circuit's pattern instruction commentary notes that one of the

10   reasons why it might be improper to give this instruction,

11   number one, because it singles out this aspect of the case,

12   and, number two is that it might undercut, quoting here,

13   appropriate argument that a witness's deceptive act may be

14   considered in assessing the witness's credibility."  So we

15   would just ask that the Court exclude that instruction.

16           THE COURT:  Yes?

17           MS. GLATFELTER:  I just would point out that I think

18   that argument is misleading because if they are going to argue

19   that Tyler Fehrman's credibility is on the line regarding the

20   recordings, that makes no sense.  The recordings are the

21   evidence.  So his credibility is not judged as to what is on

22   those recordings or not.  He could have not testified in this

23   case.

24       And so arguing about the statements that he made on the

25   recording I don't think bear on his credibility.  I don't

```
 1    understand that argument.

 2              THE COURT:  Very well.  What if I add saying

 3    something to the effect, "You should otherwise judge the

 4    credibility of the witnesses as I previously instructed"?

 5    Does defense make anything of that, or do you simply object to

 6    the entire instruction?

 7              MR. OLESKI:  I think that -- I think that the

 8    Court's proposal goes a long way to addressing my concern.

 9    However, I will stand on my objection.

10              THE COURT:  All right.  Mr. Long?

11              MR. LONG:  Same, Your Honor.

12              THE COURT:  Very well.  Last word, government.

13              MS. GLATFELTER:  One moment, Your Honor.

14              THE COURT:  Yes.

15         (Pause.)

16              MS. GLATFELTER:  I think, if I wasn't clear before,

17    what I was trying to convey is that the defendants are trying

18    to impeach Mr. Fehrman's testimony with a legal operation and

19    what he was saying during a deceptive operation, which is

20    perfectly permissible.  Whether it was an undercover agent,

21    whether it was an informant, law enforcement is allowed to use

22    those techniques.  And so somehow to try to impeach

23    Mr. Fehrman in argument by saying what he said on the tape

24    wasn't true and using that to impeach his in-court sworn

25    testimony is not a fair inference.  And the jury should be
```

 1    instructed that those deceptive techniques are legal, and they

 2    shouldn't be held against Mr. Fehrman.

 3        If they want to attack what he said under oath or other

 4    parts, then, fine.  And you can -- the Court, you know, could

 5    instruct the jury as it just said that they can use the

 6    Court's other instructions on credibility to do so.  But it

 7    would be improper to -- for the defendants to argue that he

 8    should be found not credible based on things he said on tape.

 9    All right.  Thank you, Your Honor.

10        THE COURT:  Very well.  That's why the Court's

11    proposing to say basically judge the credibility of the

12    witnesses as I have instructed, that the investigative

13    techniques are not improper.

14        I'm going to work on it.  I understand.

15        Ms. Frankian, can you capture those comments on this page

16    as reflected before me?

17        Page 60?  Nothing on page 60?

18        Page 61?  Page 62?  Page 63?  Page 64?  Page 65?  Page

19    66?  Page 67?  Page 68?

20        Are we not providing the synced audio-video recordings?

21        MS. GLATFELTER:  Your Honor, it was not admitted.

22    It was as a demonstrative.  I think if there were a question

23    and the jury wanted to hear that again, they could come in the

24    courtroom and we could play it, but we didn't anticipate it

25    going back as an exhibit.

```
1          But both the video and audio are admitted separately.
2               THE COURT:  Okay.  Thank you.  I thought it was
3    going to be provided.
4          Page 65?  Page 66?  Page 67?  68?  69?  70?  71?  72?
5          I've been through each page.  Is there more you want to
6    bring to my attention?  First the government.
7               MR. SINGER:  No, Your Honor.
8               THE COURT:  Mr. --
9               MR. OLESKI:  Oleski.
10              THE COURT:  That's what I said.  Go ahead.
11              MR. OLESKI:  That's what I heard, Judge.
12         I have two things.  One, I want to go back and just make
13   sure that I am preserving an objection, and then I have got a
14   question for the Court.
15              THE COURT:  You get -- go ahead.
16              MR. OLESKI:  On page 32 of the Court's instructions,
17   this is the honest services fraud instruction, the Court
18   defines "thing of value."  We had proposed that in addition to
19   the Court's instruction that the Court also include the
20   following -- and I apologize, this is quite lengthy, but the
21   Court instruct that after defining "thing of value," that the
22   Court instruct, "That said, while a campaign contribution or a
23   political contribution to a 501(c)(4) organization could be a
24   thing of value for purposes of establishing a bribe, not all
25   political contributions are bribes.  As a general matter,
```

1    political contributions are a legitimate part of our system of

2    privately financed elections.  Absent an explicit quid pro quo

3    agreement, donors are free to offer and public officials are

4    free to accept donations that are motivated by a generalized

5    hope that the donation may result in some form of favorable

6    treatment.  Likewise, a public official is free to solicit or

7    accept contributions even from persons who have business

8    pending before the public official.

9    "Moreover, there is nothing inherently wrongful with a

10    public official taking official acts that advance the

11    interests of the contributor even if those official acts occur

12    shortly before or after the public official solicits or

13    receives a contribution.

14    "But if this public official has entered an explicit quid

15    pro quo agreement, as that term was defined above, in

16    soliciting or accepting such a contribution, or if the public

17    official knows that the donor believes that the public

18    official has entered such an agreement, then the contribution

19    is a bribe.  And in deciding whether an explicit quid pro quo

20    agreement exists, you may, but are not required to, consider

21    whether the closeness in time between the solicitation or

22    acceptance of the contribution on the one hand and the

23    official act on the other gives rise to an inference that such

24    an agreement exists."

25    And that instruction comes from Judge Cole's instructions

23-3693

```
1    in the Sittenfeld case.  I understand that the Court did not

2    include that, but just wanted to make sure that I am

3    preserving that for the record.

4              THE COURT:  Very well.  Every part of what you said

5    is already stated somewhere or another elsewhere in the

6    instructions.

7        Go ahead.

8              MR. OLESKI:  Understood.  And then my question,

9    Judge, is whether for the verdict form --

10             THE COURT:  Go ahead.

11             MR. OLESKI:  We had proposed in our proposed verdict

12   forms that the Court include essentially an interrogatory

13   which the jury would have to answer which of the predicate

14   acts or the racketeering acts were that they found that the

15   defendants agreed that they would commit or that one of the --

16   one of their co-conspirators would have committed.  I am just

17   inquiring as to whether the Court intends to include that on

18   the verdict form?

19             THE COURT:  I do not.

20             MR. OLESKI:  Then for the reasons we stated in our

21   objections to the government's proposed instructions, we would

22   object to the Court not including that.

23             THE COURT:  Very well.

24        Mr. Long joins in that objection?

25             MR. LONG:  I do, Your Honor, but I also had a
```

23-3694

```
 1    question.
 2            THE COURT:  Let me just see if I've exhausted
 3    Mr. Householder's counsel's --
 4            MR. LONG:  Thank you, Your Honor.
 5            THE COURT:  -- comments.
 6            MR. OLESKI:  And I guess just for purposes of the
 7    record, we would just -- we proposed instructions, and to the
 8    extent the Court's instructions differ from our instructions,
 9    we object.
10            THE COURT:  Very well.  Mr. Long.
11            MR. LONG:  For the record, Your Honor, we too would
12    preserve all objections that were raised in our proposed
13    instructions and our objections to the government's that are
14    not reflected in the Court's instructions, just for the
15    record.
16        But my question, Judge, because it's just not clear to
17    me, are there going to be -- is there going to be a verdict
18    form for Mr. Householder and a separate verdict form for
19    Mr. Borges?  We would request separate verdict forms.
20            THE COURT:  Yes, they are going to be separate
21    verdict forms for the separate defendants.
22            MR. LONG:  Thank you, Judge.
23            THE COURT:  Very well.  Of course.
24        Anything further from the government?
25            MR. SINGER:  Your Honor, as to Defendant
```

1    Householder's counsel's remarks, these issues have been

2    addressed and briefed.  The government rests on that unless

3    the Court has any questions.  Other than that, nothing else

4    from the government, Your Honor.

5         THE COURT:  Very well.  Does anybody need to be

6    heard further before we adjourn, I consider what you have

7    presented, and we reduce it to final jury instructions that we

8    hope to read to the jury at or around 2 p.m.

9        From the government?

10        MS. GLATFELTER:  No, nothing on the instructions.

11   Just logistically, will the Court notify us about the time, or

12   should we all be back here at 1:45?

13        THE COURT:  The jury is supposed to be here well

14   before 2.

15        MS. GLATFELTER:  Thank you, Your Honor.

16        THE COURT:  So we are planning to start at 2.  If

17   we're late, it's because you guys talk too much.

18        Is there anything --

19        MR. BRADLEY:  Not me, Judge.

20        THE COURT:  I was just going to make a record of

21   that.  And you laughed at some of my jokes.

22        Anything further on behalf of Mr. Borges?

23        MR. LONG:  No, Your Honor.  Thank you.

24        THE COURT:  We're in recess until 2 p.m.

25        THE COURTROOM DEPUTY:  All rise.  Court is in

*Mary A. Schweinhagen, RDR, CRR  (937) 512-1604*

23-3696

```
 1    recess.

 2          (Recess from 10:49 a.m. until 2:30 p.m.)

 3          THE COURTROOM DEPUTY:  All rise.  This United States

 4    District Court for the Southern District of Ohio is now in

 5    session.  The Honorable Timothy S. Black, District Judge,

 6    presiding.

 7          THE COURT:  Thank you.  Please be seated.

 8       The government's full complement is present.

 9    Mr. Householder and three of his lawyers are here.  Mr. Marein

10    was excused at his own request.  Mr. Borges is here with both

11    counsel.

12       I think we're ready.  Before I get the jury, I want to

13    talk about tomorrow timing-wise.  I want to get the closing

14    arguments in and the matter to the jury by the end of the

15    workday on tomorrow.  How long does the government estimate

16    its closing will be?

17          MR. SINGER:  Your Honor, I believe it should be

18    around two hours.

19          THE COURT:  And then how much for rebuttal?

20          MR. SINGER:  Half hour, 45 minutes, Your Honor.

21          THE COURT:  A half hour sounds reasonable.

22       On behalf of Mr. Householder, how long do you expect

23    closing to be?

24          MR. BRADLEY:  No more than two and a half hours.

25          THE COURT:  Very well.  And Mr. Borges's counsel?
```

23-3697

```
1            MR. SCHNEIDER:  Roughly an hour and a half.

2            THE COURT:  Very well.  The problem is, if we start

3    early and the government finishes its two hours, then

4    Householder's counsel's not going to have uninterrupted two

5    and a half hours.  Does that cause you pause, sir?

6            MR. BRADLEY:  Yes, is the short answer.

7            THE COURT:  All right.  So I would propose -- you

8    may be seated.

9        We'll do the government's two hours.  We'll then break

10   for an early lunch.  We'll come back.  You will do your two to

11   two and a half hours on behalf of Mr. Householder.  We'll take

12   a short break.  Then we will move to Mr. Borges.

13       Do you honestly think that Mr. Borges' closing is going

14   to be an hour and a half?

15           MR. SCHNEIDER:  I was trying to give myself that

16   opportunity, but it will probably be less.

17           THE COURT:  I'm sorry?

18           MR. SCHNEIDER:  It will be less.

19           THE COURT:  An hour or so.

20           MR. SCHNEIDER:  Hour, hour and 15.

21           THE COURT:  All right.  Those are the estimates.

22   I'm just trying to get it done.  I don't think coming in at 9

23   accomplishes anything given that we are going to have to break

24   for the government.  I would propose that we begin at 9:30 and

25   that the government do its two hours to 11:30.  If it's a
```

23-3698

```
 1    little longer, it's a little longer.  If it's a little
 2    shorter, it's a little shorter.  11:30 to 12:30 we break for
 3    lunch.  They need a break after two hours.  We'd come back at
 4    12:30, 12:35.  A couple hours takes us to 3:00.  We'd break
 5    for 15 minutes, come back at 3:15 to 4:15 or 4:30 for
 6    Mr. Borges.  We'd take a short, 15-minute break, 4:30 to 4:45,
 7    and then we'd have the government's rebuttal.  If it were 15
 8    minutes we'd get the jury -- get the case to the jury at 5, a
 9    little after 5 if we take a break, which we will.
10        Anybody want to be heard on timing?  The government?
11            MR. SINGER:  No, Your Honor.
12            THE COURT:  Mr. Householder's counsel?
13            MR. BRADLEY:  No, Your Honor.
14            THE COURT:  Mr. Borges's counsel?
15            MR. SCHNEIDER:  I think that's fine.  We're fine
16    with that.
17            THE COURT:  Should we start at 9 to give you some
18    leeway?  It's just going to be more reasonable.  If we have
19    the estimate, the better we can plan.
20            MR. SINGER:  I mean from the government's
21    perspective, if we start at 9 and then there's -- it gives us
22    more room to move flexibility-wise if it goes a little longer.
23    And if it doesn't, then we can -- I don't think there is any
24    harm in moving lunch earlier and then it buys us more time at
25    the end of the day.
```

```
 1              THE COURT:  11 o'clock lunch?

 2              MR. SINGER:  I sometimes eat lunch at 11, Your

 3    Honor.

 4              THE COURT:  I didn't hear you.

 5              MR. SINGER:  I sometimes eat lunch at 11.

 6              THE COURT:  That's a credit to you.

 7         Let's get the jury.  We ready for the jury from the

 8    government?

 9              MR. SINGER:  Yes, Judge.

10              THE COURT:  From Mr. Householder's?

11              MR. BRADLEY:  Yes, Judge.

12              THE COURT:  From Mr. Borges's?

13              MR. SCHNEIDER:  Yes, Judge.

14              THE COURT:  Let's get the jury.

15              THE COURTROOM DEPUTY:  All rise for the jury.

16         (Jury entered the courtroom at 2:04 p.m.)

17              THE COURT:  You may all be seated.  Thank you.  The

18    14 Members of the Jury have joined us in the courtroom on the

19    record.  Good afternoon to all of you.

20              RESPONSE BY ALL:  Good afternoon.

21              THE COURT:  I would say happy Monday, but it sounds

22    like an oxymoron.

23         I've been promising to instruct you on the law, and

24    that's what's going to happen this afternoon.  I'm going to

25    provide you and have provided each of you with a written
```

1    package of what I'm going to read.  Some people do well

2    reading.  Some people do well listening.  Some people do well

3    with both.  I do well with both.  But I'm required by law to

4    read it out loud to you.  The last time somebody read out loud

5    to me it was my mother trying to get me to go to sleep.

6         Hang in there with me.  We'll get through these

7    instructions.  We'll send you home for the day.  You'll come

8    back Tuesday, such that you are able to be in the courtroom by

9    9 a.m., which means at the very least -- and you can talk with

10   Jen -- you'll need to be at your spot by 8:45 at the very

11   latest so we can get you in the courtroom at 9.

12        Tomorrow beginning at 9 we'll hear closing argument.

13   It's not evidence.  It's flat out argument.  It's designed to

14   assist you.  The government will go first, followed by

15   Mr. Householder's client -- followed by Mr. Householder's

16   counsel, followed by Mr. Borges's counsel, and then the

17   government gets the last word, called rebuttal.

18        Jury instructions.  You can pull out your package, read

19   along with me.

20        There's a title page.  There are three preliminary pages

21   of Table of Contents referencing the pages in the document

22   where matters are presented.  And these are the instructions.

23        Just the General Rules, Introduction.

24        Members of the Jury, now it's time for me to instruct you

25   about the law that you must follow in deciding this case.

23-3701

1          I'll start by explaining your duties and the general
2     rules that apply in every criminal case.
3          Then I will explain the elements, or parts, of the crime
4     that the defendants are accused of committing.
5          Then I will state the defendants' positions.
6          Then I will explain some rules that you must use in
7     evaluating particular testimony and evidence.
8          And last, I will explain the rules that you must follow
9     during your deliberations in the jury room, and the possible
10    verdicts that you may return.
11         Please listen very carefully to everything I say.
12         You'll have this copy, each of you, this copy of the
13    instructions with you in the jury room tomorrow.
14         Jurors' Duties.
15         You have two main duties as jurors.  First, you must
16    decide what the facts are from the evidence that you saw and
17    heard here in court.  Deciding what the facts are is your job,
18    not mine, and nothing that I've said or done during this trial
19    was meant to influence your decision about the facts in any
20    way.
21         Second, your duty is to take the law that I give you,
22    apply it to the facts, and decide if the government has proved
23    that either, both, or neither of the defendants are guilty
24    beyond a reasonable doubt.  It's my job to instruct you about
25    the law, and you are bound by the oath that you took at the

23-3702

 1     beginning of the trial to follow the instructions that I give

 2     you, even if you personally disagree with them.  This includes

 3     the instructions that I gave you before and during the trial,

 4     and these instructions.  All the instructions are important,

 5     and you should consider them together as a whole.

 6          The lawyers may talk about the law during their

 7     arguments.  But if what they say is different from what I say,

 8     you must follow what I say.  What I say about the law

 9     controls.

10          Perform these duties fairly.  Do not let any bias,

11     sympathy, or prejudice that you may feel toward one side or

12     the other influence your decision in any way.

13          As to improper considerations, your verdict must be based

14     solely upon the evidence developed at trial or the lack of

15     evidence.

16          In reaching your decision as to whether the government

17     sustained its burden of proof, it would be improper for you to

18     consider any personal feelings you may have about the

19     defendants.  All defendants are entitled to the presumption of

20     innocence, and the government has the burden of proof, as I

21     will discuss again in a moment.

22          It would be equally improper for you to allow any

23     personal feelings you might have about the nature of the crime

24     charged to interfere with your decision-making process.

25          To repeat, your verdict must be based exclusively upon

1     the evidence or the lack of evidence in the case.

2          As to the presumption of innocence, burden of proof, and

3     reasonable doubt, as you know, both defendants pleaded not

4     guilty to the crime charged in the indictment.  The indictment

5     is not any evidence at all of guilt.  It is just the formal

6     way that the government tells the defendants what crime they

7     are accused of committing.  It does not even raise any

8     suspicion of guilt.

9          Instead, the defendants start the trial with a clean

10    slate, with no evidence at all against either of them, and the

11    law presumes that they are both innocent.  This presumption of

12    innocence stays with both defendants unless the government

13    presents evidence here in court that overcomes the presumption

14    and convinces you beyond a reasonable doubt that either one or

15    both of the defendants are guilty.

16         This means that the defendants have no obligation to

17    present any evidence at all, or to prove to you in any way

18    that they are innocent.  It is up to the government to prove

19    that the defendants are guilty, and this burden stays on the

20    government from start to finish.  Unless the government

21    convinces you beyond a reasonable doubt that a particular

22    defendant is guilty, you must find that particular defendant

23    not guilty.

24         The government must prove every element of the crime

25    charged beyond a reasonable doubt.  Proof beyond a reasonable

1    doubt does not mean proof beyond all possible doubt.  Possible

2    doubts or doubts based purely on speculation are not

3    reasonable doubts.  A reasonable doubt is a doubt based on

4    reason and common sense.  It may arise from the evidence, the

5    lack of evidence, or the nature of the evidence.

6        Proof beyond a reasonable doubt means proof which is so

7    convincing that you would not hesitate to rely and act on it

8    in making the most important decisions in your own lives.  If

9    you're convinced that the government has proved a particular

10   defendant guilty beyond a reasonable doubt, say so by

11   returning a guilty verdict as to that particular defendant.

12   If you are not convinced, say so by returning a not guilty

13   verdict.

14       As to evidence defined, you must make your decision based

15   only on the evidence that you saw and heard here in court.  Do

16   not let rumors, suspicions, or anything else that you may have

17   seen or heard outside of court influence your decision in any

18   way.

19       The evidence in this case includes only what the

20   witnesses said while they were testifying under oath, the

21   exhibits that I have allowed into evidence and will go to the

22   jury room with you, and the stipulations that the lawyers have

23   agreed to, which I will reflect for you.

24       Nothing else is evidence.  The lawyers' statements and

25   arguments are not evidence.  Their questions and objections

1    are not evidence.  My legal rulings are not evidence.  And my

2    comments and questions are not evidence.

3        During the trial I did not let you hear the answers to

4    some of the questions that the lawyers may have asked.  I also

5    ruled that you could not see some of the evidence that the

6    lawyers wanted you to see, and I struck some things from the

7    record.  You must completely ignore all of those things --

8    these things.  Do not even think about them.  Do not speculate

9    about what a witness might have said or what an exhibit might

10   have shown.  These things are not evidence, and you are bound

11   by your oath not to let them influence your decision in any

12   way.

13       Make your decision based only on the evidence, as I have

14   defined it here, and nothing else.

15       Terms of Consideration of Evidence.  You are only -- you

16   are to consider only the evidence in the case, and you should

17   use your common sense in weighing the evidence.  Consider the

18   evidence in light of your everyday experience with people and

19   events, and give it whatever weight you believe it deserves.

20   If your experience tells you that certain evidence reasonably

21   leads to a conclusion, you are free to reach that conclusion.

22       In our lives, we often look at one fact and conclude from

23   it that another fact exists.  In law, we call this an

24   "inference."  You are allowed to make reasonable inferences,

25   unless otherwise instructed.  Any inferences you make must be

*Mary A. Schweinhagen, RDR, CRR  (937) 512-1604*

23-3706

1    reasonable and must be based on the evidence in the case.

2         The existence of an inference does not change or shift

3    the burden of proof from the government to the defendants.

4         As to stipulations, that means agreements.  The

5    government and the defendants have agreed, or stipulated, as

6    to certain facts.  Therefore, you must accept the stipulated

7    facts as proved.

8         I will tell you those stipulated facts at the relevant

9    point in time during the course of these instructions.

10        As to direct and circumstantial evidence, I'm going to

11   remind you of the difference between "direct evidence" and

12   "circumstantial evidence."

13        Direct evidence is simply evidence like the testimony of

14   an eyewitness which, if you believe it, directly proves a

15   fact.  If a witness testified that she saw it raining outside,

16   and you believed her, that would be direct evidence that it

17   was raining.

18        Circumstantial evidence is simply a chain of

19   circumstances that indirectly prove a fact.  If someone walked

20   into the courtroom wearing a raincoat covered with drops of

21   water and carrying a wet umbrella, that would be

22   circumstantial evidence from which you could conclude that it

23   was raining.

24        It is your job to decide how much evidence to give the

25   direct and circumstantial evidence.  The law makes no

distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

As to credibility of witnesses, another part of your job as jurors is to decide how credible or believable each witness was. This is your job, not mine. It's up to you to decide if a witness's testimony was believable and how much weight you think it deserves. You are free to believe everything that a witness said, or only part of it, or none of it at all. But you should act reasonably and carefully in making these decisions.

Let me suggest some things for you to consider in evaluating each witness's testimony.

Ask yourself if the witness was able to clearly see or hear the events. Sometimes, even an honest witness may not have been able to see or hear what was happening, and may make a mistake.

Ask yourself how good the witness's memory seemed to be. Did the witness seem able to accurately remember what happened?

Ask yourself if there was anything else that may have interfered with the witness's ability to perceive or remember the events.

1    Ask yourself how the witness acted while testifying.  Did

2    the witness appear to be honest?  Or did the witness appear to

3    be lying?

4        Ask yourself if the witness had any relationship to the

5    government or to either defendant, or anything to gain or lose

6    from the case that might influence that witness's testimony.

7    Ask yourselves if the witness had any bias, or prejudice, or

8    reason for testifying that might cause the witness to lie or

9    to slant the testimony in favor of one side or the other.

10       Ask yourself if the witness testified inconsistently

11   while on the witness stand, or if the witness said or did

12   something, or failed to say or do something, at any other time

13   that is inconsistent with what the witness said while

14   testifying.  If you believe that the witness was inconsistent,

15   ask yourself if this makes the witness's testimony less

16   believable.  Sometimes it may; other times it may not.

17   Consider whether the inconsistency was about something

18   important, or about some unimportant detail.  Ask yourselves

19   if it seemed like an innocent mistake or if it seemed

20   deliberate.

21       And ask yourself how believable the witness's testimony

22   was in light of all the other evidence.  Was the witness's

23   testimony supported or contradicted by other evidence that you

24   found believable?  If you believe that a witness's testimony

25   was contradicted by other evidence, remember that people

1    sometimes forget things, and that even two honest people who

2    witness the same event may not describe it exactly the same

3    way.

4         These are only some of the -- these are only some of the

5    things that you may consider in deciding how believable each

6    witness was.  You may also consider other things that you

7    think shed some light on the witness's believability.  Use

8    your common sense and your everyday experience in dealing with

9    other people.  And then decide what testimony you believe, and

10   how much weight you think it deserves.

11        As to the number of witnesses, sometimes jurors wonder if

12   the number of witnesses who testified makes any difference.

13        Do not make any decisions based only on the number of

14   witnesses who testified.  What is more important is how

15   believable the witnesses were and how much weight you think

16   their testimony deserves.  Concentrate on that and not the

17   numbers.

18        As to lawyers' objections, this is another general

19   subject that I want to talk to you about before I begin

20   explaining the elements of the crime charged.

21        The lawyers for both sides -- all sides objected to some

22   of the things that were said or done during the trial.  Do not

23   hold that against either side.  The lawyers have a duty to

24   object whenever they think that something is not permitted by

25   the rules of evidence.  Those rules are designed to make sure

1    that both sides receive a fair trial.

2         And do not interpret my rulings on their objections as

3    any indication of how I think the case should be decided.  My

4    rulings were based on the rules of evidence, not on how I feel

5    about the case.  Remember that your decision must be based

6    only on the evidence that you saw and heard here in court.

7         As to defining the crime.  I have concluded the part of

8    my instruction explaining your duties and the general rules

9    that apply in every criminal case.  In a moment, I'll explain

10   the elements of the crime that the defendants are accused of

11   committing.

12        But before I do that, I want to emphasize that the

13   defendants are only on trial for the particular crime charged

14   in the indictment.  Your job is limited to deciding whether

15   the government has proved the crime charged.

16        Also, keep in mind that whether anyone else should be

17   prosecuted and convicted for this crime is not a proper matter

18   for you to consider.  The possible guilt of others is no

19   defense to a criminal charge.  Your job is to decide if the

20   government has proved either or both of these defendants

21   guilty.  However, as I will explain shortly, because the

22   defendants in this case are charged with a conspiracy, you

23   will need to consider the involvement of others for that

24   limited purpose.

25        As to two defendants charged with a single crime,

1  separate consideration.  The defendants, Larry Householder and

2  Matthew Borges, have been charged with one crime.  In our

3  system of justice, guilt or innocence is personal and

4  individual.  It is your duty to separately consider the

5  evidence against each defendant, and to return a separate

6  verdict for each of them.  For each defendant, you must decide

7  whether the government has presented evidence proving that

8  that particular defendant is guilty beyond a reasonable doubt.

9       Your decision on whether -- on one defendant, whether

10  it's guilty or not guilty, should not influence your decision

11  on the other defendant.

12       Now, as to the charged offense, crime alleged.  In this

13  case, the defendants are each charged with conspiracy to

14  commit an offense under the Racketeering Influenced and

15  Corrupt Organizations Act.  In short, I will refer to this

16  offense going forward as RICO conspiracy.

17       The defendants deny the charge.

18       As to relevant dates, I want to first talk to you about

19  the dates of the charged offense, as set forth in the

20  indictment.

21       The indictment charges that the conspiracy began at least

22  as early as 2016 and continued until July 2020.  Generally,

23  the government does not have to prove that a conspiracy

24  existed on those exact dates or that the conspiracy lasted for

25  that entire period of time.  But the government must prove

1    that the conspiracy existed and existed reasonably close to

2    those dates.

3        As to inferring requiring mental state.  Next, I want to

4    explain something about proving a defendant's state of mind.

5        Ordinarily, there is no way that a defendant's state of

6    mind can be proved directly because no one can read another

7    person's mind and tell what that person is thinking.

8        But a defendant's state of mind can be proved indirectly

9    from the surrounding circumstances.  This includes things like

10   what the defendant said, what the defendant did, how the

11   defendant acted, and any other facts or circumstances in

12   evidence that show what was in the defendant's mind.

13       You may also consider the natural and probable results of

14   any acts that the defendant knowingly did or did not do, and

15   whether it's reasonable to conclude that the defendant

16   intended those results.  This, of course, is all for you to

17   decide.

18       As to overview.  The indictment charges the defendant

19   with RICO conspiracy.  That means the defendants are charged

20   with conspiring to commit a RICO offense.

21       I will start by giving you a summary of the allegations.

22   Keep in mind that the allegations are just that --

23   allegations.  That's what the government alleges or claims

24   occurred.

25       Then I will instruct you on the elements of the RICO

```
 1   conspiracy.  In order to find either one or both defendants
 2   guilty of the offense charged, you must find that the
 3   government has proven each of these elements beyond a
 4   reasonable doubt as to that particular defendant.
 5        I'll then give you additional instructions and
 6   definitions that are relevant to the charged offense.
 7        Finally, I will provide you with instructions regarding
 8   certain evidence and the deliberation process.
 9        RICO conspiracy.  The indictment charges the defendants,
10   Larry Householder and Matthew Borges, along with other named
11   and unnamed individuals and entities, with RICO conspiracy, in
12   violation of federal law.
13        The allegations include:  The indictment alleges that
14   beginning in 2016 and continuing until 2020, defendants, Larry
15   Householder and Matthew Borges, along with other named and
16   unnamed individuals and entities, constituted an enterprise.
17        The indictment alleges that the defendants, Larry
18   Householder and Matthew Borges, along with the other named and
19   unnamed individuals and entities, did knowingly and
20   intentionally conspire with each other to conduct and
21   participate directly or indirectly -- and indirectly in the
22   conduct of the affairs of the enterprise through a pattern of
23   racketeering activity.
24        The indictment alleges that the purpose of the enterprise
25   was to grow defendant Larry Householder's political power, to
```

1    enrich the enterprise and its members and associates, and to

2    conceal these activities from public exposure and potential

3    prosecution.  The indictment further alleges that as part of

4    the conspiracy, the enterprise used Generation Now as a

5    mechanism to receive and conceal from public scrutiny bribe

6    payments for the benefit of enterprise members and associates.

7        In furtherance of the enterprise, the indictment alleges

8    unlawful activities relating to Ohio's House Bill 6, HB 6.

9    Specifically, HB 6 was proposed legislation introduced in the

10   Ohio House of Representatives in April 2019, during defendant

11   Householder's tenure as Speaker of the House of

12   Representatives.

13       In sum, the indictment alleges that House Bill 6 was

14   aimed at benefitting one of Ohio's public utility companies,

15   FirstEnergy Corp., by offering a financial bailout to one of

16   FirstEnergy Corp.'s struggling subsidiaries, FirstEnergy

17   Solutions.  The indictment alleges that the enterprise

18   accepted tens of millions of dollars in bribes in exchange for

19   providing the legislative action needed, House Bill 6, to keep

20   FirstEnergy solvent and avoid closure of its nuclear power

21   plants.

22       Specifically, the indictment alleges that from March 2017

23   to March 2020, the enterprise agreed to accept and did accept

24   millions of dollars in payments from FirstEnergy Corp. and/or

25   FirstEnergy Solutions, which payments were intended to

1    influence and reward defendants Householder and Borges and

2    other members of the enterprise in return for defendant

3    Householder taking specific official action for the benefit of

4    FirstEnergy Corp. and FirstEnergy Solutions, namely, to help

5    enact legislation that would go into effect and save the

6    operation of the nuclear plants.

7         The indictment further alleges that the enterprise

8    ensured that the bribe payments were passed through and paid

9    to and/or from various entities, including Generation Now, in

10   an effort to conceal the nature of the payments.

11        The indictment also alleges that the enterprise used the

12   bribe payments in furtherance of the conspiracy, including:

13   to promote and ensure the passage of HB 6 and to defeat a

14   referendum effort that could have resulted in the repeal of HB

15   6, to support the campaigns of defendant Householder and

16   others who would support HB 6, to pressure public officials to

17   support HB 6, and to retain and gain political power on behalf

18   of Defendant Householder, all with the intent to enrich and

19   benefit, and to continue enriching and benefitting, the

20   defendants, as well as other members and associates of the

21   enterprise.

22        Those are the allegations on those two pages.

23        Now, as to the elements of the offense of the crime

24   charged.

25        For you to find a defendant guilty of the offense of RICO

1    conspiracy, you must find that the government has proved each

2    and every one of the following elements beyond a reasonable

3    doubt:

4         First, that an "enterprise" existed.

5         That the enterprise was engaged in or its activities

6    affected interstate commerce.

7         That the defendant was employed by or associated with the

8    enterprise.

9         And fourth, that the defendant conspired to conduct or

10   participate directly or indirectly, in the conduct of the

11   enterprise's affairs through a pattern of racketeering

12   activity.

13        You must consider each defendant independently to

14   determine whether the elements of RICO conspiracy are met as

15   to that defendant.

16        If you are convinced that the government has proved all

17   of these elements beyond a reasonable doubt as to a particular

18   defendant, say so by returning a guilty verdict as to that

19   defendant.  If you have a reasonable doubt about any one of

20   these elements, then you must find that particular defendant

21   not guilty.

22        Here are relevant definitions and instructions.

23        As to the first element, the first element that the

24   government must prove beyond a reasonable doubt is the

25   existence of an enterprise.

1       I'll now instruct you on what constitutes an enterprise

2    under the law.

3       An enterprise includes any individual, partnership,

4    corporation, association, or other legal entity, and any union

5    or group of individuals associated in fact, although not a

6    legal entity.  In other words, an enterprise is an entity or a

7    group of persons associated together for a common person --

8    purpose of engaging in a course of conduct.  Such a group need

9    not have a hierarchical structure or a chain of command;

10   decisions may be made on an ad hoc basis and by any number of

11   methods -- by majority vote, consensus, show of strength, et

12   cetera.  Members of the group need not have fixed roles;

13   different members may perform different roles at different

14   times.  The group does not need to have a name, regular

15   meetings, dues, established rules and regulations,

16   disciplinary procedures, or induction or initiation

17   ceremonies.  An enterprise is sufficiently structured if it

18   includes at least three features:  a purpose, relationships

19   among those associated with the enterprise, and longevity

20   sufficient to permit these associates to pursue the

21   enterprise's purpose.

22      As to relevant definitions and instructions as to the

23   second element.  The second element that the government must

24   prove beyond a reasonable doubt is that the enterprise was

25   engaged in or its activities affected interstate commerce.

1        To meet the requirements of this element, the government

2   needs to prove that the enterprise itself, as a whole, either

3   was engaged in interstate commerce or that the activities of

4   the enterprise affected interstate commerce.

5        The government does not need to prove that the defendant

6   or any member of the enterprise knew that they were engaged in

7   or affected interstate commerce.

8        "Interstate commerce" means commerce between any

9   combination of states, territories, and possessions in the

10   United States, including the District of Columbia.

11        An enterprise is "engaged in interstate commerce" when it

12   is itself directly engaged in the production, distribution, or

13   acquisition of services, money, goods, or other property in

14   interstate commerce.

15        "Activities affected interstate commerce" means that the

16   activities of the enterprise have an impact on or alter,

17   interfere, or change the flow or movement of money, goods, or

18   other property in interstate commerce.  It does not matter if

19   the effect on interstate commerce is beneficial or not.

20        If an enterprise engages in economic activity, then even

21   a minimal connection to interstate commerce is sufficient to

22   meet the interstate requirement.

23        There are some stipulations here, agreements between all

24   parties.

25        The government and the defendant have agreed, or

1    stipulated, to certain facts with regard to this element.

2    Therefore, you must accept the following stipulated facts as

3    true:

4        One, the parties stipulate that the enactment into law of

5    House Bill 6 affected interstate commerce.

6        Two, the parties stipulate that the telephone

7    communications introduced at trial for phone number

8    740-707-2500, which was used by Larry Householder, including

9    phone calls and text messages, utilized a facility of

10   interstate commerce by using telephone systems through Verizon

11   and AT&T.

12       Three, the parties stipulate that the telephone

13   communications introduced at trial for phone number

14   614-204-1050, which was used by Matthew Borges, including

15   phone calls and text messages, utilized a facility of

16   interstate commerce by using telephone systems through

17   Verizon.

18       Four, the parties stipulate that funds transferred from

19   FirstEnergy Service Company bank accounts to Generation Now

20   bank accounts utilized a facility in interstate commerce by

21   using the banking system that transmitted wires across state

22   lines.

23       Five, the parties stipulate that funds transferred from a

24   Generation Now bank account to the 17 Consulting Group, LLC,

25   bank account utilized a facility in interstate commerce by

23-3720

1    using the banking system that transmitted funds through wire

2    communication across state lines.

3         As to relevant definitions and instructions as to the

4    third element.

5         The third element that the government must prove beyond a

6    reasonable doubt is that the defendant was either, quote,

7    "employed by," end quote, or, quote, "associated with," end

8    quote, the enterprise.

9         If you find that the defendant was employed by the

10   enterprise, that is enough to satisfy this element.  You

11   should give the phrase "employed by" its common, ordinary

12   meaning.  For example, a person is employed by an enterprise

13   when he or she is on the payroll of the enterprise, or

14   performs services for the enterprise, or holds a position in

15   the enterprise.

16        Alternatively, you may find that a defendant was

17   "associated with" the enterprise, if you find that the

18   government proved that at some time during the period

19   indicated in the indictment he was aware of the general

20   existence and nature of the enterprise that -- that it

21   extended beyond his individual role, and with that awareness

22   participated, aided, or furthered the enterprise's activities.

23        It's not required that the defendant be employed or

24   associated with the enterprise for the entire time that the

25   enterprise existed.  Rather, to prove that a defendant was

 1    either employed by or associated with an enterprise, the

 2    government must prove beyond a reasonable doubt that the

 3    defendant was connected to the enterprise in some meaningful

 4    way, and that the defendant knew of the existence of the

 5    enterprise and of the general nature of its activities at some

 6    time during the period indicated in the indictment.

 7        Relevant definitions and instructions as to the fourth

 8    element.

 9        The fourth element that the government must prove beyond

10    a reasonable doubt is that the defendant conspired to conduct

11    or participate, directly or indirectly, in the conduct of the

12    enterprise's affairs through a, quote, "pattern of

13    racketeering activity," end quote.

14        In other words, the government must prove beyond a

15    reasonable doubt that the defendant knowingly became a member

16    of the conspiracy with the intent to conduct or participate,

17    directly or indirectly, in the conduct of the affairs of the

18    enterprise through a "pattern of racketeering activity."

19        I will break this down for you by, first, instructing you

20    on "conspiracy" generally, and a defendant's connection to the

21    conspiracy.  Then I will explain some of the additional terms

22    I just referenced.

23        As to conspiracy generally.  A conspiracy is a kind of

24    criminal partnership.  It's a crime for two or more persons to

25    conspire, or agree, to commit a criminal act, even if they

23-3722

1    never actually achieve their ultimate goal.

2         This does not require proof of any formal agreement,

3    written or spoken.  Nor does this require proof that everyone

4    involved agreed on all the details.  But proof that people

5    simply met together from time to time and talked about common

6    interests, or engaged in similar conduct, is not enough to

7    establish a criminal agreement.  These are things that you may

8    consider in deciding whether the government has proved an

9    agreement.  But without more, they are not enough.

10        What the government must prove is that there was a mutual

11   understanding, either spoken or unspoken, between two or more

12   people to cooperate with each other, to conduct and

13   participate in the conduct of the affairs of the enterprise

14   through a pattern of racketeering.  This is essential.

15        An agreement can be proved indirectly by facts and

16   circumstances which led to a conclusion that an agreement

17   existed.  But it's up to the government to convince you that

18   such facts and circumstances existed in this particular case.

19        Now, some of the people who may have been involved in

20   these events are not on trial here.  This does not matter.

21   There is no requirement that all members of a conspiracy be

22   charged and prosecuted, or tried together in one proceeding.

23        As to connection to the conspiracy.  If you're convinced

24   that there was a criminal agreement, then you must decide

25   whether the government has proved that the defendant knowingly

1   and voluntarily joined that agreement.  You must consider each

2   defendant separately in this regard.  To convict any

3   defendant, the government must prove that he knew the

4   conspiracy's main purpose and that he voluntarily joined it

5   intending to help advance or achieve its goals.

6        This does not require proof that a defendant knew

7   everything about the conspiracy, or everyone else involved, or

8   that he was a member of it from the very beginning.  Nor does

9   it require proof that a defendant played a major role in the

10  conspiracy, or that his connection to it was substantial.  A

11  slight role or connection may be enough.

12       But proof that a defendant simply knew about a

13  conspiracy, or was present at times, or associated with

14  members of the group, is not enough even if he approved of

15  what was happening or did not object to it.  Similarly, just

16  because a defendant may have done something that happened to

17  help a conspiracy does not necessarily make him a conspirator.

18  These are things that you may consider in deciding whether the

19  government has proved that a defendant joined a conspiracy.

20  But without more they are not enough.

21       A defendant's knowledge can be proved indirectly by facts

22  and circumstances which lead to a conclusion that he knew the

23  conspiracy's main purpose.  But it is up to the government to

24  convince you that facts and circumstances existed in this

25  particular case.

1        Pattern of racketeering activity.

2        I'm going to define "racketeering activity" for you

3    momentarily.  But I want first to instruct you on what

4    constitutes a "pattern of racketeering."

5        A "pattern of racketeering activity" requires at least

6    two acts of racketeering activity.

7        These acts must be related to the enterprise and to each

8    other, and must pose a threat of continued criminal activity.

9        To prove that the racketeering acts are related to the

10   enterprise, the government must prove that the acts of

11   racketeering activity had a relationship or a meaningful

12   connection to the enterprise.  This relation or connection may

13   be established by evidence that the racketeering activity

14   benefitted the enterprise, was authorized by the enterprise,

15   promoted, or furthered the purposes of the enterprise, or was

16   in some other way related to the affairs of the enterprise.

17        To prove the racketeering acts are related to each other,

18   the government must prove the acts had the same or similar

19   purposes, results, participants, or methods of commission, or

20   that they are otherwise interrelated by distinguishing

21   characteristics and are not isolated events.

22        To prove that the racketeering acts posed a threat of

23   continued racketeering activity, the government must establish

24   that the acts are part of a long-term association that existed

25   for criminal purposes.  Continuing racketeering activity may

1    be proved by evidence showing a closed period of repeated

2    activity; that is, by evidence of a series of related

3    racketeering events committed over a substantial period of

4    time.  Acts of racketeering activity committed over only a few

5    weeks or months and which do not threaten future criminal

6    conduct do not satisfy this requirement.  Continuing

7    racketeering activity or a threat of continuing racketeering

8    activity may also be proved by evidence showing past

9    racketeering activity that by its nature projects into the

10   future with a threat of repetition, for example, when the acts

11   of racketeering activity are part of a long-term association

12   that exists for criminal purposes or when the acts of

13   racketeering activity are shown to be the regular way of

14   conducting the affairs of the enterprise.

15       The government is not required to prove that the

16   defendant actually committed the two acts of racketeering

17   activity, or any acts at all.  But the government must prove

18   beyond a reasonable doubt that the defendant agreed that

19   either he or another member of the conspiracy would commit at

20   least two racketeering activities.

21       "Racketeering activity" includes any act of the following

22   acts, which I will define for you momentarily.

23       Number one, public official honest services wire fraud,

24   in violation of federal law.

25       Two, extortion under color of official right, in

1    violation of federal law.

2         Three, private honest services wire fraud, in violation

3    of federal law.

4         Four, bribery, in violation of state law.

5         Five, interstate travel and use of interstate facilities

6    in aid of racketeering enterprises, in violation of federal

7    law.  Also called the Travel Act.

8         Six, money laundering, in violation of federal law.

9         And seven, engaging in monetary transactions in property

10   derived from specified unlawful activity, in violation of

11   federal law.

12        I am going to instruct you on each of these racketeering

13   now -- I am going to instruct you on each of these

14   racketeering acts now.  But keep in mind, the defendants are

15   not charged with actually committing these acts.  They are

16   charged with the RICO conspiracy.

17        Therefore, the government is not required to prove that

18   the defendant or anyone else actually committed these

19   racketeering acts or any overt acts at all.  Instead, the

20   government only needs to prove beyond a reasonable doubt that

21   the defendant agreed that either he or a co-conspirator would

22   commit at least two of these racketeering acts.  It's not

23   necessary that the conspirator be on trial or charged in the

24   indictment.  Whether a conspiracy existed, or whether a person

25   or entity is a conspirator, is for you, the jurors, to decide.

23-3727

1          As to public official honest services wire fraud.

2          The elements of public official honest services wire

3     fraud are as follows:

4          One, the defendant or -- the defendant or conspirator

5     knowingly devised or participated in a scheme to defraud the

6     public of its right to his honest services as a public

7     official through bribery.

8          Two, the scheme included a material misrepresentation or

9     concealment of a material fact.  Here, the government alleges

10    that the material misrepresentation or concealment consisted

11    of a failure to disclose the bribery scheme.

12         Three, that the defendant or a conspirator had the intent

13    to defraud.

14         And four, the defendant or a conspirator used wire,

15    radio, or television communications or caused another to use

16    wire, radio, or telephone -- television communications in

17    interstate commerce in furtherance of the scheme.

18         Now I will give you more detailed instructions on some of

19    the terms or phrases used in these elements.

20         A "scheme" is any plan or course of action formed with

21    the intent to accomplish some purpose.  The defendant or

22    conspirator must have devised or participated in a plan or

23    course of action involving bribes.

24         The term "public official" means a person with a formal

25    employment relationship with government.

23-3728

1       Public officials owe a fiduciary duty to the public.

2  That means that the official has a duty of honesty and loyalty

3  to act in the public interest, not for his or her own

4  enrichment.  When a public official devises or participates in

5  a bribery scheme, that official violates the public's right to

6  his or her honest services.  This is because the official

7  outwardly purports to be exercising independent judgment in

8  official work, but instead has received benefits for the

9  outcome or deed.  The public is defrauded because the public

10  is not receiving what it expects and is entitled to, namely,

11  the public official's honest services.

12       "Bribery" is a situation where a person or entity, the

13  payor, has agreed to provide, or has actually provided, a

14  thing or things of value to a public official in return for

15  the public official agreeing to undertake, or undertaking, a

16  specific official action.  This sometimes is referred to as a

17  quid pro quo.  Which is a latter phrase meaning "this for

18  that" or "these for those."  A bribery exchange can include

19  either:  one, a public official's solicitations of things of

20  value in exchange for performing or agreeing to perform

21  specific official action; or two, a public official's receipt

22  of things of value when the public official knows that the

23  person who gave the thing of value was doing so in return for

24  the public official performing or agreeing to perform a

25  specific official action.  In other words, bribery includes

1    the public official's solicitation, receipt, acceptance, or

2    agreement to accept a thing of value in exchange for specific

3    official action, whether or not the payor actually provides

4    the thing of value, and whether or not the public official

5    ultimately performs the requested official action or intends

6    to do so.

7        The quid pro quo agreement between the public official

8    and the payor does not need to be stated expressly or

9    formally.  In other words, a bribery agreement is satisfied by

10   something short of a formalized and thoroughly articulated

11   contractual agreement.  Otherwise, the law's effect could be

12   frustrated by knowing winks and nods.

13       While a bribery need not be express, it must be explicit,

14   by which I mean that the government must show that the

15   contours of the proposed exchange were clearly understood by

16   both the public official and the payor, even if the proposed

17   exchange was not communicated between them in express terms.

18       The government may establish the public official's intent

19   to exchange an official action for the thing of value by

20   circumstantial evidence.  This can include, for example, the

21   public official and payor's words, conducts, acts, and all the

22   other surrounding circumstances disclosed by the evidence, as

23   well as any rational or logical inferences that you may draw

24   from those surrounding circumstances.

25       Thus, bribery requires either that the public official

23-3730

 1    intended to exchange a thing of value from the payor for a

 2    specific official action from the public official, or that the

 3    public official knew the payor intended to exchange the thing

 4    of value for a specific official act from the public official.

 5    But there's no requirement that each payment be correlated or

 6    tied to a specific official act sufficient that the public

 7    official understood the agreement was to take a specific

 8    official action on the payor's behalf when the opportunity

 9    presented itself.

10         That said, efforts to buy favor or generalized good will

11    do not necessarily amount to bribery.  Bribery does not

12    include gifts given in the hope that at some unknown,

13    unspecified time a public official might act favorably in the

14    payor's interests.  Also, gifts exchanged solely to cultivate

15    friendship are not bribes; things of value given in friendship

16    and without expectation of anything in return are not bribes.

17         However, it is not a defense to bribery for the public

18    official to claim that he would have lawfully performed the

19    official action in question even without the payor having

20    promised to provide, or having provided, the thing of value.

21    In simple terms, taking a bribe is unlawful, even if the

22    public official would have performed the official action

23    anyway or even if the official action is desirable or

24    beneficial to the public.

25         Also, it is not necessary for the government to prove

1    that the scheme actually succeeded, or that any official act

2    was actually taken by the public official in the course of the

3    scheme.  What the government must prove is that the defendant

4    or conspirator knowingly devised or participated in a scheme

5    or artifice to defraud the public and the government of the

6    right to a public official's honest services through bribes.

7         Also, because people rarely act for a single purpose, the

8    government need not show that the public official undertook,

9    or promised to undertake, the official action only because of

10   the offer or acceptance of the thing of value.  If you find

11   that a public official solicited or received a thing of value

12   in exchange for the promise of specific official action, then

13   it makes no difference that the public official may also have

14   had another lawful motive for soliciting or accepting the

15   thing of value.

16        The term, quote, "official act," end quote, means any

17   decision or action on any question, matter, cause, suit,

18   proceeding or controversy, which may at any time be pending,

19   or which may by law be brought before any public official in

20   his official capacity, or in such official's place of trust or

21   profit.  This definition of official act has two parts.

22        First, the evidence must show a question, matter, cause,

23   suit, proceeding or controversy that may at any time be

24   pending or may by law be brought before a public official.  A

25   question, matter, cause, suit, proceeding or controversy must

1    involve a formal exercise of governmental power, and it must

2    be something specific and focused.

3         Second, the government must prove that the public

4    official made a decision or took an action on that question or

5    matter, or agreed to do so.  The decision or action may

6    include using an official position to exert pressure on

7    another official to perform an official act or to advise

8    another public official with the intent to pressure the

9    official to perform an official act.  Actual authority over

10   the end result is not controlling.

11        Under this definition, some acts do not count as, quote,

12   "official acts," quote.  Setting up a meeting, calling another

13   public official, or hosting an event would not, standing

14   alone, qualify as an official act.  The public official need

15   not have a direct role in the official act; an indirect role

16   is sufficient.

17        As I mentioned, the public official need not have

18   actually performed an official act, or even intended to do so.

19   Rather, it is sufficient if the public official agreed to

20   perform a specific official act in exchange for a thing of

21   value, or if he received payment knowing it was provided to

22   him in exchange for his agreement to perform a specific

23   official act.  Moreover, the public official need not have

24   specified the means that he would use to perform his end of

25   the bargain.  He may, for example, conclude that an agreement

1    was reached that the evidence shows that the public official

2    received a thing of value knowing that it was given with the

3    expectation that the official would perform a specific

4    official act in return.

5         An act is, quote, "knowingly," quote, done if done

6    voluntarily and not because of mistake or some other innocent

7    reason.

8         A "thing of value" includes things possessing intrinsic

9    value, whether tangible or intangible, that the person giving

10    or offering or the person soliciting or receiving considers to

11    be worth something.  A "thing of value" could include a

12    contribution to a 501(c)(4) organization, so long as it was

13    solicited or received in exchange for a specific official act.

14         To act with, quote, "intent to defraud," quote, means to

15    act with an intent to deceive or deprive the public and

16    government of their right to a public official's honest

17    services.

18         A misrepresentation or concealment is, quote, "material,"

19    quote, if it has a natural tendency to influence or is capable

20    of influencing the decision of the public or government agency

21    that employed the public official.

22         The fraud or misrepresentation may consist of the

23    concealment or failure to disclose the thing or things of

24    value that the public official has solicited, received, or

25    agreed to receive, or the public official's implicit false

23-3734

1    pretense to his governmental employer or the public that he

2    remains loyal to the employer's or the public's interest.

3         "Wire communication" includes communications that occur

4    by telephone or by banking transactions.

5         To "cause" wire, radio, or television communications to

6    be used is to do an act with knowledge that the use of the

7    communications will follow in the ordinary course of business

8    or where such use can reasonably be foreseen.

9         The term "interstate commerce" includes wire, radio, or

10   television communications which crossed a state line.

11        It is not necessary that the government prove all of the

12   details alleged concerning the precise nature and purpose of

13   the scheme, or that the material transported -- transmitted by

14   wire, radio, or television communications was itself false or

15   fraudulent, or that the alleged scheme actually succeeded in

16   defrauding anyone, or that the use of the wire, radio, or

17   telephone communications was intended as the specific or

18   exclusive means of accomplishing the alleged fraud or that

19   someone relied on the misrepresentation or false statement, or

20   that the defendant or conspirator obtained money or property

21   for his own benefit.

22        As to extortion under color of official right.

23        The elements of extortion under color of official right

24   are as follows:

25        One, that the defendant or conspirator was a public

1    official.

2        Two, that the defendant or conspirator obtained,

3    accepted, took, or received property, that he was not lawfully

4    entitled to, from another person with that person's consent.

5        That the defendant or conspirator knew the property was

6    being obtained, accepted, taken, or received in exchange for

7    an official act.

8        And four, that as a result, interstate commerce was

9    affected in any way or degree.

10       Now I'll give you more detailed instructions on some of

11   the terms or phrases used in these elements.

12       The term, quote, "public official," quote, means a person

13   with a formal employment relationship with government.

14       The term "property" means money or other tangible or

15   intangible things of value that can be transferred, including

16   contributions to a 501(c)(4) organization.

17       The phrase, quote, "the defendant or conspirator knew the

18   property was being obtained, accepted, taken, or received in

19   exchange for an official act," end quote, may include the

20   conduct of taking a bribe, where the word "bribe" is defined

21   in the same manner as it was in connection with the

22   instructions I gave you previously for Public Official Honest

23   Services Wire Fraud.

24       Consistent with these earlier instructions, I remind you

25   that:

1      Efforts to buy favor or generalized goodwill do not

2   necessarily amount to bribery; bribery does not include gifts

3   given in the hope that at some unknown, unspecified time a

4   public official might act favorably in the payor's interests.

5      Gifts exchanged solely to cultivate friendship are not

6   bribes; things of value given in friendship and without

7   expectation of anything in return are not bribes.

8      It is not a defense to bribery that the public official

9   would have done the official act anyway, even without the

10   receipt of the property.

11      The term "official act" is defined in the same manner as

12   it was in connection with the instructions I just gave you for

13   public official honest services wire fraud.

14      "Interstate commerce was affected" if the conduct, in any

15   way, interferes with or changes the movement of goods,

16   merchandise, money, or other property in commerce between

17   different states.  Any effect at all on commerce is enough.

18      This includes obtaining money that belonged to a business

19   which customarily purchased goods from outside the state of

20   Ohio, or that engaged in business outside the state of Ohio,

21   if the defendant or conspirator's conduct made that money

22   unavailable to the business entity for the purchase of such

23   goods or the conducting of such business.  It is not

24   necessarily for you to find that there was an actual effect on

25   interstate commerce.

1          Finally, the government need not prove:

2          That the bribery agreement was stated in express terms,

3     for otherwise the law's effect could be frustrated by knowing

4     winks and nods.  A bribery agreement is satisfied by something

5     short of a formalized and thoroughly articulated contractual

6     arrangement.  While a bribery agreement need not be express,

7     it must be explicit, by which I mean that the government must

8     show that the contours of the proposed exchange were clearly

9     understood by both the public official and the payor even if

10    the proposed exchange was not communicated between them in

11    express terms.

12         That the public official ultimately performed the

13    official act.

14         That the property was exchanged for an official act only.

15    Because people rarely act for a single purpose, if you find

16    that the property was exchanged at least in part for an

17    official act, then it makes no difference that the defendant

18    may have also had another separate lawful purpose for

19    exchanging the property.

20         That the defendant or conspirator had the actual power to

21    effectuate the end for which he accepted or induced payment;

22    it's sufficient that the defendant or conspirator exploited a

23    reasonable belief that he had the power to do so.

24         As to private honest services wire fraud, the elements of

25    private honest services wire fraud are as follows:

1          That the defendant or conspirator knowingly devised or

2     participated in a scheme to defraud an employer of its right

3     to the honest services of its employees through bribery.

4          That the defendant or conspirator had the intent to

5     defraud.

6          That the defendant or conspirator foresaw or reasonably

7     should have foreseen that the employer might suffer economic

8     harm as a result of the scheme.

9          And four, that the defendant or conspirator used wire,

10    radio, or television communications in interstate commerce in

11    furtherance of the scheme.

12         Now I will give you some more detailed instructions on

13    some of the terms or phrases just used in these elements.

14         A "scheme" is any plan or course of action formed with

15    the intent to accomplish some purpose.  The defendant or

16    conspirator must have devised or participated in a plan or

17    course of action involving the intended breach of a fiduciary

18    duty through bribery.

19         An employer who works for a private employer has a duty

20    to provide honest services to the employer.  A fiduciary duty

21    exists where the employee has a duty to act for the benefit of

22    the employer and the employer relies on the employee to carry

23    out his job duties for the benefit of the organization.  When

24    a defendant devises or participates in a bribery scheme

25    involving an employee's breach of his fiduciary duty to his

1    employer, such a scheme is intended to deprive the employer of

2    its right to honest services.  The employer is defrauded

3    because it is not receiving what it expects and is entitled

4    to, namely, the employee's honest services.

5        A defendant need not owe the fiduciary duty personally,

6    so long as he devises or participates in a bribery scheme

7    intended to deprive an employer of its right to the honest

8    service of its employees.  In other words, an employee -- the

9    holder of the fiduciary duty -- may be the attempted target of

10   the bribe and may be entirely innocent.  It's not necessary

11   for the employee to accept the thing of value from the payor

12   or to take action violating his fiduciary duty.

13       The actual or intended breach of the fiduciary duty must

14   be participation in a bribery scheme involving the actual,

15   intended, or solicited exchange of a thing of value in

16   exchange for the employee improperly providing information

17   that the employer intended to keep secret -- in other words, a

18   quid pro quo, a Latin phrase meaning "this for that" or "these

19   for those."  The quid pro quo agreement between the employee

20   and the payor do not need to be stated expressly or formally.

21   Rather, the intent to exchange may be established by

22   circumstantial evidence, based upon the payor's words,

23   conduct, acts, and all of the surrounding circumstances

24   disclosed by the evidence and the rational or logical

25   inferences that may be drawn from them.

23-3740

1          Bribery requires the intent to cause an exchange of

2     something of value, but each payment does not need to be

3     correlated with or tied to specific action, so long as the

4     employee understood that the agreement was to take action on

5     the payor's behalf when the opportunity presented itself.

6          Also, it is not necessary for the government to prove

7     that the scheme actually succeeded, or that anything of value

8     was actually exchanged.  The government must prove that the

9     defendant or conspirator knowingly devised or participated in

10    a scheme to defraud a private entity of its right to the

11    honest services of an employee through bribes.

12         When the defendant or conspirator is the bribe payor, it

13    is sufficient if the defendant or conspirator intends or

14    solicits the employee to violate his duty of honest services

15    to the employer in exchange for a thing of value and that the

16    defendant foresaw, or should have foreseen, that the employer

17    might suffer economic harm as a result of the intended or

18    solicited breach of fiduciary duty.

19         A "thing of value" includes things possessing intrinsic

20    value, whether tangible or intangible, that the person giving

21    or offering the person soliciting or receiving considers to be

22    worth something.

23         To act with "intent to defraud" means to act with an

24    intent to deceive or deprive a private employer of its right

25    to the honest services of its employees.

1    "Wire communication" includes communications that occur

2    by telephone or by banking transactions.

3    To "cause" wire, radio, or television communications to

4    be used is to do an act with knowledge that the use of the

5    communications will follow in the ordinary course of business

6    or where such use can reasonably be foreseen.

7    The term "interstate commerce" includes wire, radio, or

8    television communications which crossed a state line.

9    It's not necessary that the government prove all of the

10   details alleged concerning the precise nature and purpose of

11   the scheme or that the material transmitted by wire, radio, or

12   television communications was itself false or fraudulent or

13   that the alleged scheme actually succeeded in defrauding

14   anyone or that the use of the wire, radio, or television

15   communications was intended as the specific or exclusive means

16   of accomplishing the alleged fraud or that someone relied on

17   the misrepresentation or false statement or that the defendant

18   obtained money or property for his own benefit.

19   Bribery, in violation of state law.  The elements of Ohio

20   state law bribery are as follows:

21   A public servant, who is either the defendant or a

22   conspirator, knowingly solicited or accepted for himself any

23   valuable thing or valuable benefit.

24   That the public servant, who is either the defendant or a

25   conspirator, intended the valuable thing or benefit to corrupt

1    or to improperly influence him.

2        And that the corruption or influence was with respect to

3    the discharge of his duties as a public servant.

4        Now I will give you more detailed instructions on some of

5    the terms or phrases used in these elements.

6        A person acts "knowingly," regardless of his purpose,

7    when he is aware that his conduct will probably cause a

8    certain result.  A person has knowledge of circumstances when

9    he is aware that such circumstances probably exist.  When

10   knowledge of the existence of a particular fact is an element

11   of an offense, such knowledge is established if a person

12   subjectively believes that there is a high probability of its

13   existence and fails to make inquiry or acts with a conscious

14   purpose to avoid learning the fact.

15       "To solicit" means to entice, urge, lure, or ask.

16       "Valuable thing or valuable benefit" includes, but is not

17   limited to, contribution to a 501(c)(4) organization.

18       "To corrupt" means to destroy or undermine the honesty or

19   integrity of another; to taint, to infect.

20       A "public servant "includes any elected or appointed

21   officer, employee, or agent of the state or any political

22   subdivision, whether in a temporary or permanent capacity.

23       As to the Travel Act, the elements of the Travel Act are

24   as follows:

25       The defendant or conspirator knowingly used or caused to

23-3743

1     be used a facility in interstate commerce.

2          Two, the defendant or conspirator did so with the intent

3     to promote, manage, establish, or carry on lawful activity.

4          Three, after the use of a facility in interstate

5     commerce, the defendant or conspirator did an act, or

6     attempted to do an act, in order to promote, manage,

7     establish, or carry on the unlawful activity.

8          Now I'll give you more detailed instructions on some of

9     the terms or phrases used in these elements.

10         The term "uses any facility in interstate commerce" means

11    employing or utilizing any method of communication between one

12    state and another.  This may include, for instance, the use of

13    the telephone systems, the banking systems, and the postal

14    service.

15         The government must prove that the defendant intended the

16    use of interstate facilities to facilitate or further the

17    unlawful activity.  The government does not, however, need to

18    prove that the use of an interstate facility was essential to

19    that activity.  But the government must prove beyond a

20    reasonable doubt that the defendant used a facility in

21    interstate commerce and that one of the reasons for this use

22    was to promote, manage, establish, or carry on the unlawful

23    activity.

24         "Unlawful activity" means bribery in violation of state

25    law if the defendant or conspirator, during the course of any

 1    campaign in advocacy of or in opposition to the adoption of

 2    any proposition or issue to the voters, knowingly and with

 3    intent to affect the outcome of a campaign promised, offered,

 4    or gave any valuable thing or valuable benefit to any person

 5    who was employed by or was an agent of a committee in advocacy

 6    of or in opposition to the adoption of any ballot proposition

 7    or issue, for the purpose of influencing the employee or agent

 8    with respect to the improper discharge of the employee's or

 9    agent's campaign duties, or to obtain information about the

10    committee's campaign organization.

11         As to money laundering, the elements of money laundering

12    are as follows:

13         The defendant or co-conspirator -- conspirator conducted

14    or attempted to conduct a financial transaction.

15         That the financial transaction involved property that

16    represented the proceeds of specified unlawful activity.

17         That the defendant or conspirator knew that the property

18    involved in the financial transaction represented the proceeds

19    of some form of unlawful activity.

20         And that the defendant or conspirator knew that the

21    transaction was designed in whole or in part to conceal or

22    disguise the nature, location, source, ownership, or control

23    of the proceeds of the specified unlawful activity.

24         Now I will give you more detailed instructions on some of

25    the terms or phrases used in these elements:

 1          "Financial transaction" includes a transaction that

 2     affects interstate or foreign commerce involving the movement

 3     of funds by wire or other means.

 4          "Conducts" includes initiating, concluding, or

 5     participating in initiating or concluding a transaction.

 6          "Proceeds" means any property derived from, obtained, or

 7     retained, directly or indirectly, through some form of

 8     unlawful activity, including the gross receipts of such

 9     activity.

10          "Specified unlawful activity" means some racketeering

11     activity, as those offenses were defined above, that is:

12     public official honest services wire fraud, extortion under

13     color of right, and bribery under state law.  These offenses

14     are all felonies.

15          The government need only establish that the defendant or

16     conspirator knew that the purpose of the transaction was to

17     conceal or disguise the proceeds, not that the defendant or

18     conspirator had that intent.

19          The phrase, quote, "knew that the property involved in a

20     financial transaction represents the proceeds of some form of

21     unlawful activity," end quote, means that the defendant or

22     conspirator knew the funds involved in the transaction

23     represented the proceeds of some form, though not necessarily

24     which form, of activity that constitutes a felony under state

25     or federal law.

1         The government does not have to prove that the defendant

2    or conspirator knew the property involved represented proceeds

3    of a felony as long as he knew the property involved

4    represented proceeds of some form of unlawful activity.

5         Engaging in monetary transactions in property derived

6    from specified unlawful activity.

7         The element of engaging -- the elements of engaging in

8    monetary transactions in property derived from specified

9    unlawful activity are:

10        One, that the defendant or conspirator knowingly engaged

11   in a monetary transaction.

12        Two, that the monetary transaction was in property

13   derived from specified unlawful activity.

14        Three, that the property had a value greater than

15   $10,000.

16        Four, that the defendant or conspirator knew that the

17   transaction was in criminally derived property.

18        And five, that the monetary transaction took place within

19   the United States.

20        Now I will give you more detailed instructions on some of

21   the terms or phrases used in these elements.

22        "Monetary transaction" means the deposit, withdrawal,

23   transfer, or exchange in or affecting commerce of funds or a

24   monetary instrument by, through, or to a financial

25   institution.

1     The term "specified unlawful activity" has the same

2  meaning I provided to you as to money laundering.

3     "Criminally derived property" means any property

4  constituting or derived from proceeds obtained from a criminal

5  offense.  While the money must be from a specified unlawful

6  activity, the defendant or conspirator need only know that the

7  money was criminally derived.  In other words, the Court need

8  not prove that the defendant or conspirator knew the property

9  was derived from a particular type of unlawful activity, so

10  long as the government proves the defendant or conspirator

11  knew it was criminally derived.  In order for property to

12  qualify as criminally derived, the underlying criminal

13  activity must have been completed and the defendant or

14  conspirator must have obtained or controlled the tainted

15  funds.  The funds need not be in the defendant or

16  conspirator's physical possession or in a personal bank

17  account, as long as defendant exercised control over the

18  funds.

19     I am going to read the last sentence again.  The funds

20  need not be in the defendant or conspirator's physical

21  possession or in a personal bank account, so long as he

22  exercised control over the funds.

23     Unanimity as to element four.

24     To convict a defendant of the RICO conspiracy, your

25  verdict must be unanimous as to which type or types of

1    predicate racketeering activity a defendant agreed would be

2    committed.

3        For example, at least two acts of either public official

4    honest services wire fraud, extortion under color of right,

5    private honest services wire fraud, bribery under state law,

6    Travel Act violations, money laundering, or monetary

7    transactions and property derived from specified unlawful

8    activity.  But it need not be two of the same type of act --

9    it could be two acts of one type of racketeering activity or

10   two different types of racketeering activity.  Either way, you

11   must all unanimously agree on the two types of acts.

12       Venue.  Now, some of the events that you've heard about

13   happened in other places.  There is no requirement that the

14   entire conspiracy take place here in the Southern District of

15   Ohio.  It's sufficient for the government to convince you that

16   some act in furtherance of a conspiracy took place here in the

17   Southern District of Ohio.

18       Here, however, the government and the defendant have

19   agreed, or stipulated, that venue is proper in the Southern

20   District of Ohio.  Therefore, you must accept this stipulated

21   fact as true.

22       Additional instructions.

23       Typical campaign contributions are not unlawful.  Neither

24   is creating or using a 501(c)(4) entity for lawful purposes.

25   RICO conspiracy, however, is unlawful.  Therefore, if you find

1    that the government has proved its case as to RICO conspiracy

2    against a particular defendant, you must return a guilty

3    verdict as to that particular defendant.  Otherwise, you must

4    return a not guilty verdict as to that particular defendant.

5        I want to caution you more generally that this case is

6    not about energy policy in Ohio.  Your role as jurors in this

7    case is to decide whether the government has met its burden to

8    prove either or both defendants guilty of conspiracy beyond a

9    reasonable doubt.  Whether you believe House Bill 6 was good

10    or bad legislation is not at issue.  You should not allow what

11    you think of the law, House Bill 6, to influence your decision

12    or your impartial evaluation of the evidence.

13        Similarly, if you conclude that the government has proven

14    its case beyond a reasonable doubt, whether the defendants

15    would have supported House Bill 6 regardless is not a defense.

16        So that concludes the part of my instructions explaining

17    the elements of the crime.  Next I will state the defense

18    position.

19        The defendants deny the charge and deny that they were

20    associated with or employed by any alleged enterprise.

21        This concludes the part of my instructions explaining the

22    elements of the crime and defendants' position.  Now I am

23    going to explain some rules that you must use in considering

24    some of the testimony and evidence.

25        Defendants' right not to testify or present evidence.  A

1    defendant has an absolute right not to testify or present

2    evidence.  The fact that the defendant, Matthew Borges, chose

3    not to testify cannot be considered by you in any way.  Do not

4    even discuss it in your deliberations.

5         Remember that it is up to the government to prove each of

6    the defendants guilty beyond a reasonable doubt.  It is not up

7    to the defendants to prove that they are innocent.

8         As to a defendant's testimony, here you have heard the

9    defendant Larry Householder testify.  Earlier, I talked to you

10   about the "credibility" or the "believability" of the

11   witnesses.  And I suggested some things for you to consider in

12   evaluating each witness's testimony.

13        You should consider those same things in evaluating

14   defendant Larry Householder's testimony.

15        Now, as to testimony of cooperating codefendants.

16        You heard the testimony of Juan Cespedes and Jeffrey

17   Longstreth.  You also heard that these witnesses were involved

18   in the same offense that the defendants are charged with

19   committing, and that these two witnesses pleaded guilty to the

20   offense.

21        The fact that these witnesses pleaded guilty to the crime

22   is not evidence that the defendants are guilty, and you cannot

23   consider this against the defendants in any way.

24        Additionally, you heard that the government promised

25   these witnesses a request for a reduced sentence in exchange

1    for their cooperation.

2        It is permissible for the government to make such a

3    promise.

4        But you should consider their testimony with more caution

5    than the testimony of other witnesses.  Consider whether the

6    testimony may have been influenced by the government's

7    promise.

8        Do not convict the defendants based on the unsupported

9    testimony of such witnesses, standing alone, unless you

10   believe their testimony beyond a reasonable doubt.

11       As to the testimony of a paid informant, you have heard

12   the testimony of Tyler Fehrman.  You have also heard that he

13   received money from the FBI after he provided information.

14       The use of paid informants is common and permissible.

15   But you should consider the witness's testimony with more

16   caution than the testimony of other witnesses.  Consider

17   whether his testimony may have been influenced by what the

18   government gave him.

19       Do not convict the defendants based on the unsupported

20   testimony of such a witness, standing alone, unless you

21   believe his testimony beyond a reasonable doubt.

22       Impeachment by prior inconsistent statement not under

23   oath.

24       You have heard the testimony of Robert Klaffky.  You have

25   also heard that before this trial he made a statement that may

23-3752

1    be different from his testimony here in court.

2        The earlier statement was brought to your attention only

3    to help you decide how believable his testimony was.  You

4    can't use it as proof of anything else.  You can only use it

5    as one way of evaluating his testimony here in court.

6        Opinion testimony.  You have heard the testimony of Noah

7    Dormady, Charles Walker, and Josh Altic, who testified as

8    opinion witnesses.

9        You do not have to accept their opinions.  In deciding

10   how much weight to give their testimony, you should consider

11   the witness's qualifications and how he reached his

12   conclusions.  Also consider the other factors discussed in

13   these instructions for weighing the credibility of witnesses.

14       Remember that you alone decide how much of a witness's

15   testimony, if any, to believe, and how much weight it

16   deserves.

17       There were witnesses testifying to both facts and

18   opinions.

19       You heard the testimony of Special Agent Blane Wetzel and

20   Nathan Holbrook and Chris Hartsel of the FBI, who testified to

21   both facts and opinions.  Each of these types of testimony

22   should be given the proper weight.

23       As to the testimony and facts, consider the factors

24   discussed earlier in these instructions for weighing the

25   credibility of witnesses.

1      As to the testimony on opinions, you do not have to
2   accept the witness's opinions.  In deciding how much weight to
3   give it, you should consider the witness's qualifications and
4   how he reached his conclusions along with the other factors
5   discussed in these instructions for weighing the credibility
6   of witnesses.
7      Remember that you alone decide how much of a witness's
8   testimony, if any, to believe, and how much weight it
9   deserves.
10      As to testimony regarding the law, you have heard some
11   witnesses testify regarding the law or what they believe to be
12   lawful or unlawful conduct.
13      The instructions that I'm giving you constitute the
14   controlling law, and this is the law you must follow.
15      As to investigative techniques, you've heard evidence
16   obtained from the government's use of undercover agents,
17   informants, and deceptive investigative techniques.  The
18   government is permitted to use these techniques.  You should
19   consider evidence obtained this way together with and in the
20   same way you consider the other evidence -- all other
21   evidence.
22      And keep in mind that you should judge the credibility of
23   the witnesses as I have previously instructed.
24      Materials not admitted into evidence.
25      During the trial, you saw counsel use certain summaries,

1    charts, or other similar materials that were offered to assist

2    in the presentation and understanding of the evidence.  This

3    material is not itself evidence and must not be considered as

4    proof of any facts.

5        Evidence summaries admitted into evidence.

6        During the trial, you have seen or heard summary evidence

7    in the form of charts, calculations, and similar materials.

8    These summaries are admitted into evidence, in addition to the

9    materials they summarize, because the summaries may assist you

10   in understanding the evidence that has been presented.

11       But the summary itself is not evidence of the material it

12   summarizes and is only as valid and reliable as the underlying

13   material it summarizes.

14       Transcriptions of recordings.  You have heard some

15   recorded conversations that were received in evidence, and you

16   were given some written transcripts of the proceedings.

17       Keep in mind that the transcripts are not evidence.  They

18   were given to you only to help as a guide and enable you to

19   follow what was being said.  The recordings themselves are the

20   evidence.  If you noticed any differences between what you

21   heard on the recordings and what you read in the transcripts,

22   you must rely on what you heard, not what you read.  If you

23   could not hear or understand certain parts of the recordings,

24   you must ignore the transcripts as far as those parts are

25   concerned.

1    Redactions.  The Court's rules require that certain

2   information be redacted, or blacked out, from the exhibits.

3   You should not draw any inference from the fact that an

4   exhibit has been redacted.

5    And now as to deliberation and verdict.

6    I have concluded the part of my instructions regarding

7   the rules of considering some of the testimony and evidence.

8   And I want to finish up by explaining some things about your

9   deliberations in the jury room and your possible verdicts.

10    Tomorrow, after closing arguments, the first thing that

11   you should do when you retire to the jury room is you chose

12   someone to be your foreperson.  This person will help guide

13   your discussions and will speak for you collectively here in

14   court.  The foreperson's vote and opinion does not carry any

15   greater weight than any other juror.

16    Once you start deliberating, do not talk to anyone -- not

17   Ms. Webster, not my staff, not me, not anyone except each

18   other -- about the case.

19    If you have any questions or messages, you must write

20   them down on a piece of paper, sign them, and then give them

21   to Ms. Santora, who will then bring your written question to

22   me.  You buzz for her in the jury room.  Any questions or

23   messages normally should be sent to me through your foreperson

24   in writing.  Once I receive your written question or message,

25   I will respond as soon as I can.  I will likely have to talk

1       to the lawyers about what you have asked, so it may take me

2       some time to get back to you.  In the meantime, please

3       continue your deliberations while you wait to hear back from

4       me if you are able to do so.

5            One more thing about messages.  Do not ever write down or

6       tell anyone, including me, how you stand on your votes.  For

7       example, do not write down or tell anyone that you're split

8       6-6 or 8-4, or whatever your vote happens to be.  That should

9       stay secret until you are finished.

10            As to experiments, research, investigation, and outside

11      communications.  This may sound familiar.  Remember that you

12      must make your decision based only on the evidence that you

13      saw and heard here in court.

14            During your deliberations, both in the jury room and on

15      break, you must not communicate with or provide information to

16      anyone by any means about this case.  You may not use any

17      electronic device or media, such as a telephone, cell phone,

18      smart phone, iPhone, tablet, smart watch, or computer, the

19      Internet, any Internet service, any text or instant messaging

20      service, any app, any interstate chat room, blog, or website.

21      All of this includes but is not limited to Twitter, Snapchat,

22      Instagram, Facebook, LinkedIn, or YouTube to communicate to

23      anyone any information about this case or to conduct any

24      research about this case until I accept your verdict.  In

25      other words, you can't talk to anyone on the phone, correspond

1   with anyone, or electronically communicate with anybody about

2   this case, and you may not do any form of outside research.

3   You can only discuss the case in the jury room with your

4   fellow jurors during deliberations, pursuant to my

5   instruction.  I expect you will inform me immediately if you

6   become aware of another juror's violation of these

7   instructions.

8        If a juror needs to leave the room, perhaps for the

9   bathroom or something like that, you stop your deliberations,

10  wait until that person's back, and then all of you continue

11  your deliberations.

12       The reason that you are not permitted to conduct outside

13  research or communicate with anyone other than each other

14  about the case is because it is critical that you decide this

15  case, imperative that you decide this case based solely on the

16  evidence presented in this courtroom.  Information available

17  in reference materials, the news, on the Internet, or through

18  social media might be wrong, incomplete, inaccurate, or

19  misleading.  You are only permitted to discuss this case with

20  your fellow jurors during deliberations because they have seen

21  and heard the same evidence you have.  In our judicial system,

22  it's important that you are not influenced by anything or

23  anyone outside of this courtroom.  Otherwise, your decision

24  might be based on information known only to you and not your

25  fellow jurors or the parties in this case.  This would

23-3758

 1    unfairly and adversely impact the judicial process.  A juror

 2    who violates these restrictions jeopardizes the fairness of

 3    these proceedings, and a mistrial could result, which would

 4    require the entire trial process to start over.

 5         Unanimous verdict.  Your verdict as to each defendant,

 6    whether it's guilty or not guilty, must be unanimous.

 7         To find a defendant guilty, every one of you must agree

 8    that the government has overcome the presumption of evidence

 9    with evidence that proves the defendant's guilt beyond a

10    reasonable doubt.

11         To find a defendant not guilty, every one of you must

12    agree that the government has failed to convince you beyond a

13    reasonable doubt.

14         Either way, guilty or not guilty, your verdict must be

15    unanimous.

16         As to the duty to deliberate.  Now that all the evidence

17    is in and once the closing arguments are completed, you are

18    free to talk about the case among yourselves only and only

19    while in the jury room.  In fact, it's your duty to talk with

20    each other about the evidence and make every reasonable effort

21    you can to reach a unanimous agreement.  Talk with each other,

22    listen carefully and respectfully to each other's views, and

23    keep an open mind as you listen to what your fellow jurors

24    have to say.  Try your best to work out your differences.  Do

25    not hesitate to change your mind if you're convinced that

23-3759

1       other jurors are right and that your original position was

2       wrong.

3            But do not ever change your mind just because other

4       jurors see things differently or just to get the case over

5       with.  In the end, your vote must be exactly that -- your own

6       vote.  It's important for you to reach a unanimous agreement,

7       but only if you can do so honestly and in good conscience.

8            No one will be allowed to hear your discussions in the

9       jury room, and no record will be made of what you say.  You

10      should all feel free to speak your minds.  And the foreperson

11      should make sure everyone is afforded that opportunity, even

12      if you have to call on them.

13           Listen carefully to what the other jurors have to say,

14      and then decide for yourself if the government has proved

15      either, both, or neither of the defendants guilty beyond a

16      reasonable doubt.

17           As to punishment.  If you decide that the government has

18      proved the defendant guilty, then it will be my job to

19      determine what the appropriate punishment should be.

20           Deciding what the punishment should be is my job, not

21      yours.  It would violate your oaths as jurors to even consider

22      the possible punishment in deciding your verdict.

23           Your job is to look at the evidence and decide if the

24      government has proved either, both, or neither defendant

25      guilty beyond a reasonable doubt.

1          I have prepared verdict forms that you should use to

2     record your verdict.  Can we put the verdict form up on the

3     screen?  I am not giving you paper copies of it because

4     there's only one that's going to go up there.  It's

5     straightforward.

6          The verdict form, U.S.A. versus Larry Householder.

7     Verdict form.

8          "On the charge of Racketeering Influenced and Corrupt

9     Organizations Act conspiracy, in violation of federal law.

10          "We, the jury, find the defendant Larry Householder," you

11     mark either "guilty" or not "guilty," you date it, and all

12     persons including the foreperson sign it.

13          There's a second identical verdict form except it's as to

14     Matthew Borges.  You will be required to indicate whether we,

15     the jury, find the Defendant Matthew Borges not guilty or

16     guilty.  It needs to be dated.  It needs to be signed by all

17     of you.

18          The verdict form.  If you unanimously decide that the

19     government has proved the charge against a particular

20     defendant beyond a reasonable doubt, say so by having your

21     foreperson mark "guilty" on the form as to that particular

22     defendant.  If you decide unanimously that the government has

23     not proved the charge against a particular defendant beyond a

24     reasonable doubt, say so by having your foreperson mark "not

25     guilty" on the form as to that particular defendant.

1       Each of you must sign and the form must be dated after it

2   is completed.  The foreperson is responsible for keeping the

3   verdict forms secure, and to provide -- ultimately provide

4   them to me in the courtroom as instructed after you've reached

5   your verdict.

6       Remember that the verdict is limited to the charge

7   against these defendants.  Each defendant is only on trial for

8   the particular crime charged in the indictment.  Your job is

9   limited to deciding whether the government has proved the

10  crime charged as to each defendant.

11      As to juror notes, remember that if you elected to take

12  notes during the trial, your notes should be used only as

13  memory aids.  You should not give your notes greater weight

14  than your independent recollection of the evidence.  You

15  should rely upon your own independent recollection of the

16  evidence or lack of evidence and you should not be unduly

17  influenced by the notes of other jurors.  Notes are not

18  entitled to any more weight than the memory or impression of

19  each juror.

20      Whether you took notes or not, each of you must form and

21  express your own opinion as to the facts of the case.

22      The Court has no opinion.  Let me finish up by repeating

23  something that I said to you earlier.  Nothing I have said or

24  done during this trial was meant to influence your decision in

25  any way.  You decide for yourselves if the government has

 1    proved the defendant guilty beyond a reasonable doubt.

 2        I lift my eyes and it would appear that you all survived.

 3    When it comes time to deliberate, keep your eye on the ball

 4    and the question that is presented to you.

 5        You can leave your instructions with you, not taking

 6    them -- on the chair, not taking them home with you.  When you

 7    go home, no discussion of the case with anyone.  Don't start

 8    talking about it among yourselves yet.  No independent

 9    research.  No checking out the media or social media.  And be

10    prepared when you come to court tomorrow by 9 o'clock in this

11    room, probably 8:45 or 8:30 at the spot, be prepared to come

12    in and hear closing arguments.  It's not evidence, but it's

13    designed to assist you.  And once we're through with it, I

14    will then send you to your room, and you will begin your

15    deliberations.

16        So you are going to leave your notes.  You are going to

17    leave your jury instructions, put your jury number on your

18    jury notes if it's not already there so we can get them back

19    to the appropriate person.

20        And momentarily, I'm going to send you home.  And at some

21    point in time, I'm going to give you a long speech about how

22    grateful we are for you having taken the time and invested the

23    energy as serving on a jury.  Service on a jury I believe is a

24    sacrifice required by democracy, and we are so fortunate and

25    grateful that you have taken the work on and paid such close

1    attention.

2        Is there anything I need to address from any party before

3    I excuse the jury for the day?  From the government?

4            MS. GLATFELTER:  No, Your Honor.

5            THE COURT:  From Mr. Householder's counsel?

6            MR. BRADLEY:  No, Your Honor.

7            THE COURT:  From Mr. Borges's counsel?

8            MR. SCHNEIDER:  No, Your Honor.  No.

9            THE COURT:  We're starting at 9 a.m. tomorrow.  So

10   get to your spot in time.  Take a break.  God bless you.  Out

11   of respect for you, we will rise as you leave for the day.

12           THE COURTROOM DEPUTY:  All rise for the jury.

13       (Jury exited the courtroom at 3:54 p.m.)

14           THE COURT:  The jury's left the room.  As always,

15   we'll wait until we're advised that they have cleared the

16   floor before we depart the courtroom.

17       I'm going to state what I hope is the general time frame

18   for closing.  If you want to write it down, feel free.  9 a.m.

19   to 11 a.m., the government; 11 a.m. to 12:10 p.m., lunch;

20   12:15 to 2:45, Householder; 2:45 to 3, break; 3:05 to 4:30,

21   Borges; 4:35 to 4:50, break; 4:55 to 5:30, government

22   rebuttal.

23       If you use less time, we'll get the jury out of here

24   sooner.  I will interrupt you if you start to go well beyond

25   the commitments you have made to me on length.

23-3764

 1      Now that the jury's out of here, is there anything anyone

 2    needs to bring to my attention before I break?  From the

 3    government?

 4           MS. GLATFELTER:  Yes, very briefly.  We understand

 5    that the defense has ordered trial transcripts of various

 6    portions throughout the trial, and we are asking that trial

 7    transcripts of testimony of witnesses not be displayed in

 8    PowerPoints during closing.  The Sixth Circuit has addressed

 9    transcript issues in terms of what -- in terms of trial

10    transcripts going back to the jury and has noted that in that

11    context there are inherent dangers in providing trial

12    transcripts to jurors, including placing undue weight on the

13    testimony of a particular portion of a particular witness's

14    testimony.  The other danger is that a portion of the

15    transcript, which the jury doesn't have, is taken out of

16    context.

17      The court has recognized these dangers in the context of

18    considering the trial court's discretion on whether or not to

19    permit jurors to even see transcripts at all.  Given those

20    concerns, which we think are equally present in the context of

21    closing and also the Court's instruction to the jury on page

22    69 about their recollection of the evidence controls, we think

23    it's unfair to put portions, small portions of the trial

24    testimony, which the jury has not seen, these trial proceeding

25    transcripts on the screen during closing.

```
 1        To be clear, we don't object to the display of other
 2   transcripts which jurors have seen during this trial, and we
 3   think that that's fair game, but we would object to the
 4   testimony of witnesses being placed on the screen in the
 5   context of the PowerPoint or otherwise during closings.
 6             THE COURT:  And are you objecting to a lawyer
 7   stating what the witness's testimony was as opposed to saying
 8   I got a transcript here and reading from it?
 9             MS. GLATFELTER:  I am not objecting at all.  We are
10   not objecting at all to saying what a witness said to the
11   jury, but putting a transcript which purports to be an
12   official proceeding, I think, places undue weight of the trial
13   transcript before the jury.  And, you know, could create other
14   issues that the Court would have to deal with.
15             THE COURT:  Very well.  Does counsel for
16   Mr. Householder wish to be heard?
17             MR. BRADLEY:  Judge, there is a distinction between
18   a transcript going back to the jury.  Of course that's not
19   going to happen.  But as Ms. Glatfelter acknowledged, the
20   Court does have discretion to allow us to utilize the
21   transcript or at least portions of that as part of our
22   presentation in closing arguments.  And I'll remind the Court
23   what you already know, that this has been a lengthy trial, and
24   it's difficult for jurors to recall the detail of certain
25   testimony from witnesses six or seven weeks ago.  And we think
```

```
 1    it's reasonable to allow us to utilize portions of that

 2    testimony.

 3         And we have in the past displayed -- courts in the past

 4    have allowed us to display portions of the transcript and

 5    along with an accompanying limiting instruction explaining

 6    that ultimately the jury is to rely on their collective

 7    recollections of the testimony.

 8              THE COURT:  Very well.  You have been fully heard?

 9              MR. BRADLEY:  Yes.

10              THE COURT:  On behalf of Mr. Borges?

11              MR. SCHNEIDER:  I'm not sure that we plan on

12    displaying anything that Ms. Glatfelter's talking about, but

13    we do rely on what Mr. Bradley just advised the Court.

14              THE COURT:  Very well.

15              MS. GLATFELTER:  Your Honor, if I may?

16              THE COURT:  Yes.

17              MS. GLATFELTER:  Putting the transcript on the

18    screen and then telling the jury that they can't have the

19    transcript is a problem because the message to the jury is

20    that I've got -- the official words of what was said in my

21    transcript is more important than your recollection.  It

22    conflicts with the instructions.

23         If we -- I can guess what the questions will be from the

24    jury as soon as they get back to the deliberation room if we

25    allow this to happen.  The judge will be confronted with what
```

 1    do we do about the transcripts during deliberations and

 2    whether we have to send all the transcripts back and whether

 3    all the parties need to review them for accuracy and

 4    redactions and so on and so forth.

 5              THE COURT:  Very well.  Here's my ruling.  Clips or

 6    portions of the transcripts should not, shall not, will not be

 7    used in closing arguments.  Using transcripts piecemeal takes

 8    the testimony out of context.  It's precisely why the

 9    transcripts will not go back to the jury that it makes it so

10    important to not present the testimony out of context.

11         And it also tells the jurors that the transcript exists,

12    which will then prompt the jury to ask for the transcripts

13    during deliberations.

14         The defense can accomplish their end goal by simply

15    discussing the testimony and the evidence.  The clips or

16    portions of the transcripts shall not be used in closing

17    argument.  Understood by the government?

18              MS. GLATFELTER:  Yes, Your Honor.  And I understand

19    you to be talking about the trial transcripts.  We are okay to

20    show the transcripts of the recordings.

21              THE COURT:  Yes, by "transcripts," I meant

22    transcripts of the trial testimony.

23              MS. GLATFELTER:  Thank you, Your Honor.  We

24    understand.

25              THE COURT:  Mr. Bradley, you acknowledge the Court's

```
 1   ruling?
 2           MR. BRADLEY:  Understood with one point of
 3   clarification.  I understand that the Court is prohibiting
 4   from display.  Can we read from portions of it?
 5           THE COURT:  Not if it's clear you are doing that.
 6   I'm going to jump on you if you do.
 7           MR. BRADLEY:  I understand the Court's ruling.
 8           THE COURT:  Very well.
 9           MR. SCHNEIDER:  Understand the Court's ruling.
10           THE COURT:  Very well.  Anything further from -- we
11   will go around the room -- the government?
12           MS. GLATFELTER:  No, Your Honor.  Thank you.
13           THE COURT:  From Mr. Householder's counsel?
14           MR. OLESKI:  One moment, Your Honor.
15           THE COURT:  Okay.
16           MR. OLESKI:  Judge, we -- the only other thing we
17   have for this, we'd just renew our objections to the Court's
18   jury instructions based on the instructions that we proposed,
19   based on our objections to the government's -- based on our
20   objections to the government's instructions, and based on the
21   objections that we made during the charge conference.  Other
22   than that, we have nothing further.
23           THE COURT:  Very well.  Anything further,
24   Mr. Schneider or Mr. Todd Long?
25           MR. LONG:  Your Honor, we would just likewise
```

1    preserve our objections to the jury instructions that were

2    raised prior to and during the charging conference.  Thank

3    you.

4            THE COURT:  Very well.  Well, I guess you guys got

5    some work to do.  I'll see you tomorrow in the courtroom at 9.

6    We are in recess till that time.

7            THE COURTROOM DEPUTY:  All rise.  This court is in

8    recess.

9        (Proceedings continued in progress at 4:03 p.m.)

10                   CERTIFICATE OF REPORTER

11

12            I, Mary A. Schweinhagen, Federal Official Realtime
     Court Reporter, in and for the United States District Court
13   for the Southern District of Ohio, do hereby certify that
     pursuant to Section 753, Title 28, United States Code that the
14   foregoing is a true and correct transcript of the
     stenographically reported proceedings held in the
15   above-entitled matter and that the transcript page format is
     in conformance with the regulations of the Judicial Conference
16   of the United States.

17   s/Mary A. Schweinhagen
     _____  9th of March, 2023
18   MARY A. SCHWEINHAGEN, RDR, CRR
     FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25