IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff-Appellee | : |
| vs. | : |
| | Case No. 1:20-cr-77 |
| MATTEW BORGES, | : |
| Defendant-Appellant | : |

## MOTION OF DEFENDANT-APPELLANT TO CORRECT THE RECORD

Now comes Defendant-Appellant Matthew Borges (Appellant), pro se, and respectfully moves this honorable Court to correct the record in *United States v Householder et al* (Case No. 1:20-cr-77) pursuant to its authority under Rule 36 of the Federal Rules of Criminal Procedure. Alternatively, the Court could resolve the discrepancy in the record by forwarding a transcript of the sentencing hearing or other relevant documentation to the Bureau of Prisons.

Specifically, Appellant's Presentence Investigation Report (PSR) (Case: 1-20-cr-00077 Doc #274) contains an extraneous term, unrelated to his personal offense conduct, that has prevented his proper security designation. Appellant recognizes that his case is now before the Sixth Circuit Court of Appeals, however,

1

Rule 36 allows the District Court to correct the record "at any time" and since the matter relevant to this request is unrelated to the issues presented to the Sixth Circuit as part of the Appeal it would have no effect on his conviction or sentence. Should the District Court decide it cannot harmonize the PSR with the oral declarations of the Judge at sentencing, an alternate resolution exists that would resolve the discrepancy and provide BOP with accurate information to properly designate Appellant.

## Background

Appellant was tried in the above referenced case and convicted on March 9, 2023 of one count of 18 U.S.C. §1962 (C) Racketeering Conspiracy. None of the predicate crimes Appellant was alleged to have committed or agreed to as part of the conspiracy were violent crimes. At Appellant's Sentencing Hearing (Doc #286 filed 07/06/23) United States District Court Judge Timothy Black correctly identified the "underlying racketeering activities as evidenced during trial," as "Honest Services wire fraud, Extortion Under Color of Official Right, the Travel Act, Money Laundering and Bribery." (*Id* at PageID 11234). Appellant filed a timely Notice of Appeal (R. 295 PageID 11632) and subsequently filed his Appeal with the United States Court of Appeals for the Sixth Circuit. (Case No. 23-3566 Doc. 21, Filed 1/08/24). Appellant is currently serving the sentence handed down by Judge Black of 60 months incarceration as well as 3 years of supervised release. He was remanded

to custody at sentencing on June 30, 2023, and was initially held in the Butler County jail in Butler County, Ohio, pending designation by the Bureau of Prisons (BOP). Appellant was flown to the BOP Transfer Center in Oklahoma City on July 30, 2023, and was eventually designated to the Federal Correctional Institution in Milan, Michigan (FCI Milan). Appellant was held in the Milan Federal Detention Center for 2 ½ months before being transferred to FCI Milan on October 13, 2023.

## Designation

The Bureau of Prisons takes multiple factors into account when determining an inmate's security designation. Many of those decisions are guided by Program Statement OPI: CPD/CPB Number P 5100.08 9/12/2006 (P.S. 5100.08) that states, "All inmate classification decisions and related actions will be made in accordance with the procedures in this Program Statement and effective immediately," (*Id* at Introduction, Section 6) and lists criteria for determining designation, including, "To the extent practicable, placement to the closest facility within 500 driving miles of the release area will be considered reasonable, subject to bed availability, the prisoner's security designation, the prisoner's programmatic needs, the prisoner's mental and medical health needs, and any request made by the prisoner for faith-based needs, recommendations of the sentencing court, and other security concerns

3

of the Bureau of Prisons." (Change Notice OPI CPD/CPB Number 5100.08 CN-1 Sep. 4, 2014). BOP then uses a point system to determine appropriate security-level placement, stating, "SENTRY then calculates a point score for that inmate for which he/she is then matched with a commensurate security level institution." (P.S. 5100.08 at Introduction) The corresponding chart then details the point totals for specific security levels. For inmates with 0-11 custody points, for example, the facility level is "Minimum." (*Id* at table 5.2). [1]

P.S. 5100.08 provides further guidance for determining designation, beginning with "Current Offense," stating, "For classification purposes, the current offense is the most severe documented instant offense regardless of the conviction offense." (*Id* at Definitions). BOP relied on one word - robbery - included in the PSR, to determine the offense severity, preventing Appellant from being properly designated to a minimum security facility, even though there was no allegation of robbery ever made in the case.

Without appropriate clarification, however, PSR Paragraph 12, was interpreted otherwise by BOP. That paragraph reads, "The defendants participated in the enterprise by committing multiple criminal acts including honest services wire

---

[1] BP-338 makes clear that custody is "not dictated solely by the point total. However, when the unit team decides not follow the recommendation of the point total, they must document the reasons(s) for this decision in writing on the Custody Classification form and inform the inmate." Here, Appellant was informed by his unit team that the robbery allegation is what caused BOP to determine he was ineligible for a minimum security designation.

4

fraud; interference with commerce, ***robbery***,[2] or extortion; bribery; and money laundering." (Doc #274 PageID 10858) (Emphasis added). The word "robbery" was never mentioned in the record of the 24-day trial, the jury instructions, or Appellant's sentencing hearing. Inclusion of that word in the PSR, however, led BOP to determine Appellant's conduct to be of "Greatest Severity."

P.S. 5100.08 assigns Greatest Severity to the following offenses: Aircraft piracy, Carjacking, Drug offenses, Escape, Explosives, Extortion through use of weapons or force, Kidnapping, Robbery (any), Sexual Offenses, Toxic Substances/Chemicals, Weapons, (*Id* at Offense Severity Scale) . It also includes the following Special Instruction: "Offenses not listed will be assigned a security category according to the most comparable listed offense. Total offense behavior is to be considered, utilizing the most serious offense or act committed."

Assignment of "Greatest Severity" automatically excludes Appellant from being assigned to a minimum-level facility. Appellant only has ten points in the SENTRY system, even with the seven points that are assigned for the Greatest Severity designation. Without the Greatest Severity points, which are only applied because of the inclusion of the robbery allegation in Appellant's PSR, Appellant

---

[2] In this instance robbery is part of a list indicating any of the three options was a potential qualifying predicate. The wording of the list does not make that clear, however, and because of the comma after "robbery," BOP determined that allegation was made and substantiated. As such, the error cited here is clerical in nature, and rewording the list could correct it. However, the most appropriate resolution to clarify the confusion created by the current PSR would be to remove the word robbery entirely.

5

would have three points, well below the threshold for designation to a minimum security facility. Appellant's current designation also assigns a "Public Safety Factor" (P.S. 5100.08 Chapter 5). A Public Safety Factor is automatically assigned to an inmate with a Greatest Severity designation (*Id*), and requires BOP to classify Appellant "IN custody." IN Custody is defined by P.S. 5100.08 as "The second-highest custody level assigned to an inmate which requires the second highest level of staff supervision. Inmates with IN custody are not eligible for work details outside the institution's secure perimeter." This security level also affects the Appellant's ability to obtain a furlough (P.S. 5280.09 (7) (C) (2), 28 CFR 524 Subpart F Feb 10, 2021).

The Sixth Circuit has limited its purview in correcting case records to instances where the error "affects substantial rights," (*State v Barnes*, 94 Ohio St. 3d 21, 27, 2002-Ohio-68, 759 N.E. 2d 1240). Other Courts have held that considerations regarding work privileges and other restrictions placed on inmates effect the "rights and obligations of the defendant going forward," *United States v Mackay* 757 F3d 195, citing the holding in *United States v Brown*, 715 2d 387, 389 that the PSR "not only affects the length of the sentence, but might also determine the defendant's place of incarceration, chances for parole, and relationships with social services." Indeed, the application of this designation has already impacted Appellant by denying him rights he might otherwise have been entitled to. Besides being

6

designated to a higher-security facility than his SENTRY points provide, and preventing him from certain work assignments, Appellant's father passed away on December 29, 2023 and Appellant's request for a furlough to attend the funeral was denied because the Public Safety Factor, assigned solely because of the Greatest Severity designation of Appellant's offense.

### Correcting the Record

The Sixth Circuit has held that "as a general rule, the district court loses jurisdiction over an action once a party files a notice of appeal, and jurisdiction transfers to the appellate court." (*Lewis v Alexander*, 987 F2d 392,364 (6th Circuit, 1993)). However, Rule 36 provides that a Court may correct the record "at any time," thus, the District Court has not been "divested" of jurisdiction over a correction to the record and would not be barred by the restrictions of Fed. Crim Rule 37. (*United States v Zundel* LEXIS 68923 2013) for such a review.

Here, the issue being raised by Appellant would have no bearing on the Sixth Circuit's contemplation of the Appeal, and since Rule 36 provides that the Court may <u>at any time</u> correct a clerical error in a judgment, order, or other part of the record arising from an oversight or omission, this Court should be able to resolve this matter, by simply amending Paragraph 12 of the PSR to reflect Judge Black's oral recitation of the offense conduct at sentencing. The Court in *Mackay* established

that the PSR is part of the record. "Because the PSR affects the rights and obligations of the defendant, we conclude that it is of the kind or character as a "judgment" or "order" and that it is embraced by "other part of the record," rejecting the government's claims that since a PSR is "created by probation officers, not the court, and is submitted to the court under seal," it is "more like documents filed by the parties than judgments or orders," and that time limits set forth by Rule 32(f) (1) barred Appellant from seeking relief in that case. Instead, the Court held, "there is no conflict between Rule 32's time limit to raise substantive objections to material information and Rule 36's provision that clerical errors may be raised "at any time." Case law in this Circuit is consistent with the holding in *Mackay*, provided the Court determines that including the word "robbery" in Appellant's PSR is a "clerical error" that "must not be one of judgment or even misidentification, but merely of recitation." (*United States v Robinson* 368 F 3d 653,656 (6th Cir. 2004)). The discrepancy between Judge Black's oral declaration of the Offense Conduct at sentencing and the language contained in the PSR demonstrate that an error was made and relied upon by BOP, and that a resolution fixing the PSR is warranted.

## An Alternate Remedy Exists

Should this Court determine that Rule 36 does not apply here, either because it does not consider the error "clerical" or because the Appellant has filed a timely Notice of Appeal, the District Court still has ample room within the law to resolve

8

the inconsistency between the PSR and the facts as stated by Judge Black at sentencing. In *United States v Knockum*, 881 F2d 730 (9th Cir, 1989), the District Court was directed to "forward the transcript of the sentencing hearing to the Bureau of Prisons," stating "There is, however, a ready remedy for the failure of the district court – if there was such a failure – to attach the transcript of the sentencing hearing to the presentence report." That remedy alone would resolve Appellant's current matter, and Appellant requests this Court embrace that approach and forward the sentencing transcript.

Further, Federal Rule of Civil Procedure Rule 32 (i) (3) (C) that states the District Court "must append a copy of the court's determinations under this rule to any copy of the presentence report made available to the Bureau of Prisons." Indeed, Appellant raised objections at the June 30, 2023 sentencing hearing and Judge Black sustained one of those objections. (Id at PageID 11237-11238). However, as of the date of this filing, staff at FCI Milan were not aware of receiving a copy of the updated PSR reflecting those sentencing determinations. In *United States v Wright*, 275 Fed Appx 827 (11th Cir 2008), the Court in that Circuit held that "In case which pro se federal inmate argued court failed to attach its findings to original presentence investigation report (PSI), in violation of Fed R. Crim. P. 32(i) (3) (C), and that District Court was obligated to comply with Rule 32 (i) (3) (C) and correct the PSI, which Bureau of Prisons (BOP) used in making determinations about his status,

9

district court's denial of Fed R. Crim. P. 36 motion was vacated, and the case was remanded. The district court was required to strictly comply with Fed R. Crim. P. 32 (i) (3) (C); it had to append copy of his determinations to any copy of PSI sent to BOP if it had not already done so." Assuming the sentencing determinations have not been forwarded to BOP, the District Court could do so now. The Court could use the opportunity to also amend the language in Paragraph 12 to reflect Judge Black's accurate declaration of the offense conduct.

A Statement of Reasons (SOR) must also be forwarded by the District Court to BOP. The SOR is prescribed by law and is properly seen as both part of the official record[3] and a tool for correcting errors in the PSR. See 28 U.S.C. §994 (w). In particular, the USA Patriot Improvement and Reauthorization Act of 2005 (Pub L. 109-177, 120 Stat 192 (2006), amended 28 U.S.C. §994 (w) to require that the reasons for the sentence imposed in every case be "stated on the written statement of reasons form issued by the Judicial Conference and approved by the United States Sentencing Commission." 28 U.S.C. §994 (w) (1) (B). Thereafter, the Judicial Conference issued and the Sentencing Commission approved Form AE 245B, which was revised in February 2016 to include; "Additional Comments or Findings, comments or factual findings concerning any information in the presentencing report

---

[3] "A statement of reasons is considered a material part of the appellate record and is reviewed as an indication of the district court's intentions at sentencing." (*United States v Gates*, 48 F 4th 463, 469 (6th Cir 2022)).

10

that the Federal Bureau of Prisons may rely on when it makes inmate classification, designation, or programming decisions." That SOR would by necessity be consistent with Judge Black's declarations at sentencing and could not possibly corroborate the suggestion in the PSR that Appellant was involved in robbery.

P.S. 5100.08 also addresses the SOR. "In determining 'Severity of Offense Conduct' staff must review the Statement of Reasons (SOR) and ensure the information provided is appropriately used in classifying the inmate," (*Id* at Section 7) and gives the following example, "According to the PSR the individual was involved in a drug conspiracy responsible for distribution of all 31 grams of Cocaine Base "Crack" but was individually only responsible for 2 grams, he/she would be scored as Moderate Severity for this item. However, the SOR indicates the Sentencing Judge found the individual responsible for less than 1 gram; therefore, the appropriate scoring should be Low Moderate Severity." (*Id* at Example). It would follow then that since there was no allegation of robbery made at any point against Appellant, the SOR could more appropriately summarize his actual offense conduct clarifying for BOP that there was no justification for elevating Appellant's custody level due to the mistaken inference of an allegation of robbery – even if that allegation had been made and substantiated against another member of the enterprise, which it wasn't. If the SOR did not include that clarification there is no reason it could not be updated by the Court. And if the SOR has not been forwarded,

11

it certainly could be now. An accurate SOR or a copy of the sentencing transcript would likely resolve this issue. Without either of those, (or an amended PSR) Appellant will continue to be designated incorrectly. United States Probation Officer Charles Steed texted Appellant's wife on February 19th, 2023 answering her questions about the objections not being reflected in Milan's copy of the PSR, stating only that he had advised the staff at Milan verbally. "Unfortunately, an update nor an addendum were approved to be completed because there is no new information to report. I spoke to the Bureau of Prisons who are aware the objection was sustained. And they advised no further information was needed as Matt would have to go through their administrative remedy process." (Attached hereto as Exhibit A). Appellant has been assured by BOP staff, however, that without an amended PSR, SOR, or sentencing transcript being forwarded by the District Court, the administrative process would be futile as long as the word "robbery" remained unchallenged in the PSR.

## Conclusion

At Appellant's sentencing, Judge Black made the following statement before remanding Appellant to custody, "We reap what we sow. We sleep in the bed we have made. We pay the dues we have earned." (Doc #286 PageID #11282-1128), after describing the "Purpose of sentencing" to include promoting respect for the law, punishment, deterrence, protecting the public, and providing appropriate

12

correctional treatment. (*Id* at PageID# 11232). Judge Black handed down the sentence he felt was appropriate for the verdict reached by the jury regarding the conduct actually alleged. But no allegation of robbery was ever made. Regardless, it was included in the PSR which led BOP to base their determinations on it.

Judge Black's oral declarations at sentencing demonstrate that there was no allegation of robbery in the conduct he was prepared to sentence Appellant for that day. That is the inescapable conclusion anyone reviewing the full, factual record of Appellant's case would reach. Probation Officer Steed texted Appellant's wife (Attached hereto as Exhibit B) and acknowledged he was aware Appellant had not committed robbery. "I am still not authorized to amend the report because there is nothing factually incorrect. Robbery is mentioned in the indictment and there is no way to change that, I would agree the judge rules at sentencing are the facts of the case. However, I agree and believe that the report shows Matt did not commit robbery. If there is an email I can send to a case manager saying this or a phone number to call I would be glad to help let me know." (Exhibit B). Unfortunately, BOP has taken the language in the PSR, inaccurately suggesting Appellant was involved in robbery, at face value.

Appellant is not asking this Court to reach additional legal issues, resolve disputes about his case, or challenge his conviction. He is also not seeking any remedy here that would result in a reduction of his sentence. But Appellant was

13

neither accused of nor determined at any point to have participated in robbery. Regardless, he is being held responsible for something hadn't actually "sown." BOP has an interest in an accurate record of the allegations and facts of the case so it can make sure an inmate is properly designated. The Court shares the interest in an accurate record of the proceedings in the case - including the offense conduct the defendants were convicted of - as do the parties, and the public. Here, everyone who reviewed the full facts of the case made the determination that there was no instance of robbery. This motion merely requests that the appropriate documentation be forwarded to BOP so that they may arrive at the same inevitable conclusion.

**EXHIBIT A**



Charlie >



Mon, Feb 19 at 10:14 AM

> Hello Charlie this is Kate Borges on Matt's phone. I am reaching out to ask if you have an update on the updated PSR that needs to be sent to the BOP reflecting the fact that judge Black sustained our objection to the inclusion of obstruction allegations. Please let me know if you are aware of that update having been sent? Thank you Kate

Tue, Feb 20 at 9:23 AM

> Mrs. Borges, thanks for reaching out and hope you are doing well. Unfortunately an update nor an addendum were approved to be completed because there is no new information to report. I spoke with the Bureau of Prisons who are aware the objection was sustained and they advised no further information was needed as Matt would have to go through their administrative remedy process. I relayed all of this information to Todd Long back in November. Sorry I cannot be of more help on this.

+    iMessage    🎤

**EXHIBIT B**

> could just be a clerical correction. Thank you again for all your help.

> Mrs. Borges, sorry I did not get back to you yesterday. The summary of the charges mentions the word robbery as that is what is listed in the statute. Robbery is also in paragraph 2 of the report because it was listed on the Indictment. I am still not authorized to amend the report because there is nothing factually incorrect. Robbery is mentioned in the Indictment and there is no way to change that. (I would agree that what the Judge rules at sentencing are the facts of the case.)
>
> However, I agree and believe the report shows that Matt did not commit robbery. If there is an email I can send to a case manager saying this or a phone number to call, I would be glad to help. Let me know. Thanks.

Thursday 5:16 PM

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion has been produced in 14-point Times New Roman font and consists of 3,300 words. It therefore complies with the Local Rules for a motion.

_____
Matthew Borges
Appellant Filing Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that I sent this motion to the Clerk of the United States District Court for the Southern District of Ohio via the United States Postal Service on April 5, 2024, and request written receipt be returned to Appellant.

_____
Matthew Borges
Appellant Filing Pro Se
Milan Correctional Institution
P.O. Box 1000
Milan, Michigan 48160-1000

K Borges
2753 She
Columbus OH
43209



Office of The Clerk
Potter Stewart US
Room 103
100 EAST fifth S
CinCinnati O